IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 1:12CR3 |
| | ) | |
| KIM DOTCOM, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**OPPOSITION OF THE UNITED STATES TO MOTION OF
QUINN EMANUEL URQUHART & SULLIVAN LLP,
THE ROTHKEN LAW FIRM, AND CRAIG C. REILLY, ESQ.
FOR LEAVE TO ENTER LIMITED AND SPECIAL APPEARANCES
ON BEHALF OF MEGAUPLOAD LIMITED, KIM DOTCOM,
MATHIAS ORTMANN, BRAM VAN DER KOLK & FINN BATATO**

Quinn Emanuel Urquhart & Sullivan LLP ("Quinn Emanuel"), The Rothken Law Firm, and Craig C. Reilly, Esq. (collectively, "Defense Counsel") have requested leave for the second time to enter limited appearances in this matter.[1] The United States opposes the motion for four reasons. *First*, the proposed limited appearance is inconsistent with Local Criminal Rule 57.4(d)(3), which requires counsel to have "such authority that the Court can deal with the attorney alone in all matters connected with the case." *Second*, prior to entertaining any motion filed on behalf of Defense Counsel, the Court must address and resolve potential conflicts of interest in their representation of the defendants. *Third*, the motion is premature because the defendants have not made an initial appearance before this Court, as required by the Federal Rules of Criminal Procedure and the fugitive disentitlement doctrine. *Fourth*, the ultimate relief

---

[1] *See* Motion of Quinn Emanuel Urquhart & Sullivan LLP, The Rothken Law Firm, and Craig C. Reilly, Esq. for Leave to Enter Limited and Special Appearances on Behalf of Megaupload Limited, Kim Dotcom, Mathias Ortmann, Bram van der Kolk & Finn Batato and to Exceed Page Limit & Memorandum in Support Thereof, (May 30, 2012) (Dkt. 96) (hereinafter ("Motion to Enter Limited Appearance").

sought by Defense Counsel — dismissal of the charges against Defendant Megaupload Limited and the release of restrained and forfeitable funds for multiple defendants' anticipated legal fees — is foreclosed by the plain language of Federal Rule of Criminal Procedure 4 (which does not provide either a deadline for service of a criminal summons or a remedy as severe as dismissal) and the fact that a New Zealand court has already released hundreds of thousands of dollars in restrained funds to the defendants that can be spent on legal fees.

In opposing Defense Counsel's motion, the United States seeks to uphold the status quo, conserve judicial and government resources, and safeguard restrained and forfeitable assets that may eventually be restored to the victims of these crimes, all pending the outcome of extradition hearings in New Zealand and the Netherlands that may take months, if not years, to resolve. For these reasons, the United States respectfully requests that the Court deny the Motion to Enter Limited Appearance and strike the underlying proposed motions. And because Defense Counsel have already been heard by this Court on their first motion to enter a limited appearance, the United States further requests that the Court decide this motion on the papers and without an oral hearing, pursuant to Local Criminal Rule 47(J).[2] In the event the Court grants any part of Defense Counsel's Motion to Enter Limited Appearance, the United States requests at least two weeks to respond to any underlying motions. In addition, because multiple members of the prosecution team are expected to be out of the district on June 29, 2012, the United States requests that any hearing on the motion be set for a later date.

---

[2] Local Criminal Rule 47(J) provides: "Determination of Motions Without Oral Hearing: The Court may rule upon motions without an oral hearing."

I.  **Background**

The following includes the facts necessary to resolve the instant motion, as the relevant background is nearly unchanged since the April 13, 2012 hearing on Defense Counsel's first motion to enter a limited appearance.[3] On January 19, 2012, four defendants in the above-captioned matter — Finn Batato, Kim Dotcom, Mathias Ortmann, and Bram van der Kolk — were arrested in New Zealand pursuant to a request from the government of the United States arising from an Indictment. Shortly thereafter, a fifth defendant — Andrus Nomm — was arrested in the Netherlands. On February 16, 2012, a Superseding Indictment was returned against the same defendants. No arraignment date has been set, as all five defendants who have been arrested are contesting the jurisdiction of this Court in extradition proceedings.

