IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | The Honorable Liam O'Grady |
| Plaintiff, ) | |
| ) | Case No. 1:12-cr-00003-LO |
| v. ) | |
| ) | |
| KIM DOTCOM, *et al*. ) | |
| ) | |
| Defendants. ) | |

**REPLY OF INTERESTED PARTY KYLE GOODWIN IN SUPPORT OF HIS MOTION FOR THE RETURN OF PROPERTY PURSUANT TO 18 U.S.C. § 1963 AND/OR FEDERAL RULE OF CRIMINAL PROCEDURE 41(g)**

**I.   INTRODUCTION**

As with many cases involving new technologies and services, this one presents an issue of first impression. Specifically, it raises the question of whether the government has a responsibility to protect the rights of innocent third-party consumers whose data, stored in the cloud, gets caught up in a larger seizure of the website hosting that data— and whether a court has the power to require the government to meet that responsibility.

The answer to both questions must be yes, but not—contrary to the government's assumption—because any court has ruled on this specific situation. With due respect, the government has missed the point. Federal criminal laws, the Federal Rules of Criminal Procedure, and black-letter case law all grant this Court broad equitable power and counsel in favor of using those powers to remedy the harm Mr. Goodwin and other Megaupload customers have suffered. The government claims that this existing law is not on all fours but, of course, it could not be—the facts of this case are new, as are the procedures the government employed and continues to employ. It is up to this Court to determine how existing law applies to these new

1

circumstances. What is clear is that if the government had seized a hotel or a bank—or effectively shut that building down while executing a search warrant—both law and equity would require the government to facilitate the return of third-party property. Neither the law, nor the government's responsibilities, should be any different where digital property is concerned.

Mr. Goodwin has made a cognizable claim for redress. This Court should exercise its equitable power and right the wrong suffered by him and others like him.

## II. ARGUMENT

### A. The Government's Actions Amount To A Constructive Seizure That Has Deprived Mr. Goodwin Of His Property.

Since this case began, the government has attempted to shirk responsibility for its seizure of third-party property. In its latest brief, for example, the government claims that it is not "currently depriving the defendant [*sic*] of his property" and that it does not have "possession, custody, or control" of that property.[1] Resp. of the United States to Non-Party Kyle Goodwin's Mot. for the Return of Property Pursuant to 18 U.S.C. § 1963 and/or Fed. Rule of Crim. Proc. 41(g) ("Gov't Opp."), Dkt. No. 99 at 7. This is not correct. Mr. Goodwin's data may exist on servers belonging to Carpathia, but it was the government that seized Mr. Goodwin's tools of access and continues to deprive him of those tools. For example, the government seized the domain names necessary for Mr. Goodwin to get to the site where his property resided and the funds necessary to keep those sites running, and has essentially blocked access to any individual with the technical know-how to run the Megaupload site. *See, e.g.,* Superseding Indictment, Dkt.

---

[1] Of course, Mr. Goodwin is not a defendant in this case. For purposes of this Reply Brief, however, counsel assumes that the government was referring to Mr. Goodwin's property, not defendants'. It is undisputed that the government indeed has possession of defendants' property. Superseding Indictment, Dkt. No. 34 at 83-89.

2

No. 34 at 83-89. As a result, Mr. Goodwin has been left unable to access his property for many months.

Moreover, as both the Fourth Circuit and the Supreme Court have noted, the government need not retain control of seized property to violate a person's Fourth Amendment right to that property. Indeed, a seizure of property can take place even if the government never had "possession, custody or control" of that property at all. Rather, as the Fourth Circuit noted in *Presley v. City of Charlottesville*, "the Supreme Court has held that a seizure of property occurs whenever 'there is some meaningful interference with an individual's possessory interests in that property.'" 464 F.3d 480, 487 (4th Cir. 2006) (quoting *United States v. Jacobsen,* 466 U.S. 109, 113 (1984)). In *Presley,* the city of Charlottesville had published a hiking map erroneously showing a public trail across Presley's property, which gave rise to a Fourth Amendment seizure claim against the government. *Id.* at 488-89. The Fourth Circuit found that there had "clearly" been a meaningful interference when the plaintiff was "deprived of the use of part of her property" in a way that was "disruptive, stressful and invasive." *Presley*, 464 F.3d at 487.

