IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | The Honorable Liam O'Grady |
| Plaintiff ) | |
| v. ) | |
| ) | Criminal Action No. 1:12-CR-3 |
| KIM DOTCOM, et al., ) | |
| ) | |
| Defendants ) | |

**REBUTTAL MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION OF SPECIALLY APPEARING DEFENDANT MEGAUPLOAD LIMITED
TO DISMISS INDICTMENT FOR LACK OF PERSONAL JURISDICTION**

The rules governing service of a criminal summons on a corporate defendant are explicit, straightforward and clear.  For such service to be valid, the Government is required *both* to serve the summons on an agent or officer of the corporation *and* to mail a copy of the summons "to the organization's last known address within the district or to its principal place of business elsewhere in the United States."  FED. R. CRIM. P. 4(c)(3)(C).  Because Defendant Megaupload Limited ("Megaupload") never had an office in the United States, the Government cannot properly serve it under Rule 4 (hereinafter, "the Rule").

The Government bears the burden of proving that it has validly served Megaupload within the letter of the Rule, *see United States v. Porter*, No. 03-CR-0129 (CPS), 2008 WL 5377946, at *10 (E.D.N.Y. Dec. 23, 2008), and effectively concedes it cannot carry it.  So the Government instead urges this Court to rewrite the Rule.  It specifically puts forth three alternative arguments that no federal court has ever accepted, as far as we are aware, and *for which it cites not a single relevant precedent*.

1

First, the Government argues that, because Megaupload is aware of these proceedings and purportedly had "minimum contacts" with the United States, the Rule has no application. By this argument, the entire Rule can be disregarded wherever the Government deems it unnecessary or perhaps unduly burdensome.  Second, the Government contends that, even if it must otherwise conform to the Rule, it may disregard the latter portion of the corporate-service requirement and decline to mail the summons to Megaupload.   With this argument, the Government would read out of existence the express mailing requirement of Rule 4(c)(3)(C). Finally, the Government argues that, to the extent it must nod at Rule 4's mailing requirement, it may ignore the Rule's express prescription and simply send the summons to an address of its choosing.   Here, the Government goes so far as to claim it can deliver the summons to Megaupload's address in *Hong Kong*, even though that approach would essentially strike Rule 4(c)(3)(C)'s requirement that the summons be mailed to the company's "last known address *within the district* or to its principal place of business elsewhere *in the United States*."

None of the Government's arguments squares with the plain language of the Rule or with any known precedent construing it.  Each should be dismissed, along with the indictment against Megaupload.[1]

---

[1]   The Government asks the Court to decide this motion on the papers and without oral hearing.  *See* Dkt. 117 at 2 n.3.  Megaupload respectfully opposes this request.  This is a dispositive motion in a criminal case.  The Government is opposing only by rewriting the rules governing service of a criminal summons on a wholly foreign corporation in a way that is, by all indications, unprecedented.  This does not appear to be the rare instance in which oral argument would serve no useful purpose.  Oral argument should be held on July 27, 2012, as previously set by the Court.

## <u>ARGUMENT</u>

**I.    ABSENT VALID SERVICE OF PROCESS, THE COURT LACKS PERSONAL JURISDICTION OVER DEFENDANT MEGAUPLOAD.**

Service of process is "fundamental to any procedural imposition on a named defendant" and a prerequisite to the exercise of judicial power over a defendant.  *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) ("In the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant.").  The Government contends that this jurisdictional prerequisite should be somehow suspended in the present case, because Megaupload is aware of the proceedings against it.  *See* Dkt. 117 at 11 ("[O]utright dismissal at this time is simply not an appropriate remedy where the corporate defendant has actual notice of the proceedings and so can show no prejudice . . . .").  All that should matter, in the Government's view, is whether "the government acts in good faith and the corporate defendant received sufficient notice of the charges."  Dkt. 117 at 13.  Were this the law, the specific prescription of Rule 4 would essentially be hortatory—the Government could deviate from it however and whenever it sees fit, without ultimate consequence.

