IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA,       )<br>                                                       )<br>                          Plaintiff    )<br>                                                       )<br>            v.                                        )<br>                                                       )<br>KIM DOTCOM, et al.,                     )<br>                                                       )<br>                          Defendants )  | The Honorable Liam O'Grady<br><br>Criminal Action No. 1:12-CR-3 |

**[PROPOSED] SUPPLEMENTAL MEMORANDUM OF LAW
IN FURTHER SUPPORT OF MOTION OF
SPECIALLY APPEARING DEFENDANT MEGAUPLOAD LIMITED
TO DISMISS INDICTMENT FOR LACK OF PERSONAL JURISDICTION**

The Mutual Legal Assistance Treaty between the United States and Hong Kong ("MLAT") is not a substitute for the Federal Rules of Criminal Procedure governing service of a summons on a corporate defendant. The MLAT does not purport to expand the personal jurisdiction of the courts of this country or otherwise alter the express terms of the Federal Rules. It is merely a mechanism to serve documents extraterritorially *where U.S. law already authorizes extraterritorial service*. It permits nothing more. Where the Federal Rules require domestic service, like in the instant case, MLATs play no role at all, and certainly do not alter the Federal Rules. Neither the Fourth Circuit's decision in *In re Grand Jury Subpoena*, 646 F.3d 159 (4th Cir. 2011), nor any other decision we are aware of, supports a contrary reading of the MLAT.

Even if the MLAT were read to permit extraterritorial service of a criminal summons on a foreign corporation, the mailing requirement of Rule 4 of the Federal Rules of Criminal Procedure ("Rule 4") would supersede the MLAT because the Federal Rules have the same stature as the MLAT in U.S. legal hierarchy and the mailing requirement was enacted after the

MLAT came into effect. Simply put, the MLAT does not provide an escape hatch from Rule 4's requirements.

## ARGUMENT

The MLAT at issue in this matter is a self-executing treaty. *See* Letter of Transmittal from The White House to the Senate of the United States, Agreement Between the Government of the United States of America and the Government of Hong Kong on Mutual Legal Assistance in Criminal Matters, U.S.-H.K., 1997 U.S.T. LEXIS 115 (Apr. 19, 1997). In the hierarchy of U.S. legal authorities, self-executing treaties are not superior to the Federal Rules of Criminal Procedure. Rather, they stand on equal footing with U.S. statutes which, in turn, stand on equal footing with U.S. procedural rules. *See Whitney v Robertson*, 124 U.S. 102, 190, 194 (1888) ("By the constitution, a treaty is placed on the same footing, and made of like obligation, with an act of legislation."); 28 U.S.C. § 2072 ("All laws in conflict with [U.S. procedural] rules shall be of no further force or effect after such rules have taken effect."). Accordingly, contrary to the representation by the Government during oral argument, the MLAT does not trump the Federal Rules of Criminal Procedure. Nor are we aware of any decision holding that it, or any other MLAT, does.

In any event, there is no conflict between the MLAT and the Federal Rules and, even if there were, the later enacted mailing requirement of Rule 4(c)(3)(C) would prevail over a contrary provision of the MLAT.

### A. The MLAT is Not in Tension With, Nor is It a Substitute for, Rule 4(c)

The MLAT provides in relevant part that "[t]he Requested Party may effect service of any document by mail or, if the Requesting Party so requests, in any other manner required by the law of the Requesting Party that is not prohibited by the law of the Requested Party." U.S.-HK, 1997 U.S.T. LEXIS 115 at Art. 15(3). By its plain terms, the MLAT merely states that (in

2

this case) Hong Kong may assist the U.S. government by serving a document within Hong Kong in a manner that would satisfy U.S. law; it does not purport to relax the jurisdictional requirements for effecting service or otherwise alter U.S. law. The MLAT accomplishes precisely what it is intended to accomplish, *i.e.*, facilitate extraterritorial service of documents on persons or organizations located overseas *where U.S. law permits extraterritorial service*. If U.S. law does not permit extraterritorial service, as is true of Rule 4(c)(3)(C) of the Federal Rules of Criminal Procedure, the MLAT does not apply.

MLATs are routinely used, for example, to serve subpoenas overseas pursuant to Rule 17 of the Federal Rules of Criminal Procedure, which expressly contemplates and authorizes overseas service of subpoenas in criminal cases under certain circumstances. *See In re Grand Jury Subpoena*, 646 F.3d 159 (4th Cir. 2011) (observing that Rule 17 authorizes overseas service of subpoenas on U.S. nationals and residents). MLATs facilitate service expressly authorized by Rule 17. We are, however, unaware of any decision holding that an MLAT may expand or alter the requirements of service set forth in a Federal Rule. On the contrary, the only decision we have found addressing service of process in a manner inconsistent with the Federal Rules but effectuated through an international treaty held the service to be invalid. *See DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280, 287-290 (3d Cir. 1981).

