IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KIM DOTCOM, et al.,<br><br>Defendants | The Honorable Liam O'Grady<br><br>Criminal No. 1:12-CR-3 |

**REBUTTAL MEMORANDUM IN SUPPORT OF MOTION OF SPECIALLY APPEARING DEFENDANT MEGAUPLOAD LIMITED FOR LEAVE TO FILE A SUPPLEMENTAL MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE INDICTMENT FOR LACK OF PERSONAL JURISDICTION**

The Government's opposition to the present motion rests on a false premise. The Government misrepresents that the current mailing requirement of Federal Rule of Criminal Procedure 4(c)(3)(C) has "existed in substance as part of Rule 9(c)(1) since the Federal Rules of Criminal Procedure first went into effect in 1946" and that "[t]he 2002 Amendment to which Defendant Megaupload refers merely transferred the provisions to their present location in Rule 4." (Dkt. 122 at 3.) Tellingly, the Government fails to set forth the actual language of Rule 9(c)(1) as it existed before 2002. Prior to 2002, Rule 9(c)(1) stated:

> The warrant shall be executed or the summons served as provided in Rule 4(d)(1), (2) and (3). A summons to a corporation shall be served by delivering a copy to an officer or to a managing or general agent or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the corporation's last known address within the district or at its principal place of business elsewhere in the United States.

FED. R. CRIM. P. 9(c)(1) (As amended Apr. 22, 1993, eff. Dec. 1, 1993.) (Ex. 1.)

Comparing that language, omitted from the Government's brief, to the present Rule 4 reveals that the 2002 Amendment to the Federal Criminal Rules did more than merely move language from one location to the other. While the previous version required mailing the summons to the last known address only in *some* cases, "[u]nder the amended rule, *in all cases* in which a summons is being served on an organization, a copy of the summons must be mailed to the organization." FED. R. CRIM. P. 4, 2002 ADVISORY COMMITTEE NOTES (emphasis added). This substantive change in the Rule post-dates the Mutual Legal Assistance Treaty between the United States and Hong Kong (the "MLAT"), rendering it "last in time" and therefore controlling even by the Government's account of the legal rule.[1] *See Brown v. Ford Motor Co.*, 10 Fed. Appx. 39, 43 (4th Cir. 2001) ("[T]he legislature's different word choice in the later-enacted section 46.2-1094(D) must be regarded as significant.").

Each of the Government's additional arguments is equally misleading and unavailing. *First*, contrary to the Government's assertion, nothing in the language of the MLAT itself authorizes expanded service of a criminal summons beyond that already permitted by Rule 4. In arguing that the treaty authorizes expanded service, the Government ignores that the MLAT allows service of a document only in a "manner required by the law of the Requesting Party that is not prohibited by the law of the Requested Party." U.S.-HK, 1997 U.S.T. LEXIS 115 at Art.

[1] In any event, the Government's account of the legal rule is likewise mistaken. Even if the 2002 Amendment simply transferred the mailing requirement from one Rule to another, as the Government incorrectly maintains, the 2002 Amendment to Rule 4 would nonetheless trump the earlier MLAT. That Congress amended the Rule *after* the MLAT had entered into force, yet made no exception to the requirement that a copy of the summons be mailed to the corporation's last known address *in the United States* signals that Congress intended the express mailing requirement to prevail as current law. The re-codification of a pre-existing Rule suffices to make it controlling under the later-in-time analysis. *See Empacadora de carnes de Fresnillo, S.A. de C.V. v. Curry*, 476 F.3d 326, 332 (5th Cir. 2007) (recognizing that "codifications—even if labeled "nonsubstantive"—are legislative enactments that must be given full effect, and such codifications may repeal and prevail over prior laws").

15(3). The MLAT, by its terms, facilitates extraterritorial service of documents on persons or organizations *only where U.S. law permits extraterritorial service*—nothing more.

*Second*, the Government's assertion that federal courts have held that the MLAT provides a proper means of effecting service of a criminal summons on a corporate defendant is demonstrably false. The cases cited by the Government mention use of the MLAT process in *dicta*, but not a single one held that service of a summons via the MLAT—in direct contravention of Rule 4's express requirement that the summons be mailed to an address *in the United States*—is in fact valid service.[2] Nor has any other federal court so held, as far as we are aware.[3]

*Third*, the absence of a time limit in Criminal Rule 4 is a red herring. If the Government had bothered to try to serve Megaupload, then Megaupload could have moved to quash service, relief that several courts have granted in similar situations. *See United States v. Pangang Group*

