# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA
## Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>KIM DOTCOM, et al., )<br>)<br>Defendants. ) | Case No.: 1:12-cr-3 |

## ORDER

### I. Overview

In its Motion to Dismiss the Superseding Indictment (Dkt. No. 114), corporate Defendant Megaupload Limited ("Megaupload") asks the Court to dismiss this criminal action because the Defendant lacks a "last known address" within the Eastern District of Virginia or a "principal place of business elsewhere in the United States," where it could receive a copy of the criminal summons. Fed. R. Crim. P. 4(c)(3)(C). Rule 4 does not require a result so extreme as dismissal, and to this Court's knowledge, no court has ever dismissed an indictment for failure to meet Rule 4's secondary mailing requirement.[1]

---

[1] The language of Criminal Rule 4 indicates that the "summons is *served* on an organization by delivering a copy" to an officer or agent. (Emphasis added). After defining this service requirement, Rule 4 goes on to necessitate that a "copy" be mailed to an organization's "last known address". Notably, the Rule does not include this mailing requirement in the previous sentence, where it explains how the summons is actually *served*. The Court notes this distinction not to imply that the mailing requirement is less than mandatory; the Rule unambiguously requires a mailing. However, the drafters' choice might imply that Rule 4's mailing requirement, though mandatory, is an additional requirement under Rule 4—rather than a requirement of service. Thus, dismissal for failure to serve might not be required should the government fail to comply with the mailing requirement, particularly where the defendant has actual notice of the indictment. Instead, the Court could impose the appropriate penalty, given the individual facts and circumstances. That said, because the Court concludes that it may be possible for the government to meet Rule 4's mailing requirement, the Court will not expound upon the applicability of the Rule's syntax to the present case.

It is doubtful that Congress would stamp with approval[2] a procedural rule permitting a foreign corporate defendant to intentionally violate the laws of this country, yet evade the jurisdiction of United States' courts by purposefully failing to establish an address here. But even assuming *arguendo* that the mailing provision is necessary to effect service, the Court cannot find to a legal and factual certainty that the United States will be unable to serve the corporate Defendant properly. Thus, Megaupload's Motion (Dkt. No. 114) is DENIED WITHOUT PREJUDICE.[3]

## II. Analysis

Federal Rule of Criminal Procedure 9 establishes that a court must issue a summons, at the government's request, for a defendant named in an indictment. Rule 9 extends Rule 4's service requirements to a summons issued pursuant to an indictment.[4] Fed. R. Crim. P. 9(c)(1)(A) ("The warrant must be executed or the summons served as provided in Rule 4(c)(1),

---

[2] Though Congress is not tasked with the initial obligation of drafting the Federal Rules of Criminal Procedure, the legislative body bears the ultimate responsibility for the Rules' final enactment.

[3] The government has not served, nor has it attempted to serve, the corporate Defendant. The Court leaves open the possibility for future motions and briefing as to whether the Defendant has been denied due process by this delay and whether the indictment should be dismissed until Megaupload could be served. The Court reads Megaupload's present Motion as contesting jurisdiction on the basis of the government's alleged inability to properly serve the corporate Defendant. The Court does not read the Defendant's Motion as seeking dismissal on other possible grounds. Should the corporate Defendant wish to raise additional issues with the Court, it may do so by filing an appropriate motion.

[4] Rule 4 enumerates service requirements in relation to a summons issued on a criminal complaint.

(2), and (3).").[5] Pursuant to Rule 4, "[a] summons is served on an organization by delivering a copy to an officer, to a managing or general agent, or to another agent appointed or legally authorized to receive service of process. A copy must also be mailed to the organization's last known address within the district or to its principal place of business elsewhere in the United States." Fed. R. Crim. P. 4(c)(3)(C). There is no issue with the primary requirement of this rule: upon extradition, the government could deliver a copy of the summons to the individual defendants named in this action, officers of Megaupload who are "legally authorized to receive service of process." *Id.* It is the secondary mailing requirement, which "must also" be adhered to that is presently at issue. *Id.*

---

[5] The Court also considered the applicability of the United States' mutual legal assistance treaty ("MLAT" or "the Treaty") with Hong Kong as providing an alternative means for the government to satisfy the Federal Rules of Criminal Procedure's service requirements. As a collective body, the Federal Rules of Criminal Procedure provide no limitation that the Rules are the exclusive means for effectuating service. *See* Fed. R. Crim. P. 1 (noting that the rules "govern the procedure in all criminal proceedings in the United States district courts" but not that the Rules are the exclusive guidelines for governing criminal procedural matters in district court).

The MLAT provides, in relevant part, that the parties to the Treaty "shall provide mutual assistance . . . in connection with the investigation, prosecution, and prevention of criminal offenses, and in proceedings related to criminal matters," to include "serving documents." Mutual Legal Assistance in Criminal Matters, U.S.-H.K., art. 1 §§ (1), (2)(d), Apr. 15, 1997, S. Treaty Doc. No. 105-6. Article 15 of the Treaty, entitled "Service of Documents," requires each country to "use its best efforts to serve any document transmitted to it pursuant to this Agreement for the purpose of service." *Id.* at art. 15 § (1). Once a request is made, the requested party "may *effect service* of any document" in one of two ways, either "[1] by mail or, . . . [2] in any other manner required by the law of the Requesting Party . . . ." *Id.* at § (3) (emphasis added).

