IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | The Honorable Liam O'Grady |
| | ) | |
| KIM DOTCOM, et al., | ) | |
| | ) | Criminal No. 1:12-CR-3 |
| Defendants | ) | |
| | ) | |

**REBUTTAL MEMORANDUM IN SUPPORT OF
MOTION OF QUINN EMANUEL URQUHART & SULLIVAN LLP
AND THE ROTHKEN LAW FIRM FOR LEAVE TO ENTER LIMITED
AND SPECIAL APPEARANCE ON BEHALF OF MEGAUPLOAD LIMITED**

Nearly ten months have elapsed since Defendant Megaupload Limited ("Megaupload") was branded a criminal, yet it has had no opportunity to date to clear its name or to challenge the charges against it. Ten months have elapsed since every penny of the company's assets was frozen, yet there has been no pre or post-seizure hearing for Megaupload to contest the propriety of that action. During these past ten months, Megaupload—once estimated to be the 13th most frequently visited website on the entire Internet (*See* Dkt. 34 at ¶ 3)—has been wiped out for all intents and purposes. All this time, the Government has not complied with Rule 4, has not attempted to comply with Rule 4, and has not identified any prospect that it might comply with Rule 4 any time in the foreseeable future. Moreover, Megaupload's servers—which house the universe of relevant evidence against which the Government's allegations against Megaupload might potentially be fully and fairly assessed one day—have been taken offline for lack of funding (while the Government sits on all the assets it has seized from Megaupload) and have spent much of this year on the floor of a warehouse. And Megaupload's innocent consumers have now gone nearly ten months without any access to their property.

The ability of a criminal defendant to mount, not only in theory but also in practice, a fair defense should be beyond question. Sadly, the Government's conduct of this case is to the contrary, raising grave questions about whether the Government is out to play judge, jury, executioner, and asset collector without benefit of the adversarial process and protections, including those of Rule 4, to which this corporation is entitled. Certainly the prosecution to date—by freezing assets, by foreswearing proper service, and by steadfastly refusing to lift a finger or spend a cent to prevent ongoing spoliation of server evidence (not to mention deprivation of innocent users' rightful property)—has denied Megaupload any semblance of due process.

With their present motion, Movants Quinn Emanuel Urquhart & Sullivan LLP and the Rothken Law Firm seek leave to enter limited and special appearances on behalf of Megaupload, so that the corporation may renew its request that the Court dismiss the Indictment—at least temporarily, until such as time as Megaupload may receive service and mailing in compliance with Federal Rule of Criminal Procedure 4—and thereby escape the criminal limbo that is presently subjecting Megaupload to daily, irreparable harm.[1]

---

[1] The Government asks the Court to decide Movants' motion for leave on the papers and without an oral hearing, pursuant to Local Criminal Rule 47(J). (Dkt. 132 at 2-3.) Given that the Government's Opposition directly addresses the merits of Megaupload's underlying renewed request for dismissal without prejudice, and in light of the extensive briefing and oral arguments that have already been presented to the Court in connection with this and previous motions, Megaupload respectfully submits that the Court may decide both the motion for leave and the renewed request for dismissal without further briefs or argument. Megaupload asks the Court to dismiss the case, without prejudice, forthwith.

In the event that the Court grants the motion for leave and decides that further briefing is necessary, the Government requests at least fifteen <u>business</u> days for leave to file a full response to the underlying motion, "due to other commitments amongst the prosecution team (including other significant briefings in this matter)." (Dkt. 132 at 3.) Megaupload objects to this request. Given the ongoing harm to Megaupload, and given the vast resources of the United States Government—including five separate attorneys who have entered appearances in this case on

