# EXHIBIT B



INSPECTOR-GENERAL OF
INTELLIGENCE AND SECURITY

THE HON D.P. NEAZOR CNZM

27 September 2012

The Rt Hon John Key
Prime Minister
Parliament Building
**WELLINGTON**

Dear Prime Minister

**KIM DOTCOM AND OTHERS v ATTORNEY-GENERAL – RESIDENCY STATUS**

1.     This report relates to your request on 17 September that I should enquire into action by the GCSB affecting Kim Dotcom and others including making an assessment of errors.  The Bureau has reported to you that there appears to have been a breach of statutory restrictions applicable to the collection work of the GCSB.

**Background:**

2.     Kim Dotcom is in dispute with United States authorities about the accumulation of sums of money, the gathering of which may have given rise to allegations of criminal activity in the United States which the authorities there wish to pursue.  That pursuit may well involve an attempt by Court proceedings to extradite Kim Dotcom and others to the United States, involving questions of discovery of documents and arrest of persons, Kim Dotcom and others.

**New Zealand Police involvement in the event:**

3.     A specialist group of New Zealand Police Officers has been involved in assisting the United States authorities and investigating a couple of related New Zealand matters.  As part of the New Zealand Police assistance, communications passed between the Police group and GCSB.  Those communications were related to a proposal to arrest Kim Dotcom and associated persons.  It was believed by Police Officers that these persons

could present potential danger to officers and others involved if the attempted arrest was made. With that belief it was important for the Police to know what action Dotcom and associated people might plan to take and where; i.e. they sought intelligence about possible events. The documents show that information was collected about Dotcom and his associates by the Bureau (largely about their movements or possible movements at relevant times) and passed on to the Police. In my view, considered on its own, the passing on as such could have been lawful but the collection in the circumstances was not. The documents I have seen which record the events do not disclose any interest or inquiry by GCSB about the facts or events of Dotcom's disputed activity; just where he might be and who might be with him.

**Involvement of the GCSB Mechanism:**

4.    Like other countries, New Zealand has Government agencies whose task is, covertly if necessary, to collect and report on information which is relevant to security. Information is obtained by various appropriate techniques which it is unnecessary to set out. The relevant New Zealand agencies are the New Zealand Security Intelligence Service and the Government Communications Security Bureau. Only the latter is involved in this event. The mandate of each agency is set out in an Act of Parliament which is designed to control the range of the agency's enquiry and how it works. Each agency's work is not at large; it is limited by its controlling Act.

**GCSB Gathering and Retaining Information and Dealing with Crime:**

5.    For present purposes GCSB has the specific functions of gathering foreign intelligence, in accordance with the foreign intelligence requirements of the Government of New Zealand:

(i)    by intercepting communications under the authority of the GCSB Act 2003;

(ii)    by collecting information in any other lawful manner.

6.    Another of the Bureau's functions is to provide advice and assistance to any public authority in New Zealand on any matter that is relevant to the functions of the public authority or other entity and to a purpose specified in the Act e.g. to pursue the GCSB's objective of the provision of foreign intelligence that the Government in New Zealand requires, to protect the safety of any person, and in support of the prevention or detection of serious crime. The Bureau has other specified functions, but these are what is presently relevant.

3

7.   The Bureau is specifically empowered to retain any intercepted communication if its content relates to the Bureaus' objective or functions. It may for the purpose of preventing or detecting serious crime in New Zealand or in any other country, retain information that comes into its possession and may communicate that information to members of the New Zealand Police. Hence my view that passing information to the Police could be lawful.

**Foreign Element:**

8.   This is the significant factor in the present case.

9.   The Bureau is intended to collect foreign intelligence only.  That theme runs through the whole Act.  All of the provisions authorising collection of intelligence and communications are related to what is "*foreign*" – "*foreign intelligence*" (s.7 (i) (a) and (b)), (s.8 (i) (a)) "*foreign communications*" (s.8) and prohibition against targeting domestic communications (ss. 13, 14, 16 and 19).

10.   A descriptive process is used in the GCSB Act. Examples are-

"***foreign communications*** *means communications that contain, or may reasonably be expected to contain, foreign intelligence*".

"***foreign intelligence*** *means information about the capabilities, intentions, or activities of a foreign organisation or a foreign person*".

"***foreign person*** *means an individual who is neither a New Zealand Citizen nor a permanent resident...*".

"***permanent resident*** *means a person who is, or who is deemed to be, the holder of a residence class visa  under the Immigration Act 2009.*"

The first inquiry as to whether a person is to be regarded as "foreign" under this Act is related to citizenship or permanent residence.  If the person concerned does not have one of those statuses, he or she is foreign for the purpose of the GCSB Act and his or her communications are not protected. If the person is a citizen of New Zealand or a permanent resident his or her communications are protected.  People in the permanent residence category were originally described in the GCSB Act as the holder of a residence permit but are now described by a concept called a "residence class visa".