Simultaneous with the January 19, 2012 arrests, the United States and law enforcement counterparts across the globe executed various search and seizure warrants related to the case. Within a span of approximately two weeks, three separate United States law firms (in addition to The Rothken Firm) — first Hogan Lovells, then Squire Sanders, and then Sidley Austin LLP — attempted to initiate negotiations with the United States government on behalf of Defendants Megaupload Limited and/or Kim Dotcom, despite none of these law firms having entered an appearance before this Court. At the same time that counsel from Sidley Austin LLP was seeking to negotiate with the United States, other foreign counsel for Defendants Megaupload Limited and/or Kim Dotcom in overseas jurisdictions — who *had* entered appearances in those jurisdictions — sought various forms of relief in those jurisdictions. The government is unaware of whether Sidley Austin LLP was privy to these activities, but no notice was provided to the

---

[3] *See* Motion of Motion of Quinn Emanuel Urquhart & Sullivan LLP and The Rothken Firm for Leave to Enter Limited Appearance on Behalf of Megaupload Limited and Kim Dotcom, (Apr. 5, 2012) (Dkt. 59).

government by any defense counsel in the United States. The foreign activities included motions filed: in Hong Kong seeking the release of funds; in New Zealand requesting the release of funds and the return of seized property; and in Canada seeking the return of seized property. Restrained funds in Hong Kong[4] and New Zealand[5] have already been dissipated, despite this Court's orders.

On March 30, 2012, despite the successful petitions for release of funds in New Zealand and Hong Kong by overseas counsel, Sidley Austin LLP and The Rothken Firm filed a motion for leave to enter a limited appearance in this Court, for the purpose of seeking the release of restrained funds for payment of anticipated legal fees. On April 5, 2012, Sidley Austin LLP withdrew its motion, which was then immediately refiled by Quinn Emanuel, which claimed to have stepped into the shoes of Sidley Austin LLP. During the April 13, 2012 hearing, the Court permitted a limited appearance, stating: "I am going to allow you to appear limited, for purposes of this hearing today on a limited basis. I won't hold you in the case after today." Transcript of Hearing on Motions, at 27:21-23 (Apr. 13, 2012) (Dkt. 84). The Court declined, however, to reach Defense Counsel's underlying request that restrained funds be released. *Id*. at 39:4-14.

On May 30, 2012, Defense Counsel filed the instant motion, which seeks leave to file three additional motions. The first is a "[Proposed] Motion of Specially-Appearing Defendant

---

[4] On February 16, 2012, a Hong Kong court ordered the release of HKD $739,564.60 (roughly $95,000 in U.S. dollars) to pay for past salaries and reimbursements owed to Defendant Megaupload Limited's employees, but denied Megaupload Limited's request for legal fees and future salaries. The court's decision was based, in part, on Megaupload Limited's insufficient disclosure of finances and the courts' desire to leave resolution of such matters to this Court.

[5] On March 21, 2012, a New Zealand court ordered the release of NZD $301,758.70 (more than $240,000 in U.S. dollars) to be released to defendant Kim Dotcom in monthly installments of NZD $40,000 (roughly $32,000 per month in U.S. dollars) until the funds are depleted, plus a monthly stipend of NZD $20,000 for Dotcom's living expenses (roughly $16,000 per month in U.S. dollars), to be paid indefinitely.

Megaupload Limited to Dismiss Indictment for Lack of Personal Jurisdiction & Memorandum of Law in Support" (hereinafter "Proposed Motion to Dismiss") (Dkt. 96-1). The second is a "[Proposed] Motion to Challenge the Scope of Pretrial Restraint of Assets of Defendants Megaupload Limited, Kim Dotcom, Mathias Ortmann, Bram van der Kolk & Finn Batato and Memorandum of Law in Support Thereof" (hereinafter "Proposed *Farmer* Motion") (Dkt. 96-2). And the third is a request to exceed the 30-page limit, as set by Local Criminal Rule 47(F)(3), with respect to the Proposed *Farmer* Motion. The United States opposes each of these motions for the reasons set forth below.

## II.     Argument

### A.     The Local Criminal Rules Do Not Contemplate Allowing Potential Counsel to Pick and Choose the Issues for Which They Appear in a Criminal Matter.

Eastern District of Virginia Local Criminal Rule 57.4(d)(3) does not contemplate or authorize limited appearances. Rather, Rule 57.4(d)(3) provides that:

> [N]o pleading or notice required to be signed by counsel shall be filed unless signed by counsel who shall have been admitted to practice in this Court . . . and who shall have such authority that the Court can deal with *the attorney alone in all matters connected with the case*. Such appearance shall not be withdrawn without leave of the Court.

(emphasis added).[6] A limited appearance, which leaves the Court unable to deal with the attorney on any other matter connected with the case, and which eliminates counsel's need to seek leave to withdraw an appearance, runs contrary to the plain language of the rule.

The importance of such a rule is highlighted by the fact that this is now Defense

---

[6] Attorneys from Quinn Emanuel and The Rothken Firm have filed motions to appear *pro hac vice*, pursuant to Local Criminal Rule 57.4. *See, e.g.,* Application to Qualify as a Foreign Attorney Under Local Civil Rule 83.1(D) and Local Criminal Rule 57.4, (Apr. 5, 2012) (Dkts. 62-63); Application to Qualify as a Foreign Attorney Under Local Civil Rule 83.1(D) and Local Criminal Rule 57.4, (Apr. 6, 2012) (Dkt. 68); Application to Qualify as a Foreign Attorney Under Local Civil Rule 83.1(D) and Local Criminal Rule 57.4, (May 30, 2012) (Dkts. 93-95).