The question, then, is not whether the government ever had "possession, custody, or control" of the property, but whether the government's actions, and the resulting disruption of Mr. Goodwin's business and economic stress, constitute "meaningful interference" with his possessory interest in his property. The answer in this case must be yes. As in *Presley*, Mr. Goodwin has been deprived of his property and has suffered disruption and stress as a result. Having relied on Megaupload to back up files vital to his business, Mr. Goodwin now finds himself unable to access those files.

Nor would it be relevant if the interference with Mr. Goodwin's property were framed as a secondary consequence of government action. In *Presley* the city merely created the

3

circumstances that made third parties' interference with the plaintiff's possessory interest foreseeable. The Fourth Circuit still found that the city "'did more than adopt a passive attitude toward the underlying private conduct' and that therefore the acts of private persons [were] attributable to" the government. *Id.* at 488 (quoting *Skinner v. Ry. Labor Execs. Ass'n*, 489 U.S. 602, 615 (1989)).

As *Presley* shows, the government cannot sidestep its responsibility for a Fourth Amendment deprivation merely by contending that a private party—here, Carpathia—exercised greater control over the property in question that the government. Indeed, the government itself conducted a search, seized property, and impounded funds. As a direct result of these actions, Mr. Goodwin's property is stranded on servers that he cannot afford to access. Meanwhile Megaupload's funds are in government hands and Carpathia protests that it cannot afford to access the servers itself. Thus, the government has interfered with Mr. Goodwin's right to access his property, thus violating his Fourth Amendment rights, whether or not it is directly blocking his access to Carpathia's servers.

The government admits as much when it states that "an apparent consequence of the government's restraint of Megaupload's assets was a termination of the Megaupload service." Gov't Opp. at 5. This gets to the heart of the problem: the nontraditional nature of the property requires us to look beyond how courts have expressly treated interference with property in the past, but instead invites us to understand how the government's actions here prohibited Mr. Goodwin and others from accessing what rightfully belongs to them. The termination of the Megaupload service, without notice to its customers or other provisions for return of their lawful data, meaningfully interfered with Mr. Goodwin's possessory rights in his property.

**B.    This Court Has All The Tools Necessary To Act In Equity.**

Both Section 1963 of the United States Code and Rule 41(g) of the Federal Rules of Criminal Procedure support the conclusion that this Court may, and should, exercise its equitable jurisdiction in order to effectuate each provision's purpose and right the wrong that has been done to Mr. Goodwin.

No one disputes that, as the government notes, criminal statutes provide a general rule for post-conviction procedure for return of third-party property. As explained in more detail in Mr. Goodwin's opening brief (Dkt. No. 91 at 6-8), Section 1963 provides for a pre-conviction third-party right to challenge government takings of third-party property when equity so requires. *See, e.g., United States v. Siegal*, 974 F. Supp. 55, 58 (D. Mass. 1997); *United States v. Wu,* 814 F. Supp. 491, 494-95 (E.D. Va. 1993);[2] *United States v. Real Prop. in Waterboro,* 64 F.3d 752, 755-56 (1st Cir. 1995) (holding that due process requires that, under Section 853(e), third parties can participate in pre-conviction restraining order procedures); *United States. v. Scardino,* 956 F.Supp. 774, 780 n.5 (N.D. Ill. 1997) (finding that a third-party pre-conviction right to challenge forfeitures may be "both statutorily and constitutionally appropriate").

Recognizing that right is especially important here, since this case could easily drag on for years or, if the government fails to extradite the individual defendants, may never be

---

[2] The government claims that *United States v. Cox,* 575 F.3d 352 (4th Cir. 2009), overrules *Wu's* holding that a third party may move for return of its property pre-conviction. Gov't Opp. at 6-7 n.5. Yet, in *Cox,* the Fourth Circuit does not so much as mention *Wu*, let alone overrule it. In *Cox,* the Fourth Circuit merely stated, again, the general rule that third parties do not have a right as a matter of course to petition a court pre-conviction, not whether the court may decide to allow it. 575 F.3d at 358. In fact, the only question before the Fourth Circuit there was whether the government was "substantially justified" in opposing the third-party movant's request for property where it was unclear if the movant even had a right to the property at issue, *id*. at 355, and only one factor in that analysis was whether that movant had a right to certain process.