Of course, nothing besides *ipse dixit* supports the Government's conception and bedrock principles of jurisdiction foreclose it.  To begin with, to the extent the Government's formulation is predicated upon its "good faith," it remains dubious for that reason alone.    But the Government's formulation, even as stated, is self-invented.  The Government cites two cases, *United States v. The Public Warehousing Company K.S.C.* and *United States v. Chitron Electronics Company, Ltd.*, in claimed support.  Dkt. 117 at 13.  Each of these cases, however, merely applied the alter-ego doctrine to determine whether service of a criminal summons on a *subsidiary* corporation would constitute service on its *parent*.  *See United States v. The Pub.*

*Warehousing Co. K.S.C.* ("*PWC*"), No. 1:09–CR–490–TWT, 2011 WL 1126333, at *8 (N.D. Ga. Mar. 28, 2011); *United States v. Chitron Elecs. Co. Ltd.*, 668 F. Supp. 2d 298, 305-06 (D. Mass. 2009). Neither case remotely suggests that actual notice to a corporate criminal defendant can replace the Rule's explicit mailing requirement. To the contrary, in both cases the Government mailed a copy of the summons to the relevant U.S. addresses as required by Rule 4(c)(3)(C).[2]

The Government further argues that it need not comply with the service requirements here because Megaupload's business purportedly "took place in, profited from, and injured copyright holders in the United States and in this District." Dkt. 117 at 4. Here, the Government devotes several pages of its opposition brief to enumerating various ways in which Megaupload allegedly availed itself of this forum, thereby establishing "minimum contacts" with the United States. *See id.* at 4-7. But the Government cites not a single case holding that a criminal defendant's contacts with the forum alone can subject it to personal jurisdiction absent proper service. The reason is clear—no such case can be found. Alleged contacts with the forum no more substitute for valid service of process than actual notice does. Rather, valid service is a separate prerequisite to establishing personal jurisdiction. As the United States Supreme Court has cautioned,

> [B]efore a court may exercise personal jurisdiction over a defendant, *there must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum. There also must be a basis for the defendant's amenability to service of summons.* Absent consent, this means there must be authorization for service of summons on the defendant.

*Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987) (emphasis added); *see also Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209-10 (10th Cir. 2000) ("While service of process and personal jurisdiction both must be satisfied before a suit can proceed, they

---

[2]   *See PWC*, 2011 WL 1126333, at *2; *Chitron*, 668 F. Supp. 2d at 301-02.

are distinct concepts that require separate inquiries"); *Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 484 (3d Cir. 1993) ("Our inquiry cannot end, however, with a determination that the demands of due process are met.  Valid service is also necessary to the district court's exercise of personal jurisdiction over the Spanish defendants."); *see also Harding v. Williams Prop. Co.*, No. 96–2713, 1998 WL 637414, at *4 (4th Cir. Aug. 31, 1998) (Table) (rejecting plaintiff's argument that actual notice suffices absent proper service, because a summons entails "much more than a mere notice."); *Nat'l Dev. Co. v. Triad Holding Corp.*, 930 F.2d 253, 256 (2d Cir. 1991) ("We reject the notion that 'actual notice' suffices to cure a void service . . . .").

Thus, even assuming *arguendo* that Megaupload is aware of the charges against it and that Megaupload has purposely availed itself of this forum,[3] those facts alone cannot suffice to establish service and jurisdiction.  Instead, the requirement of proper service stands as a jurisdictional hurdle all its own.  Unless and until the Government clears this hurdle, consistent with the dictates of Rule 4's governing terms, dismissal is required.[4]

---

[3]   To be clear, Megaupload does not concede that it has had sufficient contacts with this forum to subject it to personal jurisdiction and reserves the right to bring a motion to dismiss on this basis at the appropriate time.  The only issue presently before the Court, and the only issue addressed herein, is whether the Government has served Megaupload pursuant to Rule 4.

[4]    There is no merit to the Government's contention that the fugitive disentitlement doctrine separately relieves it of the obligation to serve Megaupload.  *See* Dkt. 117 at 7 n.7.  We have found no case holding that fugitive disentitlement renders service of process unnecessary, nor has the Government cited any.  Moreover, the Government's invocation of the doctrine against Megaupload, a corporate entity that has not been served and has made no effort to flee, seems especially off target.  In any event, Megaupload respectfully incorporates by reference its previous arguments as to why the fugitive-disentitlement doctrine has no application whatsoever here.  *See* Dkt. 107 at 5-7.