In *DeJames*, the Third Circuit considered service of process by an American plaintiff on a Japanese defendant in an admiralty case. The Federal Rule of Civil Procedure governing service of summons in that case – then Rule 4(d)(3) – allowed "service to be made 'by delivering a copy of the summons to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process,' when such officer or agent is an inhabitant of, or can be found within, the forum state," in that case, New Jersey. *DeJames*,

3

654 F.2d at 287. The Court rejected the plaintiff's argument that service in Japan by Japan's central authority complied with the Rule's requirement that service be effected within the territorial limits of New Jersey. *Id*.

The Court addressed the plaintiff's contention that service pursuant to the Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, 20 U.S.T. 361 (1969), commonly known as the Hague Convention, would suffice. The Court held that "the treaty was not intended to effect a change in the authority of courts in the United States to obtain personal jurisdiction over a foreign defendant," and rejected the plaintiffs argument that service could be effected pursuant to the treaty. *DeJames*, 654 F.2d at 289. It reasoned:

> [T]he purpose and nature of the treaty demonstrates that it does not provide independent authorization for service of process in a foreign country. The treaty merely provides a mechanism by which a plaintiff authorized to serve process under the laws of its country can effect service that will give appropriate notice to the party being served and will not be objectionable to the country in which that party is served.

*Id*. at 288.

The Third Circuit's reasoning applies with equal force here. Nothing about the MLAT between Hong Kong and the United States suggests that the Senate, by ratifying it, intended to alter the Federal Rules of Criminal Procedure or provide an independent basis for the courts of this country to assert personal jurisdiction over foreign corporations in criminal cases.

Nor is the Fourth Circuit's decision in *In re Grand Jury Subpoena*, 646 F.3d at 163-65, 169, to the contrary. In that case, the Fourth Circuit considered a foreign company's motion to quash a grand jury subpoena issued to a U.S. company seeking production of the foreign company's documents that were in the U.S. company's possession. The foreign company argued that the government sought to accomplish through the U.S. company what it could not

accomplish directly – service of a subpoena on a foreign corporation. *Id*. at 163-66. The foreign company relied on the express language of Rule 17 of the Federal Rules of Criminal Procedure limiting service of a subpoena in a foreign country to U.S. nationals or residents located in the foreign country. Because the foreign company was neither a U.S. national nor a resident, it argued that Rule 17 did not authorize service of the subpoena on the company overseas. *In re Grand Jury Subpoena*, 646 F.3d at 164-65. The Fourth Circuit agreed, explaining that "Rule 17(e)(2) prevents the government from serving a grand-jury subpoena on [a foreign company] in a foreign country," and citing to the Court's prior opinion in *United States v. Moussaoui*, 382 F.3d 453, 463 (4th Cir. 2004), which noted "the well established and undisputed principle that the process power of the district court does not extend to foreign nationals abroad." *In re Grand Jury Subpoena*, 646 F.3d at 165.

The MLAT came into play in *In re Grand Jury Subpoena* only to the extent the foreign company argued that it was the sole mechanism by which a Rule 17 subpoena could be served in the foreign country. *Id*. at 165  The Fourth Circuit did not disagree, nor did it suggest in any way that the MLAT altered Federal Rule 17(e)(2) or 28 U.S.C. § 1783 to permit service of a subpoena on a non-U.S. national or resident located abroad. Instead, the Court held that the requirements of Rule 17(e)(2) and the MLAT were not even at issue because the subpoena called for production only of documents in the U.S. company's possession within the United States. *Id*.

Megaupload's position is entirely consistent with the Fourth Circuit's analysis and ruling. Just as service of a subpoena at issue in *In re Grand Jury Subpoena* was valid because the foreign company's documents were physically located within the jurisdiction of the United States, Megaupload would be subject to service of a criminal summons if it had an office or address in the United States (assuming the other requirements of Rule 4 were met). But

5

Megaupload does not currently, nor has it ever, had an office in the United States. To the extent *In re Grand Jury Subpoena* is relevant to this Court's analysis, it confirms Megaupload's argument that the MLAT is a means of implementing the Federal Rules where those rules permit extraterritorial service of process; it is not a substitute for those Rules and does not provide an independent means for overcoming the jurisdictional limitations imposed by Rule 4.

In sum, we are aware of no court that has construed mutual assistance treaties or other international treaties to confer a basis for service of process independent of what is set forth in the Federal Rules. Where the Rules contemplate extraterritorial service, MLAT's facilitate that service. Where the Rules require domestic service, MLAT's play no role at all, much less obviate the Rules. Accordingly, Megaupload respectfully submits that Rule 4 of the Federal Rules of Criminal Procedure cannot be set aside in favor of the MLAT between Hong Kong and the United States because the MLAT does not independently authorize the Government to serve a criminal summons on a foreign corporation such as Megaupload.