[2] *See United States v. Alfred L. Wolff GmbH*, Case No. 1:08-cr-417, 2011 WL 4471383, *4 n.3 (N.D. Ill. Sept. 26, 2011) ("The government has not suggested that it has even attempted to serve the German corporations (ALW GmbH and ALW Germany) pursuant to the MLAT."); *United States v. Chitron Elecs. Co. Ltd.*, 668 F. Supp. 2d 298, 301-02 (D. Mass. 2009) (noting that the Government mailed a copy of the summons to the last known U.S. address of the corporate defendant's alter ego subsidiary); *United States v. Johnson Matthey PLC*, Case No. 2:06-cr-169, 2007 WL 2254676, *2 (D. Utah Aug. 2, 2007) (quashing service because the Government failed to mail a copy of the summons to the corporate defendant's last known U.S. address as required by Rule 4). As counsel for Megaupload argued at the July 27 hearing on Megaupload's motion to dismiss, the Government's reliance on the district court's order in *United States v. Fuerzas Armadas Revolucionarias de Colombia* is misplaced. In that case, the Government asked the court, on an *ex parte* basis, to issue a summons so that the Government could attempt service via publication and email. That order was not subject to an adversarial hearing and the court was not directly confronted with—and therefore did not address—the argument that such service would be in direct contravention with the express requirements of Rule 4. Moreover, as noted at the July 27 hearing, the organization at issue in that case is a foreign terrorist group, not a corporate creation of a foreign sovereign.

[3] For all its protestations that the MLAT could be used, the fact remains that the Government has never even attempted to use it to our knowledge. We assume that, if the Government has tried and failed to serve Megaupload using an MLAT process, the Government would have brought this to the Court's attention immediately. Thus, once again Megaupload's due process rights are made subordinate to the government's delay tactics.

*Co., Ltd.*, Case No. CR 11-573 (N.D. Cal. July 23, 2012). Here, the Government would keep Megaupload in criminal suspense indefinitely so the Government can avoid the day of reckoning on its decision to charge the company with violations of the criminal laws in the first place. Due process should not be left to such tactical whims of the Government.

*Fourth*, the Government also fails to rebut, or even address *In re Grand Jury Subpoena*, 646 F.3d 159 (4th Cir. 2011), a case raised by the Court at the July 27, 2012 oral argument. There now appears to be agreement, therefore, that the case does not support the view that the MLAT is an alternative to, or alters, Rule 4. *See id.* at 163-66, 169. Instead, the case simply stands for the noncontroversial proposition that service of a subpoena on a company in the U.S. for documents located in the U.S. complies with Rule 17; analogously, mailing a criminal summons to a company's address in the U.S. would satisfy the mailing requirement of Rule 4. There is no dispute here that Megaupload has no U.S. address or office, nor has it ever had one; accordingly, the holding of *In re Grand Jury* is either supportive of Megaupload's position here or, if not that, simply inapplicable to this situation.

*Fifth*, the Government attempts to distract from issues raised in the present motion by arguing matters not currently before the Court—namely the asset forfeiture issue. The Government's attempt to introduce argument about asset seizure into Megaupload's motion for leave ignores the harm currently at issue before the Court, harm directly caused by the Government's decision to bring criminal instead of civil charges here.[4] Civil charges would have triggered adversarial proceedings before the Government obtained any injunctive relief effectuating the utter destruction of Megaupload's business. Had the Government brought civil

[4] Megaupload does not concede any jurisdictional objections, or any other procedural or substantive defenses it may have were the Government to proceed with civil charges. Instead, Megaupload simply notes that Congress contemplated that the Government could use civil process against foreign companies in situations such as this.

charges against Megaupload, the company would have had a chance to contest any request for injunctive relief and potentially beat back the charges.

The different charging decisions made in *United States v. Pokerstars*, No. 11-cv-02564 (S.D.N.Y) are instructive. In *Pokerstars*, the U.S. Attorney's Office for the Southern District of New York filed *civil* money laundering and forfeiture claims against foreign online gaming corporations and pursued criminal charges only against related individuals. *See* Complaint, *United States v. Pokerstars*, No. 11-cv-02564 (S.D.N.Y. Apr. 14, 2011) (Dkt. 8) (Ex. 2); Superseding Indictment, *United States v. Scheinberg*, No. 10-cr-00336 (S.D.N.Y. Apr. 14, 2011) (Dkt. 20) (Ex. 3).