As the government suggests, this language seemingly contemplates that the government could effectuate service of a summons on Megaupload by having Hong Kong mail a copy of the summons to the corporate Defendant. *See id.* ("The Requested Party may *effect service* of any document by mail . . . .") (emphasis added). Megaupload counters that the MLAT only permits Hong Kong to "assist the U.S. government by serving a document within Hong Kong in a manner that would satisfy U.S. law." *See* Def. Proposed Memo., Dkt. No. 120 Ex. 1, at 3. However, Megaupload's reasoning is flawed. The Defendant reads the word "or" out of the MLAT, even though the Treaty unequivocally permits service in a manner that would satisfy U.S. law *or*, by mail. Megaupload provides no support for its statement that the MLAT only "facilitate[s] extraterritorial service of documents on persons or organizations located overseas *where U.S. law permits extraterritorial service.*" *Id.* (emphasis added). Likewise, Megaupload's Rebuttal Memorandum entirely ignores the first of the two means by which the MLAT permits service of a document—by mail—and instead, selectively quotes only the latter portion of the MLAT's relevant provision, permitting service in a "manner required by the law of the Requesting Party that is not prohibited by the law of the Requested Party." Def. Reply, Dkt. No. 123, at 2.

Nonetheless, the potential applicability of the MLAT provides no relief to the government here. Although the MLAT may provide an alternative means of fulfilling Rule 4's service requirement when the government attempts to serve a summons on a criminal complaint, the requirements for a summons issued pursuant to an indictment, as detailed in Rule 9, specifically mandate compliance with the methods of service enumerated in Rule 4. *See* Fed. R. Crim. P. 9 ("The warrant *must* be executed or the summons served as provided in Rule 4(c)(1), (2), and (3)."). In short, the service requirements in Rule 4 appear to govern exclusively.

3

Other courts have found Rule 4's mailing requirement satisfied when the government mailed a copy of the summons to a wholly foreign corporation's domestic subsidiary. This has been the case when the court, in effect, pierced the corporate veil to find the domestic subsidiary an alter ego of the foreign corporate parent. *See United States v. Chitron Elec.Co.*, 668 F. Supp. 2d 298 (D. Mass. 2009); *United States v. Pub. Warehousing Co.*, No. 1:09-CR-490, 2011 WL 1126333 (N.D. Ga. Mar. 28, 2011). When a court pierces the corporate veil, the legal distinction between a corporation and its alter ego is eliminated; the corporation and its alter ego are considered one and the same. Thus, mailing a copy of the summons to the address of the corporation's alter ego is, for all intents and purposes, the same as mailing the summons to the corporation itself. As noted in *Public Warehousing Co.*, the Criminal Rules support the reading that service on a corporation's alter ego is sufficient to establish jurisdiction, because Federal Rule of Criminal Procedure 2 establishes that the rules should "be interpreted to provide for the just determination of every criminal proceeding, to secure simplicity in procedure and fairness in administration, and to eliminate unjustifiable expense and delay." 2011 WL 1126333, at * 7 (quoting Fed. R. Crim. P. 2). Rule 4 is silent on the alter ego issue, making it appropriate to apply Rule 2 as an interpretive tool. *See id.* If the alter ego analysis becomes relevant to the present case, Rule 2 indicates it should be used to permit the exercise of jurisdiction. Much like the Defendant in *Public Warehousing Co.*, Megaupload has notice of the present proceeding, and it will be possible for its officers to receive a copy of process should they be extradited. If applied, the alter ego analysis could "secure simplicity . . . and eliminate unjustifiable expense and delay." *See id.* (quoting Fed. R. Crim. P. 2).

In this case, the government may be able to prove that at least one of the individually named defendants is an alter ego of the corporate parent. If so, the corporation's last known

address within this district will be the address of the individual defendant, once extradited.[6] In other words, so long as the government could prove that an individual defendant is an alter ego of the corporate defendant, the government could satisfy Rule 4's mailing requirement by mailing a copy of the summons to one of the individual defendants once that defendant is extradited to this district. It is this contingency which causes the Court to deny Defendant's Motion.

### III. Conclusion

The Court **GRANTS** Defendant's Motion for Leave to file Supplemental Memorandum (Dkt. No. 120), and has carefully reviewed all of the pleadings related to this matter. The Court finds that it would be possible for the government to comply with Rule 4's mailing requirement. Consequently, it would be premature to dismiss the indictment at this time, and the Defendant's Motion to Dismiss (Dkt. No. 114) is **DENIED WITHOUT PREJUDICE.**

October 5, 2012

/s/
Liam O'Grady
United States District Judge

---

[6] The Court acknowledges the fact that the individual Defendants may never be extradicted. Be that as it may, the present Motion is based on the argument that the government could *never* serve Megaupload. Because the alter ego analysis provides a means by which it may be *possible* to serve the corporate Defendant, it is appropriate to deny Defendant's motion without prejudice.