## ARGUMENT

This Court has recognized that "[t]he government has not served, nor has it attempted to serve, the corporate Defendant." (Dkt. 127 at 2 n.3.) The Court, however, denied without prejudice Defendant Megaupload's motion to dismiss the Superseding Indictment for lack of jurisdiction, reasoning that "the government may be able to prove that at least one of the individually named defendants is an alter ego of the corporate parent" and that, if it does, the government will be able to serve Megaupload once that individual is extradited to the United States. (*Id.* at 4-5.) In doing so, however, the Court expressly acknowledged "that the individual Defendants may never be extradited," and that the Government may therefore never be able to attempt service on the individual Defendants as Megaupload's possible alter egos. (*Id.* at 5 n.6.) Moreover, even if Kim Dotcom or the other individual Defendants are ultimately extradited to the United States, there is at best a theoretical possibility that the Government might establish an alter-ego relationship. (*Id.* at 4 ("In this case, the Government *may* be able to prove that at least one of the individually named defendants is an alter ego of the corporate parent.") (emphasis added).) Megaupload thus faces an undefined and potentially indefinite period of abeyance, during which its assets will remain restrained and its reputation tarnished, with no means of being served in accordance with Rule 4 or vindicating its rights.

The Court's Order on Megaupload's motion to dismiss leaves open the questions whether Megaupload has been and will continue to be denied due process by the Government's delay in attempting service of process, and whether the Superseding Indictment should therefore be dismissed until such time as the individual Defendants are extradited (if ever) and the alter ego analysis can be conducted (if ever urged). (*See* Dkt. 127 at 2 n.3.) The Court declined to

---

behalf of the United States—the Government should have no issue filing its response within the time provided by this Court's Local Rules.

consider dismissal without prejudice pending potential extradition of the individual Defendants, unless and until Megaupload requested such relief. (*See id.*)

As noted in Megaupload's proposed filing (*see* Dkt. 128-3 at 2-3), Megaupload has in fact already requested this very relief at oral argument on the motion to dismiss. During that hearing, counsel for Megaupload expressly requested that, if the Court was not inclined to dismiss the Indictment with prejudice, it do so without prejudice, until such time as the Government may be able to serve the corporate Defendant in accordance with the requirements of Federal Rules of Criminal Procedure 4 and 9:

> THE COURT: Well, that—can I require them to serve the company on any particular date? There's no date in the rule -- there appears to be no statutory limitation, and I understand your due process argument. So I—what if I, you know, would start with a premise that I don't control when the Government decides to serve the company. Where do we go from there?
>
> MR. BURCK: Well, Your Honor, we would submit that if the Court were ruling—going in that direction as a reasoning matter, that the appropriate result would be to dismiss the indictment without prejudice.
>
> Because the company, again, has already suffered all the consequences of a criminal prosecution, so the—even if there's a trial and the company is acquitted and the individuals are acquitted, of course the company is still done.
>
> So, we think that the due process claims trump all the other issues, and we think that if the Court were so inclined, that the Government should take certain steps in order to effectuate service, then—or if the extradition proceedings would be the relevant time line for that, again, the company should have an opportunity during that period of time to try to rehabilitate itself, because there isn't currently a criminal case that is sufficient for purposes of service and they've suffered massive harm.
>
> So, of course, that would not be our preference, and we do think that the Supreme Court has said you can't change the rules of service, et cetera, but the—that's all in our brief—but we do think that the alternative would be dismissal without prejudice, allow the Government at the appropriate time to then supercede the indictment again, add the corporation into the indictment.

>   And at that point, a year down the road, two years, however long it takes and wherever the MLAT process or the extradition process takes, at that point we could have this argument as to specific individuals, corporations, entities.
>
>   But, in the meantime, having the company subject to the burden of a—the incredible burden of a criminal prosecution with no ability to defend itself and no service is an extraordinary result and one that is unprecedented.

(July 27, 2012 Hrg. Tr. at 40:17-42:14.)  This colloquy demonstrates that Megaupload expressly sought dismissal at least until Megaupload can be properly served, and that the question whether the case should be dismissed without prejudice pending extradition of the individual Defendants has been and remains properly before the Court.

Notably, the Government does not dispute that such request was properly posed at, and has remained pending since, the July hearing.  (*See* Dkt. 132.)  Instead, the Government argues that this Court lacks authority to dismiss a criminal indictment to protect a corporate defendant's due process rights.  It also argues that, in any event, Megaupload will suffer no harm from a prolonged delay—even an indefinite one—in the commencement of proceedings against it, or, alternatively, that any harm Megaupload may suffer is self-inflicted.  Each of these arguments is without merit and simply confirms, yet again, the lengths the Government will go to deny Megaupload due process.