4

The Immigration material I have seen in respect of Dotcom shows that he was granted a residence visa offshore under the Immigration Act 1987, Investor Plus category, in November 2010. At that point in time he did not meet the definition of 'permanent residence' under the GCSB Act as it then was.

However, before he arrived in New Zealand the new Immigration Act 2009 came into force on 29 November 2010 and deemed him to hold a residence class visa from that point in time. He met the definition of 'permanent resident' for the purposes of the GCSB Act accordingly.

Although Dotcom's status is subject to monetary and residential conditions for a period of three years short of actually being deported Mr Dotcom retains his immigration residence status and remains a permanent resident for the purposes of the GCSB Act.

It was on my understanding not recognised that Dotcom as the holder of a resident visa under a particular category provided for by the Immigration Act was therefore a 'permanent resident' (and thus a protected person) under the GCSB Act.

**Potential for confusion:**

11. Dotcom is not on my understanding a New Zealand citizen – he is Finnish or German. He is however one of a category of people who is treated in New Zealand as if he ought to have protection against collection of his information. This result has come about by reference to and application of the Immigration Act. That he (and others) has protection of their communications under the GCSB Act is simply an effect of what has happened under the Immigration Act, so long as the relevant words apply to him.

12. As this matter went along what was discovered in the case of Dotcom and associated people was that resident status had been obtained on their behalf under the Immigration Act 1987 and carried forward under the later 2009 Act. It was understood incorrectly by the GCSB that a further step in the immigration process would have to be taken before Dotcom and associates had protection against interception of communications

13. Leaving aside possible confusion arising from the effect of the permit to be in New Zealand Dotcom and party had, the application made by the Police to GCSB was a proper one: the request was made on the basis that the information sought was foreign intelligence contributing to the function of the New Zealand Police and supporting the prevention or detection of crime. The GCSB acting on it was proper.

14. Enquiry was made during the activity in an attempt to ensure that the Bureau acted within its legal mandate as to what it can collect. The illegality arose because of changes in the Immigration Act wording and some confusion about which category Dotcom was in thereafter.

15. Complete avoidance of a recurrence will only come about if the system is such that those requesting assistance from the Bureau about non citizens check with Immigration the immigration status of people who may become targets to be sure of what their immigration status in fact is (not may be) in terms of the GCSB Act definitions and tell the Bureau what they have ascertained. It is important to realise that what the GCSB may do is governed finally by the GCSB Act, not the Immigration Act. Because the law allows the covert collection of information about only some people in New Zealand, the events demonstrate that it is important to be sure at all times of the proposed target's legal status in the country.

**Summary:**

- In my view the only issue of illegality arises in this matter from confusion in this instance between the case of a person transferring funds and the general category of residents .

- The GCSB is controlled by its governing Act in what it may do. That Act makes it clear that the Bureau is intended to collect foreign intelligence only, but that includes the function of assisting the Police by gathering foreign intelligence for the purpose of preventing or detecting serious crime.

- A foreign person for the purpose of the GCSB Act is someone who is neither a New Zealand citizen nor (now) the holder of a residence class visa under the Immigration Act.

- People who hold a residence class visa under the Immigration Act have protection against the collection of information under the GCSB Act even if they are not classified as a citizen.

- In this case it was recognised that Dotcom was not a New Zealand citizen. He was classed as the holder of a residence class visa in a particular category but it was not apparent to the Police or GCSB that he thereby fell into a protected category. Because he should have been regarded as in such a category, collection was not allowed under the GCSB Act and in that way illegal.

- Collection had in fact stopped before it was recognised that he did fall within a protected category..

6

  - The information sought to be collected did not relate to the details or merits of his dispute in the US. It was about where he was or might be expected to be in New Zealand at a particular time.

**Recommendation to prevent recurrence:**

16.     Since occasions for the Police to seek assistance from GCSB in matters of safety or security will assuredly arise again under the GCSB Act as it stands, what is needed is assurance available to GCSB that the subject of the information sought is not protected by the terms of the GCSB Act, i.e. that the person concerned is not a New Zealand citizen, that he or she is not a permanent resident and is not the holder of a residence class visa under the Immigration Act. There will need to be alertness that:

  (i)     the wording of the provisions of the GCSB Act are controlling;

  (ii)    since the relevant wording of either Act may change it would be useful for the applicant for assistance to advise what factors as to status they rely on, and what words in the GCSB Act they rely on for their application.

Yours sincerely

D P Neazor
**Inspector-General**