Counsel's second request to enter limited (yet more expansive) appearances in this matter, and, as described above, by the difficulties the United States has faced in attempting to negotiate with various law firms, both domestic and abroad, who have claimed to represent the defendants. Defense Counsel are in the advantageous position of being permitted to continuously petition this Court for various forms of relief — the release of funds, the dismissal of charges, and for any number of potential future requests — while the defendants remain free to act in defiance of this Court's jurisdiction and with the Court having no practical ability to exert judicial authority over them or their counsel.  The proposed limited appearances will do nothing to alleviate these concerns; to the contrary, it will allow defendants to continue a multi-pronged attack on this Court's orders and authority, as well as strain the court and the government's resources.  There is simply no ability for the Court to completely address all issues arising in this criminal matter until either the defendants, or at least their counsel, fully appear.  In sum, absent a general appearance by Defense Counsel, there is no reasonable alternative that permits the Court to deal with counsel in all matters connected with the case, as required by Local Rule 57.4(d)(3).

      **B.**     **The Court Cannot Permit Counsel to Enter any Appearance Until All Potential Conflict Situations Are Resolved.**

"Where a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest." *Wood v. Georgia*, 450 U.S. 261, 271 (1981).  The Supreme Court of the United States has repeatedly held that conflicted counsel cannot provide constitutionally sufficient representation to a criminal defendant.  As such, where criminal defense counsel has even a potential conflict of interest, a district court may refuse to allow a criminal defendant to waive the potential conflict in order to retain that counsel. *See, e.g.*, *Wheat v. United States*, 486 U.S. 153, 162-63 (1988).  Consistent

with this principle, the Fourth Circuit has instructed that "when a conflict situation becomes apparent to the government, the government has a duty to bring the issue to the court's attention and, if necessary, move for disqualification of counsel." *United States v. Tatum*, 943 F.2d 370, 379-80 (4th Cir. 1991).[7] The government believes its duty to bring "conflict situations" to the Court's attention has been implicated by at least Quinn Emanuel's proposed representation of Defendants Megaupload Limited, Kim Dotcom, Mathias Ortmann, Bram van der Kolk, and Finn Batato in this matter.

The United States, in its opposition to Defense Counsel's first motion to enter a limited appearance, detailed Quinn Emanuel's potential conflicts of interest.[8] These potential conflicts, which continue to persist, include Quinn Emanuel's past and ongoing representation of a number of companies, which are victims and witnesses in this criminal matter. These companies include, but are not limited to: YouTube, Inc., and YouTube, LLC (collectively, "YouTube");[9] Google, Inc. ("Google"); The Walt Disney Company; Fox Entertainment Group; Time Warner Entertainment Company; Warner Brothers Entertainment; Home Box Office; Paramount Pictures Corporation; Danjaq LLC; Brøderbund Software, Inc.; Intuit; and Bulletproof Software. With respect to victims named in the Superseding Indictment, such as YouTube, The United States will call at least one company representative as a witness during the government's case-in-chief.

---

[7] In addition, all defense attorneys "have the obligation, upon discovering a conflict of interests, to advise the court at once of the problem." *Holloway v. Arkansas*, 435 U.S. 475, 485-86 (1978).

[8] *See* Opposition of the United States to Motion of Quinn Emanuel Urquhart & Sullivan LLP and The Rothken Firm for Leave to Enter Limited Appearance on Behalf of Defendants Megaupload Limited and Kim Dotcom, at 9-15 (Apr. 11, 2012) (Dkt. 76).

[9] Andrew H. Schapiro, a Quinn Emanuel partner who has sought this Court's permission to enter a limited appearance in this matter, is currently also counsel for YouTube in an ongoing copyright dispute with Viacom International, Inc. *See* Docket, *Viacom Int'l, Inc. et al. v. YouTube, Inc. et al.*, No. 07-cv-2103 (S.D.N.Y.) (listing Schapiro as counsel for YouTube).

The United States will likely call representatives of the remaining companies as witnesses during the government's case-in-chief, or in the alternative may offer into evidence documentation from these companies for the purpose of establishing the existence of copyrights involved in the alleged reproduction and distribution of copyright-infringing works by the defendants.