5

prosecuted at all.[3] As the Ninth Circuit recognized in *United States v. Crozier*, such delay is unacceptable:

> We believe that the absence of any hearing on the imposition of a restraining order on a defendant's property, or a hearing for parties with a third party interest which takes place months or years after a restraining order is issued, cannot be construed as a hearing provided "at a meaningful time."

*United States v. Crozier*, 777 F.2d 1376, 1383-84 (9th Cir. 1985).

Indeed, Section 1963 should be read to ensure that third parties are not burdened with the kind of harm that comes from deprivation of one's property. As this Court has found, in "[r]ecognizing the harsh consequences *in personam* forfeiture can work on innocent persons, Congress … has expressed its intent that these heavy economic sanctions not be imposed on innocent third parties." *United States v. Reckmeyer,* 628 F.Supp. 616, 620 (E.D. Va. 1986). Indeed, criminal forfeitures are meant to be solely punitive in nature, and "prudential arguments concerning the burdens of restraint are clearly permitted by the statute, which recognizes the due process concerns that are triggered by judicial orders aimed at third parties." *Siegal,* 974 F.Supp. at 58 (quoting *Waterboro*, 64 F.3d at 756).

Of course, it is not just Section 1963 that allows this Court to exercise jurisdiction. Rule 41(g) likewise provides a post-indictment, pre-conviction vehicle under which this Court may act. *See* Brief of Kyle Goodwin in Support of his Mot. for the Return of Property, Dkt. No. 91 at 8. For example, *Matthews v. United States,* cited by the government in its opposition (Gov't Opp. at 7), contemplates scenarios under which a Court may exercise equitable jurisdiction under Rule 41. *Matthews v. United States,* 917 F. Supp. 1090, 1101-02 (E.D. Va. 1996). There, the Court held:

---

[3] The government claims that Mr. Goodwin has already had a hearing (Gov't Opp. at 5), but that is not so. The only hearing before this Court was of course on Interested Party Carpathia, Inc.'s motion. Dkt. No. 86.

6

> The purposes which occasion a court's evocation of equitable jurisdiction in forfeiture cases are generally limited to the following: the suppression of evidence prior to an indictment; the deterrence of unlawful conduct in law enforcement officials via the exclusion of illegally obtained evidence, *United States v. Castro,* 883 F.2d at 1020 (citing *United States v. Rapp,* 539 F.2d at 1160); the correction of a procedurally deficient administrative forfeiture, *Onwubiko v. United States,* 969 F.2d at 1398; and the award of equitable relief for exceptional circumstances. *Mora v. United States,* 955 F.2d at 159 (holding that a district court could exercise equitable jurisdiction to award damages where administrative forfeiture procedures were never initiated, but the property was lost by the government).

*Id.; see also United States v. Martinson,* 809 F.2d 1364, 1366-67 (9th Cir. 1987) ("A district court has jurisdiction to entertain motions to return property seized by the government when there are no criminal proceedings pending against the movant"); *Mora v. United States,* 955 F.2d 156, 158 (2nd Cir. 1992) ("[W]here no criminal proceedings against the movant are pending or have transpired, a motion for the return of property is 'treated as [a] civil equitable proceeding [] even if styled as being pursuant to Fed. R. Crim. P. 41(e), [Rule 41(g)'s predecessor]'" (internal citations omitted)).

*Mora* is particularly instructive. There, a criminal defendant moved for return of his property. The government argued that since it no longer possessed the property in question, the matter should be moot. The Second Circuit disagreed, holding that "[e]ven were [the government] able to prove its lack of possession, a live controversy still remains." *Mora*, 955 F.2d at 159; *see also United States v. Chambers,* 192 F.3d 374, 375 (3d Cir. 1999).