## II.    THE COURT SHOULD REJECT THE GOVERNMENT'S ATTEMPT TO ABOLISH THE RULE'S EXPRESS MAILING REQUIREMENT.

The Government next claims that, if it is required to serve Megaupload, it may do so by satisfying the Rule's first requirement while ignoring its mailing requirement.  Specifically, the Government argues that service on a corporation is "complete upon delivering the summons to an officer or agent."  Dkt. 117 at 10.  According to the Government, the Rule's mailing provision is "separate" from service and "should be read to require mailing a copy of the summons to the organization's last known address within the district or to its principal place of business elsewhere in the United States, only where such an address or place of business exists."  *Id.* at 12-13.  Were this the law, the congressional judgment to limit the Rule to an address "in the United States" would not matter—or would matter only to the extent that the corporate defendant *had* an address in the United States, with the Government free to mail criminal summonses to foreign corporations all around the world at whatever addresses it may see fit, or more likely, at no address at all.

Tellingly, the Government is unable to cite any authority for its proposition that Rule 4(c)(3)(C) imposes a singular service requirement while leaving the separate mailing requirement optional.  *See* Dkt. 117 at 9-10.  There appears to be only one case addressing the Government's failure to mail the summons to a foreign corporation's last known address or principal place of business in the United States, and that case squarely contradicts the Government.  In *United States v. Johnson Matthey PLC*, the Government attempted service of a criminal summons on a wholly foreign corporate defendant that, like Megaupload, never had an address or place of business in the United States.  *See United States v. Johnson Matthey PLC*, 2007 WL 2254676, at *1-2 (D. Utah Aug. 2, 2007).  The parties stipulated that the corporation's attorney would accept service in order to satisfy the Rule's first requirement.  *See id.* at *1.  By

the Government's reasoning, service of process was complete at that time and the prosecution against the corporation should have proceeded.  But no.  Instead, the Court recognized that "Rule 4 has two requirements" and quashed service of the summons because the Government failed to satisfy the mailing requirement.  *See id.* at *1-2.

The plain language of the Rule likewise contradicts the Government's position, spelling out the mailing requirement as a component of proper service.  Subsection (c)(3), which contains the mailing requirement, expressly governs how a criminal summons is to be served.  *See* FED. R. CRIM. P. 4(c)(3).  The Government readily concedes that the analogous provision for serving a summons on an *individual* criminal defendant—likewise found in Rule 4(c)(3)—"requires both service on an appropriate individual *and* a mailing to the individual's last known address."  *See* Dkt. 117 at 9 (emphasis in original).  Nothing in Rule 4 makes the mailing requirement any less mandatory as to a corporate defendant.  To the contrary, Rule 4(c)(3)(C) states that, with respect to an organization, a copy of the summons "*must* also be mailed to the organization's last known address within the district or to its principal place of business elsewhere in the United States." FED. R. CRIM. P. 4(c)(3)(C).  The Advisory Committee Notes to the Rule confirm the same.  *See See* FED. R. CRIM. P. 4, Committee Notes on Rules—2002 Amendment (stating that "[u]nder the amended rule, *in all cases* in which a summons is being served on an organization, a copy of the summons *must* be mailed to the organization") (emphasis added).

Were the Government correct that the Rule requires only that the summons be served on a corporate agent or officer, then Rule 4's express mailing requirement would become meaningless surplusage.  That is not an available interpretation.  *See United States v. Menasche*, 348 U.S. 528, 538-39 (1955) ("It is our duty 'to give effect, if possible, to every clause and word of a statute.'") (quoting *Montclair v. Ramsdell*, 107 U.S. 147, 152 (1883)); *see also Williams v.*

*Taylor*, 529 U.S. 362, 404 (2000) (describing this rule as a "cardinal principle of statutory construction"); *Washington Market Co. v. Hoffman*, 101 U.S. 112, 115-16 (1879) ("As early as in Bacon's Abridgment, sect. 2, it was said that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'").

## III.   THE GOVERNMENT'S EFFORT TO REWRITE THE RULE TO PERMIT ALTERNATIVE FORMS OF SERVICE IS IMPROPER.

Unable to conform to Rule 4 as written, the Government asks this Court to rewrite the Rule around its current designs to prosecute (and maintain an asset freeze against) Megaupload as a foreign corporate defendant.  *See* Dkt. 117 at 11-20.  Here, the Government runs up against contrary legislative intent.  When Criminal Rule 4(c)(3)(C) is compared with the parallel civil rule, it is apparent that the drafters intended to exempt wholly foreign corporations from service of criminal process.  Civil Rule 4(h), unlike its criminal equivalent, has a provision specifically authorizing service on foreign organizational defendants like Megaupload.  *See* FED. R. CIV. P. 4(h) ("[A] domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served: . . . at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)."); *see also* FED. R. CIV. P. 4(f) (setting forth methods of service on individuals abroad, including pursuant to the Hague Convention). Civil Rule 4(h) thus demonstrates that, where the drafters wanted to provide for service of process on a foreign organizational defendant, they well knew how to do it.