### B. The Government Cannot Forgo a Criminal Service Rule Enacted in 2002 in Favor of an MLAT Enacted in 2000

To the extent this Court nonetheless considers Article 15 of the MLAT to authorize service of a criminal summons on a foreign corporation's overseas address, there would be a direct conflict with Rule 4's requirement that a criminal summons be mailed to the organization's last known address in the United States. Where a treaty and a rule cannot be reconciled, Courts observe the long-standing principle that whichever was enacted later in time is deemed controlling. *See Cook v. United States*, 288 U.S. 102, 119 (1933); *Whitney*, 124 U.S. at 194; *Vorhees v. Fischer & Krecke*, 697 F.2d 574, 575-76 (4th Cir. 1983); *see also* 28 U.S.C. § 2072(b). Under that analysis, Rule 4 would trump the MLAT because it was enacted two years

after the MLAT became effective. *See Cook*, 288 U.S. at 119; *Whitney*, 124 U.S. at 194; *Vorhees*, 697 F.2d at 575-76; *see also* 28 U.S.C. § 2072(b).

*Vorhees* is instructive here. In *Vorhees*, the Fourth Circuit reviewed the decision of a district court which found that plaintiff's service of the complaint failed to comply with two aspects of the Hague Convention. *Vorhees*, 697 F.2d at 575. The plaintiff had served its complaint on German defendants by mailing an English-language copy to them directly, in compliance with Federal Rule of Civil Procedure 4(i). *Id*. The Hague convention, as applied to West Germany, specified that documents must be served through Germany's central authority and translated into German. *Id*. The district court found a direct conflict between West Germany's requirements under the Hague Convention and Rule 4(i). *Id*. Observing that the Hague Convention entered into force in 1969, six years after Rule 4(i), the court found the Hague Convention provision controlling and dismissed the complaint without prejudice. *Id*. at 576. Without disturbing the district court's application of the later-in-time rule, the Fourth Circuit determined that quashing service would have been a more appropriate remedy, and remanded the case for further proceedings. *Id*.

Here, the mailing requirement of Federal Criminal Rule 4(c) was enacted two years after the Hong Kong-U.S. MLAT became effective. The Hong Kong-U.S. MLAT is a self-executing treaty enacted in 1997, which became effective in 2000. *See* U.S.-HK, 1997 U.S.T. LEXIS 115; *see also* Treaties in Force, A List of Treaties and Other International Agreements of the United States in Force on January 1, 2011 at 55, U.S. Department of State, available at http://www.state.gov/documents/organization/169274.pdf. The mailing requirement of criminal Rule 4(c) became effective in 2002. *See* Fed. R. Crim. P. 2002 Advisory Committee Notes ("Under the amended rule, in all cases in which a summons is being served on an organization, a

7

copy of the summons must be mailed to the organization."). Thus, Rule 4's mailing requirement supersedes the MLAT, and is controlling. *See* 28 U.S.C. § 2072(b).

## CONCLUSION

For the foregoing additional reasons, specially appearing Defendant Megaupload Limited respectfully requests the Court find the Government unable to serve Megaupload, and dismiss the indictment against it.

Respectfully submitted,

|  |  |
|---|---|
| Ira P. Rothken<br>ROTHKEN LAW FIRM<br>3 Hamilton Landing<br>Suite 280<br>Novato, CA 94949<br>(415) 924-4250<br>(415) 924-2905 (fax)<br>ira@techfirm.net | ___/s/ Heather H. Martin_____<br>William A. Burck<br>Derek L. Shaffer<br>Heather H. Martin (VSB # 65694)<br>QUINN EMANUEL URQUHART &<br>SULLIVAN LLP<br>1299 Pennsylvania Avenue N.W., Suite 825<br>Washington, D.C. 20004<br>(202) 538-8000<br>(202) 538-8100 (fax)<br>williamburck@quinnemanuel.com<br>derekshaffer@quinnemanuel.com<br>heathermartin@quinnemanuel.com<br><br>Carey R. Ramos<br>Robert L. Raskopf<br>Andrew H. Schapiro<br>QUINN EMANUEL URQUHART &<br>SULLIVAN LLP<br>51 Madison Avenue, 22nd Floor<br>New York, N.Y. 10010<br>(212) 849-7000<br>(212) 849-7100<br>careyramos@quinnemanuel.com<br>robertraskopf@quinnemanuel.com<br>andrewschapiro@quinnemanuel.com<br><br>*Counsel for Defendant Megaupload Limited* |

Dated: July 31, 2012