By approaching the *Pokerstars* case as it did—as opposed to charging the corporate entities in a *criminal* indictment—the Government avoided the strict service standard imposed by Rule 4 and availed itself of the more permissive civil rule. *Compare* FED. R. CRIM. P. 4(c)(3)(C) (requiring summons to be mailed to an organization's last known address within the district or to its principal place of business elsewhere in the United States) *with* FED. R. CIV. P. 4(d)(1) (exhorting defendants to waive service of summons by imposing duty on defendants to "avoid unnecessary expenses of serving summons") *and* FED. R. CIV. P. 4(f)(1)–(2) (allowing service "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents" or "as the foreign authority directs in response to a letter rogatory or letter of request."). Indeed, in the *Pokerstars* case, the corporate defendants waived service, *see United States v. Pokerstars*, No. 11-cv-02564 (S.D.N.Y. Aug. 12, 2011) (Dkt. 42–44) (Ex. 4), but even if they had not, the Government could have effected service pursuant to an MLAT or other international agreement. *See* FED. R. CIV. P. 4(f)(1)–(2).

The *Pokerstars* case confirms that, even if criminal remedies are unavailable, the Government has ample alternatives at its disposal. By availing itself of Civil Rule 4, the Government can establish civil jurisdiction over foreign entities that could not be served under Criminal Rule 4; moreover, in a civil proceeding the Government can still seek asset forfeitures and seizures much as it could in a criminal proceeding. *See, e.g.*, 18 U.S.C. § 981 (2006) (civil forfeiture statute). Critically, the *Pokerstars* case also demonstrates that the adoption of a civil approach in the present case might have avoided imposition of a corporate death penalty on a defendant that has yet to be convicted of a single charge.[5] *See* Caroline Winter, *PokerStars Strikes U.S. Deal to Buy Full Tilt Poker*, BLOOMBERG BUSINESSWEEK (July 31, 2012) http://www.businessweek.com/articles/2012-07-31/pokerstars-strikes-u-dot-s-dot-deal-to-buy-full-tilt-poker ("PokerStars quickly paid out players whose accounts had been frozen and continued its operations outside the U.S., though the company's legal issues with the DOJ remained unsettled."). Notably, any resulting sacrifice of the more severe penalties available under criminal laws would be made only with respect to the corporate entity.

The differences between Civil and Criminal Rule 4 reflect that the added gravity attending a criminal indictment corresponds with a more exacting burden to comply with the rules of service. Where the Government avails itself of the procedural advantages of the criminal process, it must also be held to the corresponding strictures of the criminal process in place to protect criminal defendants.

[5] Moreover, a contested civil process would have afforded this Court the opportunity, at the outset, to consider the impact that shutting down Megaupload's servers and barring access to its website would have on innocent third-party users and the public at large. The Court would have then been able to take steps to avoid the draconian impact that has in fact resulted in the present case.

## CONCLUSION

For the foregoing additional reasons, specially appearing Defendant Megaupload Limited respectfully requests the Court allow it to supplement its Motion to Dismiss for Lack of Personal Jurisdiction to address arguments previously not raised by the Government.

Respectfully submitted,

___/s/ Heather H. Martin______________
William A. Burck
Derek L. Shaffer
Heather H. Martin (VSB # 65694)
QUINN EMANUEL URQUHART & SULLIVAN LLP
1299 Pennsylvania Avenue N.W., Suite 825
Washington, D.C. 20004
(202) 538-8000
(202) 538-8100 (fax)
williamburck@quinnemanuel.com
derekshaffer@quinnemanuel.com
heathermartin@quinnemanuel.com

Carey R. Ramos
Robert L. Raskopf
Andrew H. Schapiro
QUINN EMANUEL URQUHART & SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, N.Y. 10010
(212) 849-7000
(212) 849-7100
careyramos@quinnemanuel.com
robertraskopf@quinnemanuel.com
andrewschapiro@quinnemanuel.com

Ira P. Rothken
ROTHKEN LAW FIRM
3 Hamilton Landing
Suite 280
Novato, CA 94949
(415) 924-4250
(415) 924-2905 (fax)
ira@techfirm.net

*Counsel for Defendant Megaupload Limited*

Dated: August 6, 2012

**CERTIFICATE OF SERVICE**

I hereby certify that on AUGUST 6, 2012, the foregoing REBUTTAL MEMORANDUM IN SUPPORT OF MOTION OF SPECIALLY APPEARING DEFENDANT MEGAUPLOAD LIMITED FOR LEAVE TO FILE A SUPPLEMENTAL MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE INDICTMENT FOR LACK OF PERSONAL JURISDICTION was filed and served electronically by the Court's CM/ECF system upon all registered users.

__/s/ Heather H. Martin________________

Heather H. Martin (VSB # 65694)
QUINN EMANUEL URQUHART &
SULLIVAN LLP
1299 Pennsylvania Avenue N.W., Suite 825
Washington, D.C. 20004
(202) 538-8000
(202) 538-8100 (fax)
heathermartin@quinnemanuel.com