## I.   THIS COURT HAS THE INHERENT POWER TO DISMISS THE INDICTMENT TO PROTECT THE CORPORATE DEFENDANT'S DUE PROCESS RIGHTS

Megaupload's request for dismissal rests on two basic legal tenets:  (1) a corporate defendant such as Megaupload is entitled to due process of law; and (2) courts have the inherent authority to protect those due process rights, including by dismissing a criminal indictment. (*See* Dkt. 128-3 at 3.)  In its Opposition, the Government takes on both of these tenets. (Dkt. 132 at 3-4.)  Beyond describing Megaupload's cited precedents as "out-of-context sound bites," however, the Government offers no positive authority of its own to suggest that Megaupload is

wrong on the law. Thus, for example, the Government does not cite a single case holding that corporate defendants lack the constitutional protections of due process—nor could it. More than a century of precedent firmly establishes that corporations are legal persons, entitled to due process. *See, e.g., Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418-19 (1984) (holding that nonresident corporate defendant's due process rights were violated by court's exercise of in personam jurisdiction, where corporation did not have sufficient contacts with the forum state); *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (assertion of jurisdiction over out-of-state corporation must comply with "traditional notions of fair play and substantial justice"); *Chicago, Milwaukee, & St. Paul. R.R. Co. v. Wisconsin*, 238 U.S. 491, 501-02 (1915) (holding that a state statute regulating the railroad's sleeping cars is invalid and cannot be sustained as a valid exercise of the state's reserved power to alter a corporate charter when the statute deprives the corporation of its property without due process of law); *Noble v. Union River Logging R. R. Co.*, 147 U.S. 165, 176 (1893) (holding that an order revoking approval of the railroad company's maps for right of way over public lands was "an attempt to deprive the [railroad] of its property without due process of law"). Considering there is no doubt that Megaupload would have a constitutional right to speak up in publicly criticizing the ongoing prosecution of it, it seems beyond strange for the Government now to question whether Megaupload is entitled to speak up, vindicate itself, and obtain redress before the United States District Court that is presiding over its prosecution. *Cf. Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 130 S.Ct. 876, 900 (2010) ("[P]olitical speech does not lose First Amendment protection 'simply because its source is a corporation.'") (internal citation omitted).

The Government likewise offers nothing to support its contention that this Court stands powerless to defend Megaupload from the Government's unwarranted delay in commencing

criminal proceedings against it. Again, the legal authorities directly contradict the Government's position. Federal Rule of Criminal Procedure 48(b)(3) expressly provides that a "court may dismiss an indictment, information, or complaint if unnecessary delay occurs in . . . bringing a defendant to trial." The Advisory Committee Notes to Rule 48 make clear that, "[t]his rule is a restatement of the inherent power of the court to dismiss a case for want of prosecution." Courts have applied this rule to dismiss indictments where—as here—the prosecution's delay threatens to prejudice the criminal defendant. *See United States v. Rowbotham*, 430 F. Supp. 1254, 1257 (D. Mass. 1977) (dismissing a criminal indictment where eight months had passed since defendant's indictment without the Government attempting to seek the defendant's extradition or to bring him before a judicial officer); *United States v. Zabady*, 546 F. Supp. 35, 39-40 (M.D. Penn. 1982) (delay of four months since date of defendants' indictment, together with prospective delay of at least another year, required dismissal of indictment without prejudice; court would not sanction open-ended indictment process whereby Government would have unlimited time to arrange its case and defendants would suffer severe personal prejudice from protracted delay). To the extent precedent on these points is relatively scarce, it is because such overreaching by the United States Government in its criminal prosecutions appears to be relatively rare. But it bears emphasizing that the Government cites no precedent to support its position that this Court lacks power to dismiss. There should be no doubt, therefore, that this Court may dismiss the case against the corporate defendant, whether with or without prejudice, as and if appropriate to protect Megaupload's right to due process and prevent undue prejudice.