The conflicts of interest raised by Quinn Emanuel's proposed representation are not limited to mere subject matter. This Court authorized the restraint of certain assets belonging to the defendants as property subject to forfeiture. These assets may eventually be restored to victims — including possibly the current and former Quinn Emanuel clients listed above — as restitution. *See* 21 U.S.C. § 853(i)(1); *see also Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 629 (1989) ("The Government's interest in winning undiminished forfeiture thus includes the objective of returning property, in full, to those wrongfully deprived or defrauded of it."). But as Quinn Emanuel admits, it seeks this Court's permission to release restrained funds (that might otherwise go to its current or former clients) as payment for legal services. It is unclear how Quinn Emanuel intends to zealously represent the defendants while also protecting confidential attorney-client information gained in the course of representing other clients, as required by Rule 1.7(a) of the Virginia Rules of Professional Conduct,[10] particularly where those

---

[10] This rule, which is incorporated by Local Criminal Rule 57.4(I) and Section II of Part Six of the Rules of the Virginia Supreme Court, provides that a lawyer shall not represent a client, such as defendants here, if "there is significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." Subsection (b) of the rule provides a narrow exception: "a lawyer may represent a client if each affected client consents after consultation," and, among other requirements, "the consent from the client is memorialized in writing." Somewhat unique to Virginia, these ethical standards extend to other lawyers practicing at the same law firm, pursuant to Rule 1.10(a), and cannot be cured by setting up an internal screen (commonly known as a "Chinese wall"), without full disclosure and written consent: "While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.6,

clients' interests are directly opposed to those of the defendants. Even if Quinn Emanuel has never represented any of these clients in a matter directly adverse to the defendants, conflicts of interest still exist with respect to the potential misuse of confidential attorney-client information.

Quinn Emanuel's representation of multiple codefendants in filing the Proposed *Farmer* Motion presents additional cause for concern. The Supreme Court cautioned in *Holloway* that although permitting a single attorney to represent codefendants "is not *per se* violative of constitutional guarantees of effective assistance of counsel," 435 U.S. at 482, "[j]oint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing," *id*. at 489-90. Joint representation may, for example, preclude Defense Counsel "from exploring possible plea negotiations and the possibility of an agreement to testify for the prosecution, provided a lesser charge or a favorable sentencing recommendation would be acceptable." *Id*. at 490.[11] Under these circumstances, where the United States expects the interests of each of the defendants to diverge significantly from one another, it would be inappropriate for Defense Counsel to represent multiple codefendants even at this early stage.

"When the risk of a conflict of interest is brought to the attention of the trial court, however, the court has the responsibility to investigate further, to advise the defendant personally, and to receive a knowing waiver if that is the expressed wish of the defendant." *Tatum*, 943 F.2d at 379. The proper resolution of any potential conflict is essential in light of Supreme Court precedent holding that where a conflict adversely affects counsel's performance,

---

1.7, 1.9, or 2.10(e)."

[11] It is the United States' understanding that throughout the extradition proceedings currently underway in New Zealand, Defendant Kim Dotcom is represented by Paul J. Davison, Esq., and Defendants Finn Batato, Bram van der Kolk, and Mathias Ortmann are all represented by Guyon Foley, Esq.

the proper remedy on appeal is to void any conviction. *See, e.g.*, *Mickens v. Taylor*, 535 U.S. 162, 173-4 (2002); *Holloway*, 435 U.S. at 489-90. If the Court is not satisfied that Defense Counsel's representation would be conflict-free, then the Court even has discretion to refuse a waiver by the defendant,[12] "not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Wheat*, 486 U.S. at 163 (recognizing that "the willingness of an attorney to obtain such waivers from his clients may bear an inverse relation to the care with which he conveys all the necessary information to them"). In the event Quinn Emanuel proposes to cure these conflicts with a written waiver, such a waiver must come not only from the defendants, but from each of the companies named above, and from any other victims of which Defense Counsel are aware.[13] Even then, the Court has discretion to refuse the waiver after exploring the issues with the defendants. Here, it would be inappropriate to permit Defense Counsel to enter even a limited appearance without first fully investigating and resolving these potential conflicts.

### C. Defendants May Not Seek Pre-Appearance Relief From This Court.

#### a. Federal Rule of Criminal Procedure 43 requires that defendants be physically present prior to addressing the relief requested.

At the same time that Defendants Kim Dotcom, Mathias Ortmann, Bram van der Kolk, and Finn Batato are contesting this Court's jurisdiction through extradition proceedings, they

---

[12] Defendants may not even request a waiver until they make their initial appearance, are "personally" advised of their constitutional rights by this Court as required by *Tatum*, 943 F.2d at 379, and are informed of the facts surrounding the potential conflicts. For this additional reason, Defense Counsel's Motion to Enter Limited Appearance is, at best, premature.

[13] Defense Counsel have obtained a full index of the titles uploaded onto the Mega Sites' servers around the world and can, therefore, determine which of their clients' copyrighted works have been infringed.