Here, as in *Mora*, the government has attempted to moot the matter, but a live controversy remains as long as Mr. Goodwin is deprived of his property.[4] Moreover, the government clearly evidenced its disregard for Mr. Goodwin's rights in its January 27 letter,

---

[4] The government wrongly claims that economic harm cannot be irreparable. To the contrary, economic harm can indeed be irreparable where, as here, it threatens the viability of the business. *Fed. Leasing, Inc. v. Underwriters at Lloyd's*, 650 F.2d 495, 500 (4th Cir. 1981).

7

where it claimed that Carpathia was free to "begin deleting the contents of the [Megaupload] servers" within the week. Dkt. No. 32. If Carpathia and others (including current counsel for Mr. Goodwin) had not publicized the letter's content,[5] and if Carpathia had not chosen to disregard the government's statement, Mr. Goodwin and others like him likely would not have known their property was destroyed until it was too late.

As with Section 1963, the exercise of jurisdiction under Rule 41 would effectuate that rule's intent. The advisory committee notes make clear that a third party's right to his property is paramount, especially when the government no longer needs access to that property. Fed. R. Crim. P. 41 Notes of Advisory Committee on Rules—1989 Amendment ("The fourth amendment protects people from unreasonable seizures as well as unreasonable searches. … If the United States has a need for the property in an investigation or prosecution, its retention of the property is generally reasonable. But, if the United States' legitimate interests can be satisfied even if the property is returned, continued retention of the property would become unreasonable."). The government has admitted that it no longer needs access to the property that contains Mr. Goodwin's files. As such, it should be returned.

**C. Under Its Equitable Power, The Court May Provide A Process For Third-Party Access To Rightfully-Owned Data.**

Once a court decides to exercise its equitable power, it has a wide range of remunerative options at its disposal. Indeed, it "has frequently been said that 'the historic purpose of equity is to secure complete justice.'" *United States v. Farese,* No. 80 CR. 063 (MJL), 1989 WL 74963, at *5 (S.D.N.Y. June 25, 1989), *citing EEOC v. Gen. Tel. Co.,* 599 F.2d 322, 334 (9th Cir. 1979).

---

[5] http://www.megaretrieval.com/

The Court could secure complete justice here by appointing an independent third party to assess the technological and financial requirements for provision of access to innocent third parties. That third party would be responsible for creating a practical and efficient process that would presumably contain: 1) use of the relevant domain(s) for a limited purpose; 2) notice to users that they may reclaim lawful property not related to the conspiracy; and 3) the technical ability to make access for reclamation possible. This is doable. The funds exist. In any event, it is important for our society to fashion a way to get this done, and the government needs to know that when it seizes third-party property indiscriminately it may be required to allow innocent "depositors" to recover that property.

As Mr. Goodwin has argued before (Dkt. No. 51 at 17), such an arrangement would be consistent with the legislative and judicial policy behind equity receiverships in analogous contexts. Receiverships are an equitable remedy. Though created for various purposes, their overall goal is "marshaling and untangling a company's assets." *United States v. Acorn Tech. Fund*, 429 F.3d 438, 443 (3d Cir. 2005). The Court retains considerable discretion in determining whether or not to appoint a receiver. *Hutchinson v. Fidelity Inv. Ass'n,* 106 F.2d 431, 436 (4th Cir.1939) (citing *Pennsylvania v. Williams,* 294 U.S. 176, 182 (1935) in holding that "[i]t should not be forgotten that the appointment of a receiver is not a matter of right, but one resting in the sound discretion of the court.").

This power "derives from [the court's] inherent equitable powers under the common law." *First United Bank & Trust v. Square at Falling Run, LLC*, No. 1:11CV31, 2011 WL 1563108, at *1, *3 (N.D.W.Va. Mar. 31, 2011) (*citing Liberte Capital Group, LLC v. Capwill,* 462 F.3d 543, 551 (6th Cir. 2006)). "The receiver's role, and the district court's purpose in the appointment, is to safeguard the disputed assets, administer the property as suitable, and to assist the district

court in achieving a final, equitable distribution of the assets if necessary." *Liberte Capital Group*, 462 F.3d at 551 (citing 13 James Wm. Moore et al., *Moore's Federal Practice* ¶¶ 66.02–03 (3d ed.1999)).