Criminal Rule 4, in contrast, contains no comparable provision.  To the contrary, Criminal Rule 4 requires both that a summons be served "*within the jurisdiction of the United States* or anywhere else a federal statute authorizes an arrest," FED. R. CRIM. P. 4(c)(2) (emphasis

added), and that a copy of the summons be mailed to the corporate defendant's "last known address *within the district* or to its principal place of business elsewhere *in the United States*," FED. R. CRIM. P. 4(c)(3)(C) (emphasis added). It stands to reason that the strictures of *criminal* service, as distinct from civil service, with respect to *corporations* (as defined by their legal identity), as distinct from individuals, were intentionally confined to those corporations that have some legal presence within the United States. That a different, more expansive rule *might have been* enacted only confirms that such a rule *was not actually* enacted.

If the drafters' sole objective in imposing the mailing requirement was to ensure that a corporate defendant received sufficient notice, then they could have drafted the rule to require that the Government send a copy of the summons to the company's last known address anywhere in the world. Instead, the drafters specifically mandated that the summons be mailed to an address *within the United States*. Expanding the Rule's reach to allow service on a corporation with no U.S. address, as the Government urges, would directly undermine the drafters' clear intent and would negate the Rule's requirement that the summons be mailed to the last known address in the United States.

As set forth below, each of the Government's proposed alternatives violates the Rule's express terms and would improperly expand the class of defendants subject to criminal process. Regardless whether the current provision precludes service on foreign organizational defendants intentionally (as it appears) or inadvertently, it would in any event be improper for this Court to amend the Rule as the Government requests. Although Rule 2 affords some flexibility in interpreting ambiguous rules, the Supreme Court has made clear that Rules cannot "be construed to mean something other than what they plainly say." *See, e.g.*, *Carlisle v. United States*, 517 U.S. 416, 424 (1996) (Rule 2 "set forth a principle of interpretation to be used in construing

ambiguous rules, not a principle of law superseding clear rules that do not achieve the stated objectives.").  Rule 4(c)(3)(C)'s language is indisputably clear, and the Government's attempt to rewrite it in this Court should be rejected, especially given the extraterritorial and foreign policy implications here at stake.  *See, e.g.*, *Omni*, 484 U.S. at 109 ("We would consider it unwise for a court to make its own rule authorizing service of summons.  It seems likely that Congress has been acting on the assumption that federal courts cannot add to the scope of service of summons Congress has authorized.  This Court in the past repeatedly has stated that a legislative grant of authority is necessary.").

### A.    Mailing The Summons To A Third-Party Vendor Does Not Accomplish Valid Service Under The Rule.

The Government first seeks to expand the service rules by urging that delivery of the summons to third party web hosting company Carpathia Hosting, Inc. should constitute service as against Megaupload.  *See* Dkt. 117 at 13 n.16.  Of course, that proposal makes no sense.  The reasoning behind it (such as it is) appears to be that, because Megaupload leased a portion of its computer servers from Carpathia,[5] Carpathia's Virginia facility should be deemed Megaupload's "principal place of business."  *See id.*

The law, just like common sense, goes against the Government's theory.  *Hertz Corp. v. Friend*, 130 S.Ct. 1181 (2010), the very case that the Government cites in support of its proposed expansion, in fact forecloses it.  In *Hertz Corp.*, the Supreme Court made clear that, while a corporation's business activities may span numerous jurisdictions, its "principal place of business" is a single location—the "nerve center" of the company—which is "best read as

---

[5]    While Megaupload leased some of its servers from Carpathia in the United States, it should be noted that by the Government's own count, more than half of Megaupload's servers resided outside the United States. *See* Dkt. 34 at ¶¶ 39-41 (1,726 servers were spread around the world, 690 of which were in the Netherlands); Dkt. 96-5 at ¶ 24 (reflecting that more than 300 of the servers were in Canada).

referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." 130 S.Ct. at 1192. According to the Court, "in practice it should normally be the place where the corporation maintains its headquarters." *Id.*