## II. MEGAUPLOAD WILL SUFFER SUBSTANTIAL PREJUDICE ABSENT DISMISSAL

The central question is whether this Court should now exercise that power. The Government contends that, even if the Court has the ability to dismiss the Superseding

Indictment against Megaupload, it should decline to do so because Megaupload will suffer no harm as a result of "delay in formal service of a piece of paper," particularly because "Megaupload Limited is on notice of its indictment on criminal charges in the Eastern District of Virginia." (*See* Dkt. 132 at 2, 7.) Resistance to perceived "technicalities" might be expected in some cases. But it comes with poor grace from *the Government* in *this* case, considering that it has stood on self-serving technicalities at every turn—*e.g.*, in trying to prevent the undersigned counsel from even being heard, in freezing Megaupload's assets that could otherwise fund proper defense and preservation of evidence, and in denying innocent users any practical means of recovering their property. Only upon encountering a hard-and-fast requirement of service that it cannot meet does the Government suddenly perceive room to bend the rules.

In any event, contrary to the Government's view of the matter, the Supreme Court has made clear that service of process[2] is "fundamental to any procedural imposition on a named defendant" and a prerequisite to the exercise of judicial power over a defendant—regardless of whether the defendant has actual notice of the indictment. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) ("In the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant."); *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987) ([B]efore a court may exercise personal jurisdiction over a defendant, *there must be more than notice to the defendant* and a constitutionally sufficient relationship between the defendant and the forum. *There also must be a basis for the defendant's amenability to service of summons*.

---

[2] Although this Court in passing suggested the prospect that Rule 4's mailing requirement, while mandatory, might be differentiated from its overall service requirement, it reserved any judgment about the matter. (Dkt. 127 at 1 n.1.) Notably, we know of no precedent for differentiating the import of Rule 4's mailing requirement from its delivery requirement, and the Supreme Court's insistence on strictures of formal service, quite apart from actual notice, seems inhospitable to any such distinction.

Absent consent, this means there must be authorization for service of summons on the defendant.) (emphasis added); *see also Harding v. Williams Prop. Co.*, No. 96–2713, 1998 WL 637414, at *4 (4th Cir. Aug. 31, 1998) (Table) (rejecting plaintiff's argument that actual notice suffices absent proper service, because a summons entails "much more than a mere notice."). Indeed, discounting the necessity or import of Rule 4's requirements seems unfair to the plain terms of Rule 4, which, fairly read, reflect a legislative judgment that criminal prosecutions should not reach beyond the enumerated, bounded scope of service.

The Government's narrow conception of service also ignores the indisputable harm that Megaupload, who is presumed innocent of the charges, has already suffered and will continue to suffer as a result of the Government's failure to mail a summons and thereby commence criminal proceedings. It has been nearly ten months since the company was indicted, had its website seized, had its business destroyed, had all of its assets frozen, and been relegated to an indefinite, ongoing state of criminal limbo. Throughout that time, Megaupload has been deprived of any opportunity to rehabilitate its business.[3] It has been denied access to its funds for purposes of

---

[3] The Government appears to attempt to intimidate Megaupload and the individual defendants, pointing to testimony given by Defendant Kim Dotcom in connection with his bail hearings in New Zealand, and suggesting that any effort by Megaupload to rehabilitate its business may result in additional criminal charges. (Dkt. 132 at 9-10.) As an initial matter, while the Government may wish to treat Mr. Dotcom as an alter ego of the corporate defendant, to date it has made no such showing and this Court has made no such finding. As such, Megaupload is presumed to be a separate, independently charged defendant who, more importantly, is presumed to be innocent. Mr. Dotcom's testimony in New Zealand is therefore irrelevant to the present motion. Moreover, neither Mr. Dotcom's bail conditions nor U.S. law precludes Megaupload from engaging in a lawful business—including one that involves the Internet and technology.

Moreover, any "rehabilitation" of the legacy Megaupload cloud storage site for purposes of consumer access will occur, if at all, under the meet and confer mechanism ordered by the Court on April 18, 2012 (*see* Dkt. 87) involving Judge Anderson and/or by approval of this Court, as well as New Zealand authorities to the extent bail conditions are implicated, which would make any such rehabilitation lawful on its face.

mounting its defense in this case. Megaupload's servers—which house potentially exculpatory evidence, critical to Megaupload's defense—have been taken offline due to non-payment of fees and now face grave danger of data loss. Further, Megaupload's innocent customers have been prevented from retrieving their property. (*See* Dkt. 90.) It should be beyond dispute, therefore, that the Government's failure to comply with Rule 4 is subjecting Megaupload to ongoing, irreparable harm indistinguishable from the sort that would attend ultimate criminal conviction following full criminal process.