(and one of their corporate entities, Megaupload Limited) have apparently authorized Defense Counsel in the United States to petition this Court for relief *in absentia*. The Court should reject this attempt, which violates fundamental principles of American criminal procedure requiring a defendant's appearance. *See Lewis v. United States*, 146 U.S. 370, 372 (1892) ("A leading principle that pervades the entire law of criminal procedure is that, after indictment found, nothing shall be done in the absence of the prisoner."). Federal Rule of Criminal Procedure 43(a) requires a defendant to be present at "the initial appearance, the initial arraignment, and the plea"[14] as well as "every trial stage" and "sentencing." Although Rule 43(b)(3) permits a defendant to be absent from a conference or hearing on a pure "question of law," the Federal Rules do not contemplate or explicitly authorize such a hearing or conference *before* the defendant has made an initial appearance.[15]

The two district court cases relied on by Defense Counsel do not support their request to enter a limited appearance. In *United States v. Swank Corp.*, although counsel was permitted to enter a special appearance for the purpose of requesting that restrained assets be released, it seems that the defendant in that matter had already made an initial appearance before the district court judge, thus submitting to the court's jurisdiction. 797 F. Supp. 497, 499 (E.D. Va. 1992). In addition, the memorandum opinion cited by Defense Counsel does not indicate whether the

---

[14] Rule 43(a) notes that Rules 5 (governing initial appearance) or 10 (governing arraignment) may except a defendant's appearance. The 2002 Amendments make clear that such an exception exists only when the court permits a defendant to appear by video conferencing or accepts a defendant's waiver of appearance at arraignment. *See* Rule 43, Advisory Committee Notes to 2002 Amendments.

[15] *See*, *e.g.*, Fed. R. Cr. P. 12(c) (authorizing court to set pretrial motion deadline and/or schedule motion hearing "at the arraignment or as soon afterward as practicable"); Rule 12, Advisory Committee Notes to 1974 Amendments (noting that subdivision (c) is designed to encourage the disposition of pre-trial motions "in a single hearing rather than in a series of hearings").

United States opposed the limited appearance, as it does here; whether the district court imposed an obligation on counsel analogous to Local Criminal Rule 57.4(d)(3); or whether counsel in that matter appeared to have potential conflicts of interest, as they do here. *Id*. Instead, the matter before the court was whether to release restrained assets, a request which the court denied, except for a single piece of property partially owned by an unindicted third party, which the government agreed to release. *Id*. at 504.

In *United States v. Tucor Int'l, Inc.*, although counsel there was permitted to enter a limited appearance for the purpose of filing a motion to dismiss, the district court found that "special circumstances" warranted the relief even though the defendants had not made an initial appearance. Order at 5, Case No. 92-cr-425 (N.D. Cal. Oct. 20, 1997) (Dkt. 102). The special circumstances, none of which are present here, included a foreign government "repeatedly" protesting the indictments as an infringement of its sovereignty, stating that the alleged conduct was immunized by statute, and claiming that the prosecution violated the United States' treaty obligations. *Id*. at 6. In addition, the order cited by Defense Counsel does not indicate whether the district court imposed an obligation on counsel analogous to Local Criminal Rule 57.4(d)(3), or whether counsel in that matter appeared to have potential conflicts of interest, as they do here. Defense Counsel have not demonstrated any "special circumstances" justifying the multiple limited appearances that have been requested, prior to the defendants' initial appearance.

    **b.**  **The relief requested contravenes the fugitive disentitlement doctrine.**

Defendants' attempt to seek pre-appearance relief also runs afoul of the fugitive disentitlement doctrine, which "provides that the fugitive from justice may not seek relief from

the judicial system whose authority he or she evades."[16] *In re Grand Jury Subpoenas*, 179 F. Supp. 2d 270, 285-86 (S.D.N.Y. 2001). Other circuits have already held that a defendant who resists extradition to the United States to face criminal charges is a "fugitive" for purposes of the doctrine. *See*, *e.g.*, *Maydak v. U.S. Dep't of Education*, 150 Fed. App'x 136, 137-38 (3rd Cir. 2005) (*per curiam*) ("[P]rior to [Maydak's] return, he contested extradition. Thus, he was indeed a fugitive"; affirming district court dismissal of FOIA requests filed from Canada); *In re Assets of Martin*, 1 F.3d 1351, 1356 (3d Cir. 1993) (concluding, where criminal defendant had been indicted and defense counsel could "present no facts from which [the court] could conclude that he is unable to return [from Russia] to answer the indictment," that the court "can regard him as a fugitive"); *United States v. Catino*, 735 F.2d 718, 779 (2d Cir. 1984) (holding, where criminal defendant "actively resisted the extradition request throughout the proceedings," that the defendant engaged in "constructive flight from justice").