The government wrongly claims that sovereign immunity bars recovery by Mr. Goodwin (Gov't Opp. at 11). To do so it must misconstrue Mr. Goodwin's claims as ones for money damages. Not so. Mr. Goodwin is requesting access to his property, and the government is the party that both deprived him of his property and now stands in the way of that access.

The government also claims that Mr. Goodwin can make a claim against Megaupload or Carpathia. Neither option is satisfactory. First, requiring innocent third parties, many of whom are individuals, to obtain counsel and file a separate suit in federal court is "inadequate in light of the time and expense involved, particularly where the court considering the motion already has jurisdiction over the matter." *Martinson,* 809 F.2d at 1368. *See Farese,* 1989 WL 74963, at *6 ("Our efforts to remedy the government's misconduct should not be delayed or frustrated by first requiring [movant] to file a civil action. Our supervisory authority is most appropriately exercised in the action in which government transgressions have occurred, rather than in a later administrative or civil proceeding."). Second, it is clear that Megaupload does not have the resources or physical ability to provide access to Mr. Goodwin and Carpathia—another apparently innocent bystander to the dispute between the government and Megaupload—has repeatedly (and without challenge) claimed that it lacks the technical ability to access the data.

It is worth repeating the simple facts that underscore Mr. Goodwin's claims: Mr. Goodwin, an innocent third party, lost access to his property when the government executed search warrants for servers belonging to Carpathia. The government executed those warrants and then informed Carpathia of its position that the data could be deleted despite knowing that

10

millions of Megaupload customers would lose access to their property. So far, there is no evidence, short of a dismissive footnote in its briefing, that the government gave any consideration to those important third-party rights. If the government will not do its part to protect the rights of its citizens, the Court should do so.

## III. CONCLUSION

The government insists that it may conduct searches and seizures in criminal proceedings without so much as considering how those searches and seizures directly result in the denial of innocent third-party property rights. That complying with due process to protect those important constitutional rights might present a challenge (Gov't Opp. at 10) is no excuse for refusing to answer that challenge, here or in any other case. There is no question that, had the government seized a hotel or a bank and then effectively locked the doors when it left, innocent customers would afterwards be able to recover their property stored in those establishments, and the government would be required to take the necessary steps to facilitate their recovery. Allowing the government to ignore Mr. Goodwin's property rights here, merely because the property is digital and stored in a cloud computing service, would set a dangerous precedent. This Court has all the tools it needs to fashion an equitable remedy to protect innocents like Mr. Goodwin; it should use those tools here.

Dated: June 14, 2012

Respectfully submitted,

    /s/ John S. Davis
John S. Davis
WILLIAMS MULLEN
200 So. 10th St.
Richmond, VA 23218
Telephone: (804) 420-6296
Facsimile: (804) 420-6507

11

Email: jsdavis@williamsmullen.com

Julie P. Samuels
Corynne McSherry
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA 94110
Telephone: (415) 436-9333
Facsimile: (415) 436-9993
Email: julie@eff.org

Abraham D. Sofaer
THE HOOVER INSTITUTION
Stanford University
434 Galvez Mall
Stanford, CA 94305-6010
Telephone: (650) 723-1754
Email: asofaer@stanford.edu

*Attorneys for Interested Party Kyle Goodwin*

## CERTIFICATE OF SERVICE

I hereby certify that on June 14, 2012, the foregoing was filed and served electronically by the Court's CM/ECF system upon all registered users, as well as by first class U.S. mail, postage prepaid, upon the following:

Jay V. Prabhu
Chief, Cybercrime Unit
Assistant United States Attorney
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, VA  22314

Ed McNicholas
Sidley Austin LLP
1501 K Street, NW
Washington, DC  20005
*Counsel to Megaupload Limited*

Ira Rothken
Rothken Law Firm
3 Hamilton Landing, Suite 280
Novato, CA  94949
*Counsel to Megaupload Limited*

Stephen Fabrizio
Jenner & Block
1099 New York Avenue, NW
Suite 900
Washington, DC  20001
*Counsel to Motion Picture Association of America*


Dated:  June 14, 2012                                  /s/ John S. Davis
                                                       John S. Davis