Nothing in the Superseding Indictment remotely suggests, much less establishes, that Carpathia's server storage facility is the singular dot on the globe that serves as Megaupload's corporate headquarters and nerve center. To the contrary, Megaupload is registered and headquartered in Hong Kong. *See* Dkt. 34 at ¶ 31. Kim Dotcom and the other officers of Megaupload are all residents and citizens of non-U.S. jurisdictions. *See id.* at ¶ 30 (Defendant Dotcom "is a resident of both Hong Kong and New Zealand, and a dual citizen of Finland and Germany."); ¶ 36 (Defendant Ortmann "is a citizen of Germany and a resident of both Germany and Hong Kong."); ¶ 38 (Defendant Van der Kolk "is a resident of both the Netherlands and New Zealand" and a "Dutch citizen."). Indeed, the Superseding Indictment does not allege that any officer of Megaupload so much as once stepped foot in Carpathia's U.S. facility, let alone that a Megaupload officer systematically used that location to "direct, control, and coordinate" Megaupload's activities.

By no reasonable application of the Supreme Court's "nerve center" test might Carpathia's facility be deemed Megaupload's principal of place of business. Indeed, the Government cites neither facts nor law that would make for a serious argument. Trying to serve Megaupload by way of Carpathia, as the Government suggests, amounts to nothing more than another jury-rigged path for circumventing the Rule.

### B. Mailing the Summons To Separately Named Co-Defendants Is Not Valid Service Under The Rule.

The Government next asks that Rule 4's mailing requirement be rewritten such that "mailing the summons to the individual defendants once extradited should satisfy the

requirement." Dkt. 117 at 13. Presumably, the Government is basing this proposal on its allegation that "the individual defendants currently resisting extradition are high-level officers of the organization and collectively hold more than 95% of the company's shares." *See id.* at 8.

Here too the Government cites not a single case. Nor can any such case be found, and for good reason: This approach would collapse the express mailing provision into the Rule's first requirement, which itself calls for "delivering a copy to an officer, to a managing or general agent, or to another agent appointed or legally authorized to receive service of process." FED. R. CRIM. P. 4(c)(3)(C). Here too, therefore, the Government is reading important prescription out of existence.[6]

### C. Mailing The Summons To The Commonwealth of Virginia's State Corporation Commission Is Not Valid Service Under The Rule.

The Government argues that "Megaupload's extensive history of transacting business in the Commonwealth of Virginia," Dkt. 117 at 14, subjects it to Virginia law governing constructive service, which can in turn be commissioned for purposes of serving a federal criminal summons. The Government is wrong for at least two reasons, as explained below.

### 1. Virginia's Constructive Service Provisions Do Not Apply to Federal Criminal Defendants.

The Government supposes that "the United States can comply with Rule 4 by mailing a copy of the summons to the State Corporate Commission, *pursuant to Virginia law*." Dkt. 117 at

---

[6]   The Government also suggests that it can comply with Rule 4(c)(3)(C)'s mailing requirement by delivering a summons to David Robb or Kasseem David Dean, on the theory that these individuals formerly served as Megaupload's Chief Executive Officer in the United States. *See* Dkt. 117 at 9 n.11. This suggestion lacks legal merit for the reasons articulated above. In any event, it suffices to note for purposes of the current request for dismissal that, whatever theoretical prospects the Government may claim, it has not actually served Mr. Robb or Mr. Dean on behalf of Megaupload.

14 (emphasis added).  But federal criminal rules do not adopt state service provisions.  The Government's attempt to conflate the former with the latter should be rejected at the threshold.

Federal Rule of Civil Procedure 4(h)(1)(A) provides that serving notice of process on a corporation can be accomplished in the manner prescribed for serving notice on an individual. Under Civil Rule 4(e)(1), state law is relevant; service can be effected by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."  Criminal Rule 4 differs; it makes no reference to state law as relevant to performing criminal service.

That presumably is why the Government again cites no case—from this or any other district—where a federal court has ever looked to state law governing constructive service in determining whether the Government has accomplished service of criminal process on a corporate defendant.  Adopting state procedural rules in the federal criminal context would deviate from both the long-standing practice of applying only federal procedural rules in federal court, *United States v. Murdock*, 248 U.S. 141, 150 (1931), *abrogated on other grounds by Murphy v. Waterfront Com'n of N.Y. Harbor*, 378 U.S. 52, 77 (1964), and from the recognition that the federal practice of adopting state law for certain substantive purposes in the civil context does not extend to federal criminal matters.  *See United States v. Powers*, 482 F.2d 941, 943 (8th Cir. 1973); *Robinson v. United States*, 144 F.2d 392, 406 (6th Cir. 1944).  "Federal criminal procedure is governed, not by state practice, but by federal statutes and decisions of the federal courts."  *Murdock*, 248 U.S. at 150.  Just as the Rule should not now be ignored, and just as it should not have any provision struck, it should not now be rewritten to conform to or adopt civil practice of the Commonwealth of Virginia.  That alone should be the end of the Government's argument.