The Government scores no points by contending that Megaupload's motion for stay in the separately filed civil case somehow diminishes the harm that Megaupload is suffering from the Government's failure to commence criminal proceedings. (*See* Dkt. 132 at 8.) The potential prejudice that the civil plaintiffs may suffer due to the delay in litigating their claims for monetary damages does not compare, in quality or in degree, to the ongoing harm that Megaupload suffers from being branded a criminal, seeing its business destroyed, and being left destitute, with all of its assets criminally seized. Indeed, the Government's restraint of assets that might otherwise be used to fund a legal defense—the very harm that Megaupload presently seeks to remedy—was a key factor offered by Megaupload in support of the civil stay. *See Microhits, Inc. et al. v. Megaupload, Ltd., et al.*, Case No. 1:12-cv-327 (E.D.Va. May 10, 2012) (Docket #17) at 2 ("Moreover, although Defendants are presumed innocent in the Criminal Action, their assets have been frozen, and they cannot afford to pay counsel and e-discovery vendors to defend this complex matter."). Far from being inconsistent, Megaupload's position in the civil case and its instant request for relief grow out of the same regrettable phenomena spawned by the Government's conduct of this case.

III. **THE GOVERNMENT'S OTHER ARGUMENTS AGAINST DISMISSAL ARE SPURIOUS**

The Government offers several additional arguments against temporary dismissal of the Indictment, each misconceived but deserving of answer.

A. <u>Contrary to the Government's Assertion, This Court Has Not Definitively Concluded that Service on the Individual Defendants Would be Valid Service as to Megaupload</u>

First, the Government contends that dismissal would be improper because the Court has "previously ruled that government's planned method of service (*i.e.*, service upon officers and directors of the company upon extradition to the United States) would be consistent with the requirements of the Federal Rules." (Dkt. 132 at 2.) Contrary to the Government's assertion, however, this Court has yet to decide whether service on the individual defendants as alleged alter egos of Megaupload would constitute valid service on the corporate defendant. Rather, the Court has said only that "the Government *may* be able to prove that at least one of the individually named defendants is an alter ego of the corporate parent," and only *if* the individual defendants are ultimately extradited to the United States. (*See* Dkt. 127 at 4 (emphasis added).) Neither has occurred, and as the Court has acknowledged, they may *never* occur. (*See* Dkt. 127 at 5 n.6.) The status of this case remains that "[t]he government has not served, nor has it attempted to serve, the corporate Defendant." (Dkt. 127 at 2 n.3.) Especially considering that the Government has yet to offer *any actual proof whatsoever* of alter-ego status, it is inconceivable that the Government can stand on the proposition that service on that putative basis would ultimately be valid.

B. <u>Any Delay in the Extradition Proceedings is Directly Attributable to the Government's Unlawful Conduct in New Zealand</u>

The Government next argues that any harm Megaupload is suffering due to the delay in proceedings should not matter because, "[s]ince they were arrested in New Zealand in January of 2012, defendants Kim Dotcom, Mathias Ortmann, Finn Batato, and Bram van der Kolk have challenged nearly every aspect of the New Zealand-based warrants and extradition proceedings in a variety of courts." (Dkt. 132 at 6.) The Government's suggestion—that the exercise of the defendants' legal rights in this jurisdiction and abroad constitutes obstruction—is peculiar and off base. Furthermore, it is misleading given established facts that pass unmentioned by the Government. All the Government says is that some of the legal issues in New Zealand are "currently under review before the New Zealand Court of Appeal (and with the likely prospect of being ultimately resolved before the Supreme Court of New Zealand)." Yet it fails to mention that it was the *Government* that filed those appeals (in the interest of exercising its rights, we would acknowledge, and not obstruction). Still more important, and more telling, the Government fails to mention *why* it has filed those appeals—namely, because it has acted unlawfully, as determined by two separate branches of the New Zealand government.