In applying the fugitive disentitlement doctrine in *Martin*, the appellate court concluded that "we believe that inasmuch as [the defendant] is unwilling to submit to the jurisdiction of the criminal court in which he has been indicted and to abide the consequences of the ultimate judgment of that court, we should not afford him the opportunity of challenging the validity of

---

[16] The fugitive disentitlement doctrine is codified at 28 U.S.C. § 2466 and provides, in full: "(a) A judicial officer may disallow a person from using the resources of the courts of the United States in furtherance of a claim in any related civil forfeiture action or a claim in third party proceedings in any related criminal forfeiture action upon a finding that such person -- (1) after notice or knowledge of the fact that a warrant or process has been issued for his apprehension, in order to avoid criminal prosecution -- (A) purposely leaves the jurisdiction of the United States; (B) declines to enter or reenter the United States to submit to its jurisdiction; or (C) otherwise evades the jurisdiction of the court in which a criminal case is pending against the person; and (2) is not confined or held in custody in any other jurisdiction for commission of criminal conduct in that jurisdiction. (b) Subsection (a) may be applied to a claim filed by a corporation if any majority shareholder, or individual filing the claim on behalf of the corporation is a person to whom subsection (a) applies."

proceedings related to the criminal case." 1 F.3d at 1357.[17] Here, the fugitive disentitlement doctrine prevents defendants from resisting extradition and hiring Defense Counsel in the United States to litigate specific issues in the defendants' absence, and certainly at the victims' expense, particularly where Defense Counsel attempt to introduce factual information not under oath.

### D. Dismissal of Defendant Megaupload Limited for Lack of Service Would Be Improper.

Defense Counsel claim that because Defendant Megaupload Limited "is a foreign corporation with no U.S. agents or offices," *see* Proposed Motion to Dismiss at 1, that the criminal indictment against the company must be dismissed. This line of reasoning leads to the incredible conclusion that foreign corporations can commit crimes in the United States without risk of being brought to justice here. *Id.* ("Wholly foreign corporations, therefore, may not be prosecuted for alleged violations of federal criminal law unless they waive service.") Under Defense Counsel's approach, dismissal is mandated even where, as alleged in the Superseding Indictment, Defendant Megaupload Limited transacted business in the Eastern District of Virginia and purposefully failed to establish an agent to receive service of process. And even where, as here, the corporate defendant has actual notice of the charges. Such a position is not supported by the plain language of the Federal Rules of Criminal Procedure or legal precedent.

Rule 4(c)(3)(C) provides that "[a] summons is served on an organization by delivering a copy to an officer, to a managing or general agent, or to another agent appointed or legally authorized to receive service of process." In addition, "[a] copy must also be mailed to the

---

[17] *See also*, *e.g.*, *United States v. Gayatrinath*, No. 02 cr 673, 2011 WL 873154, *2 (S.D.N.Y. Mar. 11, 2011) (declining to consider motion to dismiss indictment by defendant resisting extradition in India); *United States v. Nabepanha*, 200 F.R.D. 480, 482-83 (S.D. Fla. 2001) (denying criminal defendant's motion for discovery from government where defendant's failure to voluntarily enter United States was based, at least in part, on fear of arrest).

organization's last known address within the district or to its principal place of business elsewhere in the United States." *Id*. As an initial matter, Defense Counsel admit that the United States will be in a position to deliver a copy of the summons to the defendants, who are officers and agents of the organization, as required by Rule 4, after they arrive in the United States following extradition. *See* Proposed Motion to Dismiss at 5.

With respect to the mailing provision, Rule 4 does not provide either a deadline for mailing or any remedy for failing to do so, let alone a remedy as severe as dismissal. When read together with Rule 2, which instructs that the "rules are to be interpreted to provide for the just determination of every criminal proceeding, to secure simplicity in procedure and fairness in administration, and to eliminate unjustifiable expense and delay," the provision should be interpreted to require mailing a copy of the summons to the organization's address or to its principal place of business in the United States, only where such an address or place of business exists. As a result, Defense Counsel have been unable to identify any legal precedent concluding that dismissal is an appropriate remedy under these circumstances.[18] In contrast, other courts have broadly interpreted Rule 4 to uphold service, so long as the government acts in good faith and the corporate defendant receives sufficient notice of the charges. *See, e.g, United States v.*

---

[18] In *United States v. Johnson Matthey PLC*, the only case cited by Defense Counsel in support of their position, the magistrate judge did not rule on a motion to dismiss but instead quashed a summons that the government had mailed to the corporate defendant's subsidiary in the United States. 2007 WL 2254676, at *2 (D. Utah Aug. 2, 2007). With respect to Rule 4's mailing requirement, the magistrate judge recognized that "an alternative means of service may be the Mutual Legal Assistance Treaty (MLAT)" between the two countries. *Id*. In the district court's subsequent order upholding the magistrate judge's decision, the district court left open the possibility of interpreting Rule 4 more broadly, stating: "If the United States attempts in good faith, but is unable, to serve the Summons and Indictment on [the corporate defendant] by a method that is an alternative to Rule 4 of Federal Rules of Criminal Procedure, the United States may renew its Objection [to the magistrate judge's order] before the Court." *United States v. Johnson Matthew PLC*, Case No. 2:06-cr-169, Order, at 2 (D. Utah Feb. 19, 2008) (Dkt. 125).