13

> **2. Even If the Court Were to Apply Virginia's Constructive Service Provisions, Megaupload Is Not Subject to Those Provisions.**

Even assuming, *arguendo*, that Virginia law permitting constructive service were properly read into Criminal Rule 4, however, that law does not support the Government's position here. The Government's premise is that "service on the State Corporation Commission, Defendant Megaupload's constructive agent in Virginia, would be proper." Dkt. 117 at 17. It reasons, more specifically, that Megaupload transacted significant business in Virginia without obtaining a certificate of authority from the Virginia State Corporation Commission ("VSCC"), which, claims the Government, renders Megaupload susceptible to constructive service pursuant to sections 13.1-613 and 13.1-757 of the Virginia Code. The Government's opposition, in a footnote, nods at the list of exceptions to the registration requirement contained in section 13.1-757(B). *See* Dkt. 117 at 14-15 n.18. But its chain of argument ignores those exceptions for an obvious reason: that list is extensive and non-exhaustive, *see* Va. Code § 13.1-757(C), and effectively disables any possibility of constructive service here.

The Virginia Code specifically exempts certain types of activities from its registration requirements. Those activities include: "Selling through independent contractors;" "Soliciting or obtaining orders, whether by mail or through employees or agents or otherwise, if the orders require acceptance outside this Commonwealth before they become contracts;" and "Owning, without more, real or personal property." Va. Code § 13.1-757(B)(5), (6) & (9). The Code further provides that "the list of activities in subsection B is not exhaustive." Va. Code § 13.1-757(C).

The Government argues that Megaupload's obligation to obtain a certificate stems from (1) leasing servers in Virginia and (2) making payments to and receiving payments from Virginia customers. Considering that *ownership* of personal property within Virginia does not trigger the

14

registration requirements, *id.* § 13.1-757(B)(9), it follows *a fortiori* that *renting* such personal property—*i.e.*, server space—does not trigger them.  And if "[s]oliciting or obtaining orders" is insufficient to obligate a corporation to obtain a certificate of authority, *id.* § 13.1-757(B)(6), then maintaining an internet-based service accessible by Virginia residents cannot logically create such an obligation.  Otherwise, virtually any on-line business of appreciable size would be obliged to register separately with the VSCC, simply because it has made or received a payment from someone in Virginia.  That, of course, would be untenable.

The Commonwealth of Virginia appears to agree.   Despite regularly initiating proceedings against entities for failure to abide by registration obligations, *see Arbor Vitae, LLC*, CLK-2004-00004 (2004) (failure to pay registration fees associated with maintaining a certificate); *Xenergy, Inc.*, CLK-2003-00005 (2003) (failure to amend their certificates of authority), there is no indication that the VSCC regards foreign internet-based businesses as bound by its registration requirements.  Most obviously, the VSCC has declined to initiate proceedings against Megaupload for failure to register.

The cases cited by the Government do nothing to help its case:  in *World Carriers, Inc. v. Bright*, 276 F.3d 857, 861 (4th Cir. 1960), the court vacated a civil judgment against a foreign corporation because "we find the attempted service of process ineffective"; in *Gallant v. Deutsche Bank National Trust Co*., Case No. 3:10-cv-6, 2010 WL 1540053, at *2 (W.D. Va. Apr. 16, 2010) the court examined the constructive service requirements and found that "[i]n light of the foregoing requirements, it is abundantly clear from the record that the defendant has not been properly served in this case"; in *Joe Hand Promotions, Inc. v. Citibars, Inc*., Case No. 2:11-cv-58, 2012 WL 503212, at *1 (E.D. Va. Feb. 8, 2012) the court confronted attempted service on a corporation that had in fact registered in Virginia; and in *QuesTech, Inc. v. Liteco,*

*AG*, 735 F. Supp. 187, 189 (1990), the court found that the defendant's business activities did not rise to the level of triggering Virginia's service provisions.