The High Court in New Zealand issued an order on June 28, 2012, finding that search warrants executed in New Zealand were invalid, and that the resulting searches and seizures illegal. (*See* Judgment of Winkelmann J (June 28, 2012), attached as Exhibit A.) Specifically, the Court concluded:

> The warrants did not adequately describe the offenses to which they related. Indeed they fell well short of that. They were general warrants, and as such, are invalid.

> The warrants were expressed to authorise the search for and seizure of very broad categories of items. These categories of times were defined in such a way that they would inevitably capture within them both relevant and irrelevant material.

> The Police acted on this authorisation. The warrants could not authorise seizure of irrelevant material, and are therefore invalid.
>
> . . .
>
> The Police relied on invalid warrants when they searched the properties and seized the various items. The search and seizure was therefore illegal.

(Exh. A at ¶¶ 144(a), (b), (d).) The High Court then concluded that the FBI specifically acted unlawfully when it took copies of data from Dotcom's computer offshore:

> The release of the cloned hard drives to the FBI for shipping to the United States was contrary to the 16 February direction given under s 49(2) of the [Mutual Assistance in Criminal Matters Act ("MACMA")] that the items seized were to remain in the custody and control of the Commissioner of Police. It was therefore in contravention of s 49(3) of the MACMA.

(Exh. A at ¶ 144(f).)

Most recently, in a September 27, 2012 letter to New Zealand Prime Minister John Key, New Zealand's inspector general of intelligence and security revealed that the Government Communications Security Bureau—a foreign intelligence agency—unlawfully spied on Kim Dotcom, who has resident status in New Zealand and therefore is a "protected person." (*See* Letter from D.P. Neazor to Prime Minister John Key (Sept. 27, 2012), attached as Exhibit B.) As a result of this revelation, Prime Minister Key issued a direct apology to Kim Dotcom. *See Megaupload Spying Case Brings New Zealand Apology*, B.B.C. NEWS, Sept. 27, 2012, *available at* http://www.bbc.co.uk/news/technology-19741343.

For the Government, in these circumstances, to fault Megaupload and its Co-Defendants for supposed "delay" associated with invoking their legal rights is to turn due process on its head. Because it is fairer to blame the wrongdoer rather than the party wronged for any delay associated with righting the wrong, it seems bizarre that the Government would be trying to hold the New Zealand proceedings, in which the individual defendants merely are exercising their

legal rights (and achieving considerable success with the New Zealand judiciary), against Megaupload or any of its Co-Defendants.

      C.    <u>Defendants Have Offered to Consider Waiving Extradition and Service, and Voluntarily Appearing in this Court, Subject to Reasonable Terms and Conditions</u>

Finally, the Government asks the Court to deny Megaupload's requested relief because it contends that dismissal—even a temporary one—would prejudice the United States, including by requiring the expenditure of additional prosecutorial resources to re-indict the company and by potentially rendering some of the charges against Megaupload untimely. (*See* Dkt. 132 at 11-12.) Of course, it is the Government that chose to bring criminal charges when it did, as it did; it is the Government that was obliged to serve a criminal summons on Megaupload in order to commence criminal proceedings; and it is the Government that stands to be held to account and to pay the fair price associated with any delay or ultimate inability to comply with its obligations. Again, Megaupload has already been made to pay a much dearer price, including loss of its business, reputation, assets, ability to fund its defense, *etc*. Any prejudice now claimed by the United States holds not a candle to the due process rights of the accused, unless and until Megaupload may be proven guilty, beyond a reasonable doubt, in a court of law.