*The Pub. Warehousing Co. K.S.C.*, 2011 WL 1126333, at *8 (N.D. Ga. Mar. 28, 2011) (concluding that service of a criminal summons on a foreign corporate defendant's U.S. subsidiary — rather than the corporate defendant itself — satisfies Rule 4); *United States v. Chitron Electronics Co. Ltd.*, 668 F. Supp. 2d 298, 305-6 (D. Mass. 2009) (concluding that service of a criminal summons on an officer of a foreign corporate defendant's U.S. subsidiary — rather than the corporate defendant itself — satisfies Rule 4). It would simply be unprecedented to dismiss the charges against Defendant Megaupload Limited at this time.

      **E.    Any *Farmer* Motion Would be Meritless.**

This Court addressed Defense Counsel's request to file a *Farmer* motion during the April 13, 2012 hearing, concluding that such a request was "premature." Transcript of Hearing on Motions, at 39:4-14. As Defense Counsel have failed to identify any material change in circumstances since that hearing, the request remains premature.[19] In the event the Court decides to address the Proposed *Farmer* Motion on the merits, such a motion has little likelihood of success. The initial inquiry in the *Farmer* analysis is whether, due to the government's restraint of property, the criminal defendant does not have funds to hire counsel for his defense. *United*

---

[19] The New Zealand court's May 29, 2012 decision regarding the scope of discovery in the extradition proceedings does not constitute a change in circumstances, particularly where the New Zealand court wrongly states, in apparent reliance on New Zealand defense counsels' unsupported assertions, that the "the United States is attempting to utilise concepts from the civil copyright context as a basis for the application of criminal copyright liability which necessitates a consideration of principles such as the dual use of technology or what they be described as significant non infringing uses." Decision of His Honor Judge David J. Harvey on Application for Disclosure, ¶ 244 (May 29, 2012), attached as Exhibit 4 to Motion to Enter Limited Appearance. As charged in the Superseding Indictment, this prosecution does not rely on "concepts from the civil copyright context." The defendants and their various defense counsel have introduced civil concepts in an attempt to exaggerate the complexity of the criminal charges, and to distract from allegations in the Superseding Indictment that the defendants themselves used the Mega Sites to infringe copyrighted works and knowingly encouraged users to do the same — even going so far as to pay repeat infringers who uploaded and distributed copyright-infringing materials, in this district and elsewhere.

*States v. Farmer*, 274 F.3d 800, 804 (4th Cir. 2001). "If a defendant does not make such a threshold showing of need to use wrongly seized assets to pay his attorneys, 'then the private interest of the *Mathews* [*v. Eldridge*, 424 U.S. 319 (1976)] calculus drops out of the picture, tipping the balance of interests against a post-restraint hearing.'" *Id.* at 804.

Here, it is undisputed that a New Zealand court, despite objections from the United States, has ordered that Defendant Kim Dotcom receive NZD $301,758.70 (more than $240,000 in U.S. dollars), to be released in monthly installments of NZD $40,000 (roughly $32,000 per month in U.S. dollars), until the funds are depleted, plus a monthly stipend of NZD $20,000 for living expenses (roughly $16,000 per month in U.S. dollars), to be paid indefinitely. These funds are being paid from assets that have been restrained in New Zealand, pursuant to restraining orders issued by this Court at the request of the United States. Defense Counsel acknowledge that these funds have been released, but claim erroneously that the funds "cannot be used to pay legal expenses." Motion to Enter Limited Appearance at ¶ 3. Such a claim is not true, as demonstrated by the plain language of the New Zealand order, which contains no prohibition against paying legal fees. Defense Counsel also characterize the release as "limited," *id.*, though it will be a high hurdle to prove that an individual with a yearly income of at least $192,000, plus an additional $240,000 in liquid assets, is prevented from retaining competent counsel — even if such funds prove insufficient to pay Defense Counsel's billing rates or support the sheer number of attorneys who have sought to appear on the defendants' behalf. *See Caplin & Drysdale*, 491 U.S. at 624 ("[A] defendant may not insist on representation by an attorney he cannot afford.").[20]

---

[20] In addition, the New Zealand court, despite objections from the United States, has ordered that Defendant Bram van der Kolk receive NZD $9,166 per month (roughly $6,900 in U.S. dollars), from assets that have been restrained in New Zealand.