The *QuesTech* court examined at length federal courts' approaches to adopting state service provisions, cataloguing instances where courts had declined to uphold constructive service on unregistered foreign corporations. 735 F. Supp. at 189. It also examined the business activities of the corporate defendant, a European helicopter manufacturer called Liteco, within Virginia. After observing that the list of exceptions contained in Virginia Code § 13.1-757 "does not provide guidance for the issue involved here," *id*. at 189 n.1, it concluded:

> [T]he only activities that Liteco has undertaken in Virginia consist of seeking a source of supply for helicopter blades and negotiating service agreements with suppliers and taking delivery thereunder. Liteco has no offices or facilities in Virginia, and no officer, director or employee of Liteco resides in Virginia. Liteco owns no real or personal property in Virgina. Under such circumstances, merely entering into a contract for a source of supply in Virginia is not sufficient to establish that Liteco is transacting business in the Commonwealth.

*Id.* at 189. The same circumstances apply here, and so should the same outcome.

The Government's reliance on *Moore-McCormack Lines, Inc. v. Bunge Corp.*, 307 F.2d 910 (1962), decided 50 years ago, is no more availing. Unlike the federal criminal action here, that case was a civil diversity suit asserting state tort claims, for which state service procedures were specifically authorized. *See* FED. R. CIV. P. 4(e)(1). There, the defendants were ruled susceptible to constructive service in Virginia because they had been "transacting business" by: (i) importing/exporting goods into and out of the port of Norfolk; (ii) acting as a broker in Virginia on behalf of foreign shippers; (iii) physically selling and delivering goods into Virginia through the use of the port's facilities; and (iv) employing a resident corporate agent within Virginia who acted on the corporate defendants' behalf under a power of attorney. *See* 307 F.2d at 915. None of the same holds true for Megaupload's business ties to Virginia; by no account,

not even the Government's, might *all* of the same hold true so as to warrant the same result. Indeed, Megaupload did not import, export, sell or deliver any goods or merchandise in the United States, nor did it employ any corporate agent here.  Rather, the Government is relying upon the mere facts that Megaupload leased computer servers in Virginia and that some fraction of its users (alongside their counterparts around the world)[7] accessed its online cloud services from Virginia.  *See* Dkt. 117 at 15-16.  As explained, those activities do not trigger Virginia's registration requirements, even if those requirements ruled this case, which they do not.  *See supra* at Section III(C)(1).

### D.     Mailing The Summons To Megaupload's Address In Hong Kong Through The MLAT Process Would Not Accomplish Valid Service Under The Rule.

In a final bid to amend the rules of service, the Government argues that it should be permitted to mail a copy of the summons "to the company's overseas address, pursuant to a mutual legal assistance treaty ('MLAT') or letter rogatory."  Dkt. 117 at 18.  Those who drafted the Rule made a different judgment.

As noted above, *see supra* at Section III, the civil version of Rule 4 expressly provides for overseas service on foreign organizational defendants such as Megaupload.  *See* FED. R. CIV. P. 4(h) ("[A] domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served: . . . at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i).").  Moreover, Civil Rule 4 explicitly

---

[7]     The Government's attribution of Megaupload's web business to Virginia would seemingly apply equally to every single jurisdiction across Planet Earth.  Megaupload's website was once estimated to be the 13th most frequently visited website on the entire Internet.  While in existence, it had more than one billion visitors, at least 66.6-million registered users, an average of 50-million daily visits; at one point it accounted for, on average, approximately four percent of the total traffic across the Internet.  Dkt. 34 at ¶ 3.

allows service "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents" or "as the foreign authority directs in response to a letter rogatory or letter of request." *See* FED. R. CIV. P. 4(f)(1) & (2)(B).

Criminal Rule 4, by contrast, does not authorize overseas service by international agreement or letter rogatory. It says something quite different, expressly dictating that a criminal summons be served "*within the jurisdiction of the United States*," FED. R. CRIM. P. 4(c)(2) (emphasis added), and that a copy be mailed "to the organization's last known address *within the district* or to its principal place of business elsewhere *in the United States*," FED. R. CRIM. P. 4(c)(3)(C) (emphasis added). To permit the Government to mail its summons to Megaupload in Hong Kong through the MLAT process would rewrite the Rule to conform to its civil counterpart, contrary to what the drafters themselves wrote. Again, canons of statutory construction foreclose the Government's approach. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (noting "cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant") (internal quotation marks omitted).[8]