Further, the Government's claim of prejudice should be assessed in light of Megaupload's offer to waive service of the summons and voluntarily plead not guilty in this Court. According to the Government's submission, Megaupload sought effectively to extort the Government by conditioning its waiver of service on "legal and financial considerations that would likely undermine the Court's discovery and trial procedures and improperly dissipate restrained illicit proceeds." (Dkt. 132 at 5.) Here, the Government is disclosing to the Court the parties' private settlement negotiations. What is worse, however, it is offering a distorted account of them that does not square with Megaupload's actual, written offer that the

Government neglects to provide. As Megaupload's letter to the Government (a copy of which we now provide as Exhibit C, because the Government has raised the matter and the Court deserves to have a precise and accurate account) clearly shows, Megaupload offered to waive service and appear for trial provided only that the Government agree to release sufficient funds to permit Megaupload to defend itself—as is, we continue respectfully to submit, Megaupload's constitutional right according to *United States v. Farmer*, 274 F.3d 800 (4th Cir. 2001). (*See* Dkt. 96-2.)

Only by the Government's perverse conception might Megaupload proceed on *different* terms—surrendering its obvious, unanswerable procedural objection under Rule 4 while exposing itself to numerous, complicated substantive charges as to which it has not a penny to fund substantive defense. If there is anything especially noteworthy about Megaupload's proposal for moving this case forward, it is this: Megaupload asked for nothing more than the practical ability to mount a full and fair substantive defense, in which event it would forgive the Government's demonstrated procedural failings—and the Government not only rejected that offer out of hand, but now treats it as cause for condemnation. Thus, the only proposal discernible by Megaupload for moving this case forward on the basis of the Superseding Indictment in a way that affords Megaupload some semblance of due process and meaningful confidence that it can have its day in Court has been rejected out of hand by the Government. The Government cannot now be heard to complain that it is being held to Rule 4 or else made to face the consequences for noncompliance, with no more room for practical compromise than it would afford the criminally accused.

## **CONCLUSION**

For the foregoing reasons, Movants respectfully request that the Court grant the undersigned leave to appear on a limited and special basis in order to renew Megaupload's request to dismiss the Indictment without prejudice. Once leave is granted, specially appearing Defendant Megaupload Limited will respectfully renew its request—made at the July 27, 2012 hearing on the motion to dismiss—that the Court dismiss the indictment against it until such time as Megaupload may receive service and mailing in compliance with Rule 4.

                                              Respectfully submitted,

| | |
|---|---|
| | ___/s/ Heather H. Martin_____ |
| | William A. Burck |
| Ira P. Rothken | Derek L. Shaffer |
| ROTHKEN LAW FIRM | Heather H. Martin (VSB # 65694) |
| 3 Hamilton Landing | QUINN EMANUEL URQUHART & |
| Suite 280 | SULLIVAN LLP |
| Novato, CA 94949 | 1299 Pennsylvania Avenue N.W., Suite 825 |
| (415) 924-4250 | Washington, D.C. 20004 |
| (415) 924-2905 (fax) | (202) 538-8000 |
| ira@techfirm.net | (202) 538-8100 (fax) |
| | williamburck@quinnemanuel.com |
| | derekshaffer@quinnemanuel.com |
| | heathermartin@quinnemanuel.com |
| | |
| | Carey R. Ramos |
| | Robert L. Raskopf |
| | Andrew H. Schapiro |
| | QUINN EMANUEL URQUHART & |
| | SULLIVAN LLP |
| | 51 Madison Avenue, 22nd Floor |
| | New York, N.Y.  10010 |
| | (212) 849-7000 |
| | (212) 849-7100 |
| | careyramos@quinnemanuel.com |
| | robertraskopf@quinnemanuel.com |
| | andrewschapiro@quinnemanuel.com |
| | |
| | *Counsel for Defendant Megaupload Limited* |

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 1, 2012, the foregoing REBUTTAL MEMORANDUM IN SUPPORT OF MOTION OF QUINN EMANUEL URQUHART & SULLIVAN LLP AND THE ROTHKEN LAW FIRM FOR LEAVE TO ENTER LIMITED AND SPECIAL APPEARANCE ON BEHALF OF MEGAUPLOAD LIMITED was filed and served electronically by the Court's CM/ECF system upon all registered users.

    /s/ Heather H. Martin
Heather H. Martin (VSB # 65694)
QUINN EMANUEL URQUHART &
SULLIVAN LLP
1299 Pennsylvania Avenue N.W., Suite 825
Washington, D.C. 20004
(202) 538-8000
(202) 538-8100 (fax)
heathermartin@quinnemanuel.com