In addition, the procedural posture of *Farmer* is different from the present case in a dispositive way: whereas Farmer sought access to assets seized pursuant to civil forfeiture statutes *pre-indictment*, *see* 274 F.3d at 801, here, all seizures were effected following a grand jury's finding of probable cause that they were subject to criminal forfeiture, as well as this Court's probable cause finding with respect to the seizure warrants. *See* Superseding Indictment at 81-90; *see also United States v. Monsanto*, 491 U.S. 600, 615 (1989) (holding that "assets in a defendant's possession may be restrained . . . based on a finding of probable cause to believe that the assets are forfeitable"). As such, the seized assets are simply not the defendants' to spend — and they never were. *See Caplin & Drysdale*, 491 U.S. at 627 (explaining "long-recognized and lawful practice of vesting title to any forfeitable assets, in the United States, at the time of the criminal act giving rise to forfeiture"). The Supreme Court in *Monsanto* held explicitly that "there is no exemption from § 853's forfeiture or pretrial restraining order provisions for assets which a defendant wishes to use to retain an attorney." *Id.* at 614.[21] Where, as here, the government seeks to preserve seized and restrained assets for a "restitutionary end, the Government's interest in forfeiture is virtually indistinguishable from its interest in returning to a bank the proceeds of a bank robbery; and a forfeiture-defendant's claim of right to use such

---

[21] Similarly, the Supreme Court explained in *Caplin & Drysdale*:

> A defendant has no Sixth Amendment right to spend another person's money for services rendered by an attorney, even if those funds are the only way that the defendant will be able to retain the attorney of his choice. A robbery suspect, for example, has no Sixth Amendment right to use funds he has stolen from a bank to retain an attorney to defend him if he is apprehended. The money, though in his possession, is not rightfully his; the Government does not violate the Sixth Amendment if it seizes the robbery proceeds and refuses to permit the defendant to use them to pay for his defense. No lawyer, in any case, has the right to accept stolen property, or ransom money, in payment of a fee. The privilege to practice law is not a license to steal.

491 U.S. at 626 (internal bracketing and ellipses omitted).

assets to hire an attorney, instead of having them returned to their rightful owners, is no more persuasive than a bank robber's similar claim." *Id.* at 629-30.

## III. CONCLUSION

For these reasons, the United States respectfully suggests that an oral hearing on this matter is unnecessary and requests that this Court deny on the papers Defense Counsel's Motion to Enter Limited Appearance and strike the underlying proposed motions. In the event the Court wishes further briefing on the underlying proposed motions, the government would request additional time to respond.

Dated: June 13, 2012                    Respectfully submitted,

                                        Neil H. MacBride
                                        United States Attorney


                                By:     /s/ Ryan K. Dickey
                                        Ryan K. Dickey
                                        Jay V. Prabhu
                                        Andrew Peterson
                                        Lindsay A. Kelly
                                        Assistant United States Attorneys

                                        Lanny A. Breuer
                                        Assistant Attorney General
                                        U.S. Department of Justice
                                        Criminal Division

                                        Glenn C. Alexander
                                        Trial Attorney
                                        U.S. Department of Justice
                                        Computer Crime & Intellectual Property Section

## **CERTIFICATE OF SERVICE**

I hereby certify that on the June 13, 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF, which will then send a notification of such filing (NEF) to:

Christopher L. Harlow, Esq.
Thomas R. Millar, Esq.
SNR Denton US LLP
1301 K Street, NW, Suite 600, East Tower
Washington, DC 20005
Tele:  (202) 408-6816
christopher.harlow@snrdenton.com
thomas.millar@snrdenton.com

John S. Davis, V, Esq.
Williams Mullen
200 South 10th Street, 16th Floor
Richmond, VA 23219
Tele:  (804) 420-6296
jsdavis@williamsmullen.com

Julie Moore Carpenter, Esq.
Jenner & Block LLP
1099 New York Ave, NW, Suite 900
Washington, DC 20001-4412
Tele:  (202) 639-6000
jcarpenter@jenner.com

Ira P. Rothken, Esq.
The Rothken Law Firm
3 Hamilton Landing, Suite 280
Novato, CA 94949
Tele:  (415) 924-4250
ira@techfirm.net

William A. Burck, Esq.
Paul F. Brinkman, Esq.
Heather H. Martin, Esq.
Quinn Emanuel Urquhart & Sullivan LLP
1299 Pennsylvania Avenue, NW, Suite 825
Washington, DC 20004
Tele:  (202) 538-8000
williamburck@quinnemanuel.com
paulbrinkman@quinnemanuel.com
heathermartin@quinnemanuel.com

Craig C. Reilly, Esq.
111 Oronoco Street
Alexandria, VA 22314
Tele:  (703) 549-5354
craig.reilly@ccreillylaw.com

By:   /s/ Ryan K. Dickey
    Ryan K. Dickey
    Assistant United States Attorney
    United States Attorney's Office
    2100 Jamieson Avenue
    Alexandria, Virginia 22314
    Phone:  (703) 299-3700
    Fax:    (703) 299-3981
    Email:  Ryan.Dickey@usdoj.gov