---

[8] The Government cites *Johnson Matthey PLC* and *United States v. Alfred L. Wolff GmbH* in support of its claim that it can perform valid criminal service overseas via the MLAT process. Yet neither case stands for that proposition. Rather, in each, the court merely speculated in *dicta* that MLAT *might* be an alternative. *See United States v. Alfred L. Wolff GmbH*, Case No. 08 CR 417, 2011 WL 4471383, at *4 n.3 (N.D. Ill. Sept. 26, 2011) ("The government has not suggested that it has even attempted to serve the German corporations . . . pursuant to the MLAT . . . ."); *Johnson Matthey PLC*, 2007 WL 2254676, at *2 ("[A]n alternative means of service *may* be the Mutual Legal Assistance Treaty (MLAT) between the United Kingdom and the United States."). Because the Government had not actually attempted such service in those cases, neither court had occasion to rule on the validity of such service; they certainly did not address, much less resolve, arguments that such service would render the Rule's express terms superfluous.

## IV.   ONLY BY DISMISSING THE INDICTMENT CAN THIS COURT PROPERLY PROTECT MEGAUPLOAD'S DUE PROCESS RIGHTS.

Finally, as it did in opposing Megaupload's motion for leave to enter a limited and special appearance, *see* Dkt. 104 at 15, the Government argues that—regardless whether the Government has failed to comply with the Rule's express terms—this Court lacks authority to dismiss the indictment.  *See* Dkt. 117 at 10.  Pointing to the text of the Rule, the Government argues that it "imposes no deadline on service and neither contemplates nor provides for any remedy, much less dismissal."  *Id.*

Megaupload, like all corporate defendants, is entitled to constitutional protections of due process, *see Browning-Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 285 (1989), and this Court "may dismiss an indictment as an exercise of [its] inherent supervisory power or to protect a defendant's due process rights," *United States v. Al Mudarris*, 695 F.2d 1182, 1185 (9th Cir. 1983) (internal citations omitted).  It seems beyond dispute that (1) Megaupload has been deprived of its property, has had its reputation tarnished, and has had its business destroyed by the Government's actions in this case; (2) to date, Megaupload has not been afforded a hearing or any other proceeding to contest these deprivations; and (3) absent service of process, this Court altogether lacks jurisdiction over the company, *see Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999).  Further, as set forth above and in Megaupload's Motion to Dismiss, *see* Dkt. 115 at 6, the Government will *never* be able to serve the company with requisite promptness.  Criminal proceedings against Megaupload stand never to commence, and, as the Court observed, we "frankly don't know that we are ever going to have a trial in this matter."  Dkt. 84 at 39:10-11.  In these circumstances, where Megaupload is being denied due process by which to clear its name or recoup its property, the indictment against it is due to be dismissed.

## CONCLUSION

For the foregoing reasons, specially appearing Defendant Megaupload Limited respectfully requests that the Court dismiss the indictment against it.

Respectfully submitted,

_____/s/ Heather H.  Martin_____

William A. Burck
Derek L. Shaffer
Heather H. Martin (VSB # 65694)
QUINN EMANUEL URQUHART &
SULLIVAN LLP
1299 Pennsylvania Avenue N.W., Suite 825
Washington, D.C. 20004
(202) 538-8000
(202) 538-8100 (fax)
williamburck@quinnemanuel.com
derekshaffer@quinnemanuel.com
heathermartin@quinnemanuel.com

Ira P. Rothken
ROTHKEN LAW FIRM
3 Hamilton Landing
Suite 280
Novato, CA 94949
(415) 924-4250
(415) 924-2905 (fax)
ira@techfirm.net

Carey R. Ramos
Robert L. Raskopf
Andrew H. Schapiro
QUINN EMANUEL URQUHART &
SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, N.Y.  10010
(212) 849-7000
(212) 849-7100
careyramos@quinnemanuel.com
robertraskopf@quinnemanuel.com
andrewschapiro@quinnemanuel.com

_Counsel for Defendant Megaupload Limited_

Dated:  July 18, 2012

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 18, 2012, the foregoing REBUTTAL MEMORANDUM IN FURTHER SUPPORT OF MOTION OF SPECIALLY APPEARING DEFENDANT MEGAUPLOAD LIMITED TO DISMISS INDICTMENT FOR LACK OF PERSONAL JURISDICTION was filed and served electronically by the Court's CM/ECF system upon all registered users.

    /s/ Heather H. Martin
Heather H. Martin (VSB # 65694)
QUINN EMANUEL URQUHART &
SULLIVAN LLP
1299 Pennsylvania Avenue N.W., Suite 825
Washington, D.C. 20004
(202) 538-8000
(202) 538-8100 (fax)
heathermartin@quinnemanuel.com