FILED

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

2013 JAN -2 ⊡ 4: 00

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| KIM DOTCOM, et al., | ) |
| | ) |
| Defendants | ) |
| | ) |

The Honorable Liam O'Grady

Criminal No. 1:12-CR-3

## [PROPOSED] SUPPLEMENTAL BRIEF OF SPECIALLY APPEARING DEFENDANT
### AND INTERESTED PARTY MEGAUPLOAD LIMITED
#### REGARDING RULE 41(G) HEARING

On October 22, 2012, interested third-party Kyle Goodwin moved to unseal certain search warrant materials related to this case, on the grounds that such materials "will not only be relevant to any Rule 41(g) inquiry, but will likely include evidence Mr. Goodwin will present as part of his ongoing efforts to have his property returned." (*See* Dkt. 131.) In its response to Mr. Goodwin's motion, the Government proposed that the Court unseal the materials, with only minimal redactions. (*See* Dkt. 139.) The Court adopted the Government's proposal and unsealed the materials on November 7, 2012. (*See* Dkt. 145.) This recent unsealing lays bare a crucial omission the Government made in applying for the search warrants it used to seize domain names belonging to Defendant Megaupload Limited ("Megaupload"). Specifically, the Government's affidavits underpinning the warrants omitted critical, exculpatory information regarding whether, why and how Megaupload knew it was hosting criminally infringing files. The Government represented that, "[o]n or about June 24, 2010, members of the Mega Conspiracy were informed, pursuant to a criminal search warrant from the U.S. District Court for the Eastern District of Virginia, that thirty-nine infringing copies of copyrighted motion pictures

were present on their leased servers at Carpathia Hosting, a hosting company headquartered in the Eastern District of Virginia," and that, "[a]s of November 18, 2011, thirty-six of the thirty-nine infringing copies of copyrighted motion pictures were still being stored on servers controlled by the Mega Conspiracy," after it was informed of the infringing content.[1]  (*See* Dkt. 145-1 at 11, 38, 61, 84, 105-106)  This snippet—which appears in each relevant affidavit and is the only direct, corroborated evidence the Government purports to offer as proof that Megaupload had requisite knowledge—suggests that Megaupload was warned of its potentially criminal complicity yet persisted in hosting the files without concern for their illegal content. The affidavits, in short, paint Megaupload as a brazen scofflaw.

The truth, as the Government well knows, is quite different.  Megaupload had every reason to retain those files in good faith because *the Government had sought and obtained Megaupload's cooperation in retrieving the files and warned that alerting users to the existence of the warrant and the Government's interest in the files could compromise the investigation.* Thus, the Government selectively parsed its account so as to exclude critical facts that negate any notion that Megaupload had criminal *mens rea* to retain the infringing files.  The Government deliberately neglected to apprise the Court that:

- Megaupload received the June 24, 2010 warrant in the course of *cooperating* with a Government investigation;

- Megaupload was informed of the June 24, 2010 warrant by its vendor, Carpathia Hosting ("Carpathia"), with the Government's consent and for the express purpose of obtaining Megaupload's voluntary assistance with executing the warrant;

- the Government declined to communicate directly with Megaupload about the warrant, instead deputizing Carpathia to communicate on its behalf;

- Carpathia informed Megaupload that the warrant was sealed, and that only Carpathia and Megaupload, not the users of the infringing files, were to know

---

[1] This same representation appears in the Superseding Indictment.  (Dkt. 34 at ¶ 26.)

of its existence, and at the Government's request provided Megaupload a copy of the sealing order. The sealing order provides, in relevant part:

> The UNITED STATES, pursuant to Local Rule 49(B) of the Local Criminal Rules for the United States District Court for the Eastern District of Virginia, having moved to seal the search warrant, the attachments to the search warrant, the application for search warrant, the affidavit in support of the search warrant, the Motion to Seal, and proposed Order in this matter; and

> The COURT, having found that revealing the material sought to be sealed would jeopardize an ongoing criminal investigation; having considered the available alternatives that are less drastic than sealing, and finding none would suffice to protect the government's legitimate interest in concluding the investigation; and finding that this legitimate government interest outweighs at this time any interest in the disclosure of the material; it is hereby

> ORDERED, ADJUDGED, and DECREED that, the search warrant, the attachments to the search warrant, the application for search warrant, the affidavit in support of the search warrant, the Motion to Seal, and this Order be sealed until the United States moves to unseal.

- Carpathia directed Megaupload *not* to open "EM7 tickets" on the infringing files—which would have alerted a larger number of people to the existence of the warrant and jeopardized the secrecy of the investigation—"[b]ecause of the Government's seal on the warrant," asking that Megaupload instead deal directly with a single person at Carpathia;

- Megaupload's preservation of the status quo, particularly by not taking down or otherwise disturbing the files identified in the June 24, 2010 warrant, was faithful to the Government's express desire, reflected by the Magistrate Judge's order sealing the warrant (provided to Megaupload by Carpathia at the Government's request) and by Carpathia's instructions on the Government's behalf, for Megaupload to ensure that evidence would remain preserved and that the target users would remain unaware of the investigation; and

- consistent with its stated desire that the warrant and investigation remain confidential so as not to tip off the target users, the Government—neither directly nor through Carpathia—ever requested that Megaupload take down the files identified in the June 24, 2010 warrant.

Although it is now apparent that Megaupload, itself, was the target of a criminal investigation at the time it received the June 24, 2010 warrant from Carpathia, Megaupload was

led to believe otherwise at the time.  Indeed, it was steered to cooperate with the Government by Carpathia's express assurance that the Government had given it "no reason to believe the [sic] MegaUpload is the target of the investigation."  (*See* June 25, 2010 email from Phil Hedlund to Mathias Ortmann and Kim Dotcom, attached as Exhibit 1.)  By all indications, the Government tapped Carpathia to convey the June 24, 2010 warrant to Megaupload, thereby planting what the Government would later claim, for purposes of this case, amounted to criminal knowledge that Megaupload was hosting infringing files, while simultaneously lulling Megaupload into thinking it was *not* a target of its ongoing investigation (which the Government dubbed its "Mega Conspiracy" investigation)—and, what is worse, *affirmatively leading* Megaupload to understand from the warrant's sealing order and Carpathia's representations that Megaupload should take no action with respect to the infringing files lest it tip off the ostensible targets.  In sum, the Government came to paint as *criminal* the very course of conduct by Megaupload that the Government had induced in requesting good-faith cooperation with an investigation that was to remain secret.  Most incredibly of all, however, the Government then came before this Court, *ex parte*, with a selective, distorted account whereby the Government omitted mention of facts— well known to the Government—indicating that Megaupload was of an innocent state of mind in cooperating with what it was told was an ongoing, secret investigation of the infringing files at issue.  The Government deliberately misled the Court that signed the search warrants and failed to disclose material exculpatory information in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

Interested Party Kyle Goodwin in his motion to unseal the warrant materials noted that, "[a]s part of any hearing under Rule 41(g), Mr. Goodwin will need to investigate the government's actions surrounding the searches and seizures that occurred here." (Dkt. 131 at 7.)

- 4 -

The Court granted that motion in relevant part.  Megaupload now respectfully submits that the issues outlined above, which go directly to the scope and propriety of the Government's search and seizure of the Carpathia servers, would be relevant and properly heard at the Rule 41(g) hearing to be scheduled.  Megaupload respectfully requests an opportunity to participate in any Rule 41(g) hearing, and asks that all interested parties be permitted to explore the warrants and their validity—issues that bear directly on Mr. Goodwin's ongoing efforts to have his property returned.

## FACTUAL BACKGROUND

***The June 24, 2010 Warrant***:  On or about June 24, 2010, the Government applied for a warrant to search "[c]omputer servers owned by Carpathia Hosting . . . leased to its customer Megaupload."  (June 24, 2010 Warrant, Attachment A, attached as Exhibit 2, at 5.)  That application was approved by The Honorable Ivan D. Davis, U.S. Magistrate Judge, Eastern District of Virginia.  (*Id.* at 4.)  The warrant further authorized the Government to seize thirty-nine files identified in a schedule attached to the warrant.

The next day, on June 25, 2010, the Government sent the warrant and attachments to representatives of Carpathia Hosting who, at the Government's request, then forwarded the warrant and attachments to Megaupload by email.  (*See* June 25, 2010 email from Phil Hedlund to Mathias Ortmann and Kim Dotcom, Ex. 1.)  Mr. Hedlund's email explained that the warrant was a "sealed (meaning we cannot disclose to anybody) warrant with an exception to disclose to you."  (*Id.*)  His email further requested that, "[b]ecause of the Government's seal on the warrant," Megaupload coordinate any efforts to comply with the warrant with a specific Carpathia representative who was in the know, without publicly opening a ticket as it normally would.  (*Id.*)  Reinforcing that account, the sealing order accompanying the email found that

"revealing the material sought to be sealed would jeopardize an ongoing criminal investigation" and authorized release solely by the Government to Carpathia and, through Carpathia, to Megaupload.  (June 24, 2010 Order to Seal Signed by Magistrate Judge Davis, Ex. 2.)  And Mr. Hedlund's email further reported "relay[ing] to the Government Mega's willingness to work with the Government for these types of requests—just as we discussed during the last day of our visit," and requested that Megaupload "please confirm as soon as possible that Mega will assist in collecting and providing this information," so that Carpathia could "communicate that to the Government."  (*Id.*)

Unbeknownst to Megaupload, however, it was already a target of a criminal investigation, presumably the very same investigation.  (*See e.g.* Warrant 1:12-sw-34, Dkt. 145-1 at 6-7 ¶ 7 ("In March 2010 [redacted] initiated an investigation of a worldwide criminal organization known as the 'Mega Conspiracy' . . . DEFENDANTS and others are members of the Mega Conspiracy.").)  Thus, it now appears that the Government was seeking cooperation and information from Megaupload in June 2010 without informing Megaupload that it was an investigatory target.  Notably, the Government avoided communicating with Megaupload directly, instead deputizing Carpathia to do so on its behalf.  (*See* June 25, 2010 email from Phil Hedlund to Mathias Ortmann and Kim Dotcom, Ex. 1 ("Please know that we attempted to convince the Government to work directly with Mega on this matter, but given the complex jurisdictional issues, they have been unwilling.").)  Far from warning Megaupload that the Government considered it to be part of a worldwide criminal organization, which the Government even at the time was terming the "Mega Conspiracy," the Government, through its anointed agent Carpathia, represented to Megaupload that "[w]e have no reason to believe the [sic] MegaUpload is the target of the investigation."  (*Id.*)

Megaupload cooperated with the Government and voluntarily arranged with Carpathia to supply the Government with the files identified in the sealed warrant. In accordance with the Government's express admonitions—as conveyed to Megaupload through the sealing order and Carpathia's instructions—Megaupload avoided signaling that anything was afoot or otherwise compromising the investigation, preserving the files in their original condition without alerting users or the public that anything had changed. At no time did the Government or Carpathia indicate that Megaupload could or should remove the files identified in the warrant from its cloud storage platform without compromising the stated secrecy of the investigation, much less did they suggest that Megaupload was legally obliged to do so lest it be complicit in an ongoing criminal conspiracy.

Indeed, the Government's message to Megaupload was precisely to the contrary—Megaupload was to take *no* action that could disclose the existence of the investigation. And Megaupload dutifully complied, doing precisely what the Government requested of it, *i.e.*, collect and provide the evidence concerning the infringing files, without taking any additional steps that might compromise the investigation. The Government would subsequently use Megaupload's cooperation with the Government's instruction as the sole direct evidence of Megaupload's purported criminal intent; the Government did so specifically in support of the search warrants it executed against Megaupload and the individual defendants in January 2012. The Government's representation squared neither with the facts well known to it nor with its constitutional obligation to disclose exculpatory evidence in its possession. *See, e.g., Brady v. Maryland*, 373 U.S. 83 (1963).

***The January, 2012 Warrants***: More than one year after it had successfully enlisted Megaupload's assistance in retrieving copies of allegedly infringing files from its cloud storage

service, the Government seized upon Megaupload's cooperation as a core basis for criminal punishment. The Government came before this Court on January 13, 2012, *ex parte*, representing that its June 24, 2010 warrant had vested Megaupload with criminal *mens rea*. (*See*, *e.g.*, Affidavit in Support of Warrant 1:12-sw-34, Dkt. 145-1 at 11 ¶ 17.) In at least five different warrants, the Government represented that, "[o]n or about June 24, 2010, members of the Mega Conspiracy were informed, pursuant to a criminal search warrant from the U.S. District Court for the Eastern District of Virginia, that thirty-nine infringing copies of copyrighted motion pictures were present on their leased servers at Carpathia Hosting, a hosting company headquartered in the Eastern District of Virginia," and that "[a]s of November 18, 2011, thirty-six of the thirty-nine infringing copies of copyrighted motion pictures were still being stored on servers controlled by the Mega Conspiracy," after it was informed of the infringing content. (*See* Dkt. 145-1 at 11, 38, 61, 84, 105-106.) This single paragraph supplied the only direct, corroborated evidence of knowledge purportedly supporting each of the five warrants.

Nowhere did the Government tell this Court that its June 24, 2010 warrant had been calculated to enlist good-faith cooperation with a criminal investigation, while preserving the secrecy thereof. Nowhere did the Government tell this Court that the Government had sought Megaupload's voluntary assistance in executing the warrant. Nowhere did the Government tell this Court that Carpathia had assured Megaupload, in the interests of its requested cooperation, that there was no basis to believe that Megaupload was a target. Nowhere did the Government tell this Court that Megaupload had in fact cooperated precisely as requested. Most importantly and most troublingly, nowhere did the Government tell this Court that Megaupload had been informed by Carpathia, acting on behalf of the Government and heeding the Government's insistence upon sealing, that the secrecy of the warrant and the Government's investigation must

be preserved to avoid destruction of evidence and notification of the targeted users.  Nor did the Government inform this Court that the sealing order it had obtained and furnished Carpathia to provide to Megaupload likewise required secrecy and expressly specified that "revealing the material sought to be sealed would jeopardize an ongoing criminal investigation." In sum, nowhere did the Government tell this Court that Megaupload had done exactly what the Government had asked it to do—execute a search warrant without alerting the ostensible targets to the existence of an investigation.   The Government's contention to this Court that Megaupload's preservation of the status quo was evidence of criminal intent is false, and deliberately so.

*Rule 41(g) and Warrant-Related Filings*: On May 25, 2012, interested party Kyle Goodwin filed his Motion for Return of Property pursuant to Federal Rule of Criminal Procedure 41(g), seeking the return of data stored using Megaupload's cloud storage service.  (Dkt. 90.) The Government opposed that motion on June 8, 2012.  (Dkt. 99.)  Following briefing, oral argument, and efforts at negotiated resolution of the motion, the Court issued an Order on October 2, 2012, indicating that "it is unable to reach a conclusion as to this matter without an evidentiary hearing." (*See* Dkt. 126.)  The Court instructed that the hearing "shall be limited to argument and evidence concerning the applicability of Federal Rule of Criminal Procedure 41(g)" and ordered Mr. Goodwin and the Government to file briefs addressing the suggested format and breadth of this hearing. (*See id.*)

On October 30, 2012, the undersigned filed a motion to enter a special and limited appearance on behalf of Defendant and interested party Megaupload Limited for the purpose of filing a brief weighing in as to the suggested format and breadth of a Rule 41(g) hearing, attaching a proposed brief.  (Dkt. 133.)  At that time, the warrant materials related to this case

had not been unsealed.  On November 20, 2012, the Court granted the undersigned's motion to

enter a special and limited appearance, whereupon Megaupload's brief regarding a Rule 41(g)

hearing was deemed filed *nunc pro tunc* as of October 30, 2012.  (Dkt. 148.)

Earlier, on October 22, 2012, Mr. Goodwin had filed a motion to unseal search warrant

materials.  (Dkt. 131.)  As grounds for unsealing the search warrant materials, Mr. Goodwin

alerted this Court to numerous deficiencies that have been identified in warrants that were

executed in New Zealand at the behest of the U.S. government.  (*Id.* at 3-5.)  Mr. Goodwin

argued that, "[a]s part of any hearing under Rule 41(g), Mr. Goodwin will need to investigate the

government's actions surrounding the searches and seizures that occurred here."  (*Id.* at 7.)  The

Court granted that motion in part on November 15, 2012, and redacted copies of Warrants 1:12-

sw-34, 1:12-sw-35, 1:12-sw-36, 1:12-sw-37 and 1:12-sw-40 were then made public.  (Dkt. 145,

145-1.)  The instant submission proceeds in the light of those revelations.

## DISCUSSION

It is clear from the unsealed warrants that the Government withheld critical information

from its supporting affidavits.  That withholding calls into grave question the legality of any and

all seizures effected pursuant to those warrants and is directly relevant to the upcoming 41(g)

hearing and to Mr. Goodwin's pending motion for return of property.  And the withholding is all

the more worrisome considering the identified pattern of governmental misconduct plaguing the

proceedings in New Zealand.  At this point, it is only appropriate that questions be asked and

answered about why the Government withheld information from this Court as it did and as to

whether it could have otherwise claimed proof of Megaupload's criminal *mens rea* had it not

planted Megaupload's alleged knowledge of infringing files under false auspices of enlisting

cooperation in a secret investigation of which Megaupload supposedly was not the target, and

then misleading this Court about the true intent behind Megaupload's assistance in executing the Government's June 24, 2010 search warrant.  Of course, Megaupload's alleged *mens rea* was in turn crucial to establishing the requisite probable cause for the sweeping searches and seizures which captured the property of innocent users such as Mr. Goodwin.

A warrant is defective—and the resulting search and seizure are unlawful—if the affiant was dishonest or reckless in preparing his affidavit in support of the warrant, and if the allegedly false statement is necessary to the finding of probable cause, regardless whether a searching officer proceeded in good faith.  *United States. v. Leon*, 468 U.S. 897, 926 (1984); *Franks v. Delaware*, 438 U.S. 154, 156 (1978).  A court may order return of property pursuant to Rule 41(g) on the basis that the warrants authorizing seizure of property were invalid.  *See United States v. Comprehensive Drug Testing, Inc.*, 513 F.3d 1085, 1105 (9th Cir. 2008) (*"Comprehensive Drug Testing I"*), *opinion revised and superseded in part by* 621 F.3d 1162 (9th Cir. 2010) (*"Comprehensive Drug Testing II"*).

Mr. Goodwin has sought to challenge the validity of the warrants used to seize his property, and the lawfulness of the government's ensuing actions, even before the warrants and the materials offered in support of them were unsealed.  (Dkt. 91, at 6; Dkt. 131 at 7.)  Now that they have been unsealed, Mr. Goodwin's concerns about their infirmity have only been confirmed and vindicated.  Mr. Goodwin deserves further opportunity to explore the warrants and their validity at a Rule 41(g) hearing, including evidence that the Government misled this Court on the key matter of Megaupload's purported criminal intent.  Because Megaupload is in the best position to analyze the evidence illuminating these matters, it respectfully submits that it should be afforded an opportunity to specially participate and make argument through specially appearing counsel Quinn Emanuel and the Rothken Law Firm at a Rule 41(g) hearing.

## CONCLUSION

For the foregoing reasons, specially appearing Defendant Megaupload respectfully requests that the Court allow the participants in any Rule 41(g) hearing, including Megaupload, the opportunity to address the validity of Warrant 1:12-sw-34, 1:12-sw-35, 1:12-sw-36, 1:12-sw-37, and 1:12-sw-40, of any accompanying materials offered in support thereof, and of any other relevant materials that might be unsealed in the meantime.

Respectfully submitted,

*Heather H. Martin*

William A. Burck
Derek L. Shaffer
Heather H. Martin (VSB # 65694)
QUINN EMANUEL URQUHART &
SULLIVAN LLP
1299 Pennsylvania Avenue N.W., Suite 825
Washington, D.C. 20004
(202) 538-8000
(202) 538-8100 (fax)
williamburck@quinnemanuel.com
derekshaffer@quinnemanuel.com
heathermartin@quinnemanuel.com

Ira P. Rothken
ROTHKEN LAW FIRM
3 Hamilton Landing
Suite 280
Novato, CA 94949
(415) 924-4250
(415) 924-2905 (fax)
ira@techfirm.net

Carey R. Ramos
Robert L. Raskopf
Andrew H. Schapiro
QUINN EMANUEL URQUHART &
SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, N.Y. 10010
(212) 849-7000
(212) 849-7100
careyramos@quinnemanuel.com
robertraskopf@quinnemanuel.com
andrewschapiro@quinnemanuel.com

*Counsel for Defendant Megaupload Limited*

## CERTIFICATE OF SERVICE

I hereby certify that on January 2, 2013, the foregoing **[PROPOSED]**
SUPPLEMENTAL BRIEF OF SPECIALLY APPEARING DEFENDANT AND
INTERESTED PARTY MEGAUPLOAD LIMITED REGARDING RULE 41(G)
HEARING was filed and served on the United States by hand delivery, via courier at the
following address:

> Jay V. Prabhu
> US Attorney's Office (Alexandria)
> 2100 Jamieson Avenue
> Alexandria, VA 22314

Heather H. Martin (VSB # 65694)
QUINN EMANUEL URQUHART &
SULLIVAN LLP
1299 Pennsylvania Avenue N.W., Suite 825
Washington, D.C. 20004
(202) 538-8000
(202) 538-8100 (fax)
heathermartin@quinnemanuel.com

# EXHIBIT 1

From: **Phil Hedlund** <phedlund@carpathiahost.com>
Date: Fri, Jun 25, 2010 at 12:06 PM
Subject: Search Warrant - Urgent
To: Mathias Ortmann <mo@uae.de>, Mathias Ortmann <mo@megaupload.com>, Kim <hq@megaupload.com>
Cc: Peter Weber <pweber@carpathiahost.com>, Sean Walsh <swalsh@carpathiahost.com>

Kim and Mathias,

Please find attached a Search Warrant received by Carpathia today.  Over the past days (since our return from our visit to you); Carpathia has been negotiating with the Government to avoid receiving a search warrant that could result in a seizure or imaging of the servers Carpathia provides to Mega.  Instead, we've managed to convince the Government to issue this sealed (meaning we cannot disclose to anybody) warrant with an exception to disclose to you.  Please know that we attempted to convince the Government to work directly with Mega on this matter, but given the complex jurisdictional issues, they have been unwilling.  Nonetheless, Carpathia feels as if we've achieved a small victory by preventing the Government from issuing a search warrant giving them power to seize or image the servers themselves.  Kim, we were able to do this specifically because we relayed to the Government Mega's willingness to work with the Government for these types of requests – just as we discussed during the last day of our visit (boy, am I happy we discussed it).

Carpathia needs your help collecting the information sought in this warrant so Carpathia can hand the information over to the Government.  We have no reason to believe the MegaUpload is the target of the investigation.  Mega's assistance in providing this information is the path most likely to avoid any disruption of services.

We specifically need (please note: I'm summarizing the Search Warrant; please read and rely on the actual Search Warrant, not my summary in case I made a typo):

1.  All records, including the content associated with each filename, logs of uploads, downloads, page views, displays, streams and distributions for each filename in the warrant (see the last two pages).  Carpathia has already asked the Government to provide us with the 'MD5 sums' to assist in this effort.  If any of the above information is derived from Carpathia servers that aren't in Virginia, you aren't required to provide it.

2.  All information that might identify the subscribers related to the accounts or identifiers, including names, addresses, telephone numbers and other identifiers, e-mail addresses, business information, lenth of service (including start date), types of services utilized, means and source of payment for services (including any credit card or bank account number), of the individual or individuals who uploaded the content associate with each filename in the warrant.  Again, this only relates to the servers provided by Carpathia in VA.

3.  All records stored on the servers Carpathia provides relating to MegaUpload accounts associated with the email accounts and MegaUpload customer IDs identified in the warrant.  Those are: dead1ne@gmail.com; hana_beshara@yahoo.com;

phara@ninjavideo.net, joshev@yahoo.com; tik@ninjavideo.net and Megaupload premium account ID numbers: 5057215313; 10462109706, 3895607225; 6142888968, 505724848 and business silver membership number 5605491629.   Again, this only relates to the servers provided by Carpathia in VA.

Given that the Government wants actual copies of the files themselves, I suspect that the easiest mechanism to consolidate this information would be to identify a specific 1.5Tb disk (or disks) on one of the Supermicro servers in Ashburn and move all the files to that disk (or disks). Once that is done, Carpathia can then remove those disks and give them to the Government.  Of course, Carpathia will replace the removed disks with spares immediately.  Because of the Government's seal on the warrant, please do not open EM7 tickets, but instead deal directly with Sean Walsh (swalsh@carpathiahost.com) to coordinate any assistance you need from Carpathia operations.

If you would please confirm as soon as possible that Mega will assist in collecting and providing this information, Carpathia will communicate that to the Government.  Also, please let us know how long you think you may need to collect this data so we can set expectations with the Government, that would be helpful too.

Please do not hesitate to call me with any questions.

Philip Hedlund
Sr. Director Business Development
Carpathia Hosting, Inc
43480 Yukon Drive
Suite 200
Ashburn, VA 20147
(303) 523 9702 cell
(703) 738 7073 fax
www.carpathiahosting.com

This message is for the designated recipient only and may contain privileged, proprietary, or otherwise confidential information. If you have received it in error, please notify the sender immediately and delete the original. Any other use of the email by you is prohibited.

# EXHIBIT 2



**U.S. Department of Justice**

*United States Attorney*

*Eastern District of Virginia*

*Justin W. Williams United States Attorney's Building*
*2100 Jamieson Avenue*
*Alexandria, Virginia 22314-5794*          [Sender's Fax #]
*(703) 299-3700*

# FACSIMILE TRANSMISSION
## COVER PAGE

DATE: 6/24/2010

TO: Phil Hedlund

PHONE:

TO FAX NO.: 703 - 738 - 7073

SENDER: SA William Engel

SENDER'S PHONE NO.: 202 - 487 - 1908

SENDER'S FAX NO.: 703 - 603 - 3872

NUMBER OF PAGES: 8          *Not Including Cover Page*

---

**Level of Transmitted Information:**

☐ Non-Sensitive Information
☐ Sensitive But Unclassified (SBU)
☐ Limited Official Use (LOU)
☐ Grand Jury Information
☐ Tax Information
☒ Law Enforcement Information
☐ Victim Witness Information

CONTENTS:

**WARNING:** Information attached to this cover sheet is sensitive U.S. Government Property. If you are not the intended recipient of this information, disclosure, reproduction, distribution, or use of this information is prohibited. Please notify this office immediately at the above number to arrange for proper distribution.

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| IN THE MATTER OF THE SEARCH OF | ) | Case No. 1:10SW320 |
| INFORMATION ASSOCIATED WITH | ) | |
| MEGAUPLOAD.COM THAT IS STORED | ) | UNDER SEAL |
| AT THE PREMISES CONTROLLED BY | ) | |
| CARPATHIA HOSTING | ) | |

## ORDER TO SEAL

The UNITED STATES, pursuant to Local Rule 49(B) of the Local Criminal Rules for the

United States District Court for the Eastern District of Virginia, having moved to seal the search

warrant, the attachments to the search warrant, the application for search warrant, the affidavit in

support of the search warrant, the Motion to Seal, and proposed Order in this matter; and

The COURT, having found that revealing the material sought to be sealed would

jeopardize an ongoing criminal investigation; having considered the available alternatives that

are less drastic than sealing, and finding none would suffice to protect the government's

legitimate interest in concluding the investigation; and finding that this legitimate government

interest outweighs at this time any interest in the disclosure of the material; it is hereby

ORDERED, ADJUDGED, and DECREED that, the search warrant, the attachments to

the search warrant, the application for search warrant, the affidavit in support of the search

warrant, the Motion to Seal, and this Order be sealed until the United States moves to unseal.

The United States is authorized to provide a copy of the search warrant with attachments to

Carpathia Hosting.  In addition, because Carpathia may need the assistance of its customer,

MegaUpload Limited to obtain the content from the computer servers leased to MegaUpload and

located within Carpathia's facilities, Carpathia Hosting may provide a copy of the warrant with

attachments and this sealing order to MegaUpload.

Date: 24 Jun 10

Alexandria, Virginia

HONORABLE IVAN D. DAVIS
UNITED STATES MAGISTRATE JUDGE

5

AO 93 (Rev. 12/09) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of Virginia

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) |
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH MEGAUPLOAD.COM THAT IS STORED AT THE PREMISES CONTROLLED BY CARPATHIA HOSTING | ) ) ) ) |

Case No. 1:10SW *320*

## SEARCH AND SEIZURE WARRANT

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Eastern _____ District of _____ Virginia _____ *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

See Attachment B.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before _____ July 8, 2010 _____
*(not to exceed 14 days)*

☑ in the daytime  6:00 a.m. to 10 p.m.    ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge
The Honorable Ivan D. Davis _____ .
*(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)* ☐ for _____ days *(not to exceed 30)*
☐ until, the facts justifying, the later specific date of _____

Date and time issued: _6/24/2010 – i647 hrs,_    _____
                                                                        *Judge's signature*

City and state:  _Alexandria, Virginia_ _____    The Honorable Ivan D. Davis, U.S. Magistrate Judge
                                                                        *Printed name and title*

**Attachment A**
## PREMISES TO BE SEARCHED

Computer servers owned by Carpathia Hosting, headquartered at 43480 Yukon Drive, Suite 200, Ashburn, Virginia 20147, leased to its customer, MegaUpload, including, but not limited to, computers assigned the following IP addresses:

69.5.92.50
174.140.129.69
174.140.128.51
209.222.128.153
209.222.128.246
209.222.128.172
174.140.157.36
174.140.156.81
174.140.128.27
66.117.43.41
174.140.129.47
66.117.43.118
69.5.93.58
174.140.129.67
174.140.128.40
69.5.92.23
69.5.92.54
69.5.93.29
69.5.92.51
69.5.93.34
174.140.128.57
174.140.157.15
69.5.92.41
174.140.157.58
66.117.43.117
209.222.128.204
209.222.128.135
174.140.156.70
174.140.156.72
69.5.93.57
174.140.128.28
174.140.156.56
66.117.43.63
174.140.129.41
174.140.156.78
174.140.128.9
174.140.129.45
69.5.92.39
209.222.128.162

**Attachment B**
**ITEMS TO BE SEIZED**

Items evidencing violations of Title 18, United States Code, Section 2319 and Title 17, United States Code, Section 506 (Criminal copyright infringement); Title 18, United States Code, Section 2 (Aiding and Abetting the foregoing offenses), and Title 18, United States Code Section 371 (Conspiracy) including but not limited to the following:

## I.    ITEMS TO BE SEIZED

1.    All records, including the content associated with each filename, logs of uploads, downloads, page views, displays, streams and distributions for each filename stored on Carpathia computers identified in the table attached in Section III below.

2.    All information that might identify the subscribers related to the accounts or identifiers, including names, addresses, telephone numbers and other identifiers, e-mail addresses, business information, the length of service (including start date), types of services utilized, means and source of payment for services (including any credit card or bank account number), of the individual or individuals who uploaded the content associated with each filename stored on Carpathia computers identified in the table attached in Section III below.

3.    All records stored on Carpathia computers relating to MegaUpload accounts associated with the email accounts and MegaUpload customer IDs:

      a.    dead1ne@gmail.com

      b.    hana_beshara@yahoo.com

      c.    phara@ninjavideo.net

      d.    joshev@yahoo.com

      e.    tik@ninjavideo.net

      f.    MegaUpload premium account ID numbers 5057215313; 10462109706; 3895607225; 6142888968; 5057214848; and business silver membership number 5605491629.

## II.    Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 18, United States Code, Section 2319 and Title 17, United States Code, Section 506 (Criminal copyright infringement); Title 18, United States Code, Section 2 (Aiding and Abetting the foregoing offenses), and Title 18, United States Code Section 371 (Conspiracy), relating to the reproduction, display or distribution of the files identified in Attachment A, including:

1.    Content associated with each filename and logs of uploads, downloads, page views, displays, streams and distributions for each filename stored on Carpathia computers identified in the table attached in Section III below.

2.   Files, databases, and database records for each filename stored on Carpathia computers identified in the table attached in Section III below.

3.   Information identifying the subscribers related to the accounts or identifiers, including names, addresses, telephone numbers and other identifiers, e-mail addresses, business information, the length of service (including start date), types of services utilized, means and source of payment for services (including any credit card or bank account number), for each filename stored on Carpathia computers identified in the table attached in Section III.

4.   All records stored on Carpathia computers relating to MegaUpload accounts associated with the email accounts and MegaUpload customer IDs:

      a.   dead1ne@gmail.com

      b.   hana_beshara@yahoo.com

      c.   phara@ninjavideo.net

      d.   joshev@yahoo.com

      e.   tik@ninjavideo.net

      f.   MegaUpload premium account ID numbers 5057215313; 10462109706, 3895607225; 6142888968; 5057214848; and business silver membership number 5605491629

III.  Table

| IP Address | Filename | Destination URL / Link |
|---|---|---|
| 69.5.92.50 | Avatar+%282009%29+Proper+TSXviD+SRT+%28Part+1%29.divx | http://www.ninjavideo.net/video/52811 |
| 174.140.129.69 | Avatar+%282009%29+Proper+TSXviD+SRT+%28Part+2%29.divx | http://www.ninjavideo.net/video/52812 |
| 174.140.128.51 | Daybreakers+%282009%29+TS+XviD++Rxi Release.divx | http://www.ninjavideo.net/video/54844 |
| 209.222.128.153 | The+Hangover+%282009%29+DVDRip+XviD+DoNE+Release..divx | http://www.ninjavideo.net/video/27282 |
| 209.222.128.246 | Fantastic+Mr+Fox+%282009%29+DVDSCR+DONFDEAL+Release.divx | http://www.ninjavideo.net/video/52518 |
| 209.222.128.172 | It%27st Complicated+%282009%29+DVDSCR+XviD+xSCR+Release+%28Part+1%29.divx | http://www.ninjavideo.net/video/54635 |
| 174.140.157.36 | It%27t+Complicated+%282009%29+DVDSCR+XviD+xSCR+Release+%28Part+2%29.divx | http://www.ninjavideo.net/video/54636 |
| 174.140.156.81 | Sherlock+Holmes1%282009%29+DVDSCR+Mention+Release+%28Part+1%29.divx | http://www.ninjavideo.net/video/54039 |
| 174.140.128.27 | Sherlock+Holmes+%282009%29+DVDSCR+Mention+Release+%28Part+2%29.divx | http://www.ninjavideo.net/video/54040 |
| 66.117.43.41 | The+Princess+and+the+Frog1%282009%29+DVDSCREENER+XviD+MENTiON+Release.divx | http://www.ninjavideo.net/video/52411 |
| 174.140.129.47 | 2012+%282009%29+BDRip+XviD++tiMBT+Release+%28Part+1%29.divx | http://www.ninjavideo.net/video/48061 |
| 66.117.43.118 | 2012+%282009%29+BDRip+XviD++tiMB1+Release+%28Part+2%29.divx | http://www.ninjavideo.net/video/48062 |
| 69.5.93.58 | The1 Lovely+Bones+%282009%29+LIMITED+DVDSCR+XviD+FOXNEWS+Release+%28Part+1%29.divx | http://www.ninjavideo.net/video/54146 |
| 174.140.129.67 | The+Lovely+Bones+%282009%29+LIMITED+DVDSCR+XviD+FOXNEWS+Release+%28Part+2%29.divx | http://www.ninjavideo.net/video/54147 |
| 174.140.128.40 | The+Men+Who+Stare+at+Goats+%282009%29+R5+Line+XviD+Prism+Release+%28Part+1%29.divx | http://www.ninjavideo.net/video/52010 |
| 69.5.92.23 | The+Men1 Who+Stare+at+Goats1%282009%29+R5+Line+XviD+Prism+Release+%28Part+2%29.divx | http://www.ninjavideo.net/video/52012 |
| 69.5.92.54 | Legion1%282010%29+CAM+XviD+GM+Release.divx | http://www.ninjavideo.net/video/55902 |
| 69.5.93.29 | The+Book+of+Eli+TELESYNC1 XviD+MENTiON+Release.divx | http://www.ninjavideo.net/video/55773 |
| 69.5.92.51 | The+Wolfman+TELESYNC1 XviD+MOVIERUSH+Release.divx | http://www.ninjavideo.net/video/58267 |
| 69.5.93.34 | Valentines Day+TELESYNC1XviD1 MENTiON+Release.divx | http://www.ninjavideo.net/video/58204 |
| 174.140.128.57 | Green Zone+%282010%29+TS1XVID+%E2%80%93+IMAGiNE+Release+%28Part+1%29.divx | http://www.ninjavideo.net/video/60164 |
| 174.140.157.15 | Green+Zone+%282010%29+TS+XVID+%E2%80%93+IMAGiNE+Release+%28Part+2%29.divx | http://www.ninjavideo.net/video/60758 |
| 69.5.92.41 | How+To+Train+Your+Dragon+%282010%29+TS1XVID+IMAGiNE+Release.divx | http://www.ninjavideo.net/video/61892 |
| 174.140.157.58 | Shes+Out+Of+My+League+TS+XViD+IMAGiNE+Release1%28Part+1%29.divx | http://www.ninjavideo.net/video/60873 |
| 66.117.43.117 | Shes+Out+Of+My+League1TS+XViD+IMAGiNE+Release+%28Part+2%29.divx | http://www.ninjavideo.net/video/60874 |
| 209.222.128.204 | The1 Pack+Up+Plan+DVDSCR+XviD++BACKMEUP+Release.divx | http://www.ninjavideo.net/video/64459 |

| | | |
|---|---|---|
| 209.222.128.135 | Iron+Man+2+%28201107%29+CAM+XViD+-+fTDV+Release.divx | http://www.ninjavideo.net/video/65843 |
| 174.140.156.70 | A+Nightmare+On+Elm+Street+%28201107%29+CAM+XVID+-+TA+Release.divx | http://www.ninjavideo.net/video/65850 |
| 174.140.156.72 | Shrek+Forever+After+%28201107%29+CAM+XviD+-+PriaM+Release.divx | http://www.ninjavideo.net/video/67778 |
| 69.5.93.57 | Get+Him+To+The+Greek+%28201107%29+CAM+XviD+-+IMAGiNE+Release.divx | http://www.ninjavideo.net/video/65908 |
| 174.140.128.28 | Prince+of+Persia+The+Sands+of+Time+TS+XViD+-+f+LAWL3SS+Release+%28Part1%29.divx | http://www.ninjavideo.net/video/68202 |
| 174.140.156.56 | Prince+of+Persia+The+Sands+of+Time+TS+XViD+-+f+LAWL3SS+Release+%28Part2%29.divx | http://www.ninjavideo.net/video/68004 |
| 66.117.43.63 | Letters+To+Juliet+%28201107%29+CAM+XVID+-+HUBBY+Release.divx | http://www.ninjavideo.net/video/68268 |
| 174.140.129.41 | Robin+Hood+%28201107%29+CAM+XVID+-+IMAGINE+Release+%28Part+2%29.divx | http://www.ninjavideo.net/video/67040 |
| 174.140.156.78 | Hot+Tub+Time+Machine+%28201107%29+Unrated+DVDRip+XviD+-+DIAMOND+Release.divx | http://www.ninjavideo.net/video/69869 |
| 174.140.128.9 | Sex+and+the+City+2+CAM+XVID+-+IMAGINE+Release+%28Part+1%29.divx | http://www.ninjavideo.net/video/69329 |
| 174.140.129.45 | Sex+and+the+City+2+CAM+XVID+-+IMAGINE+Release+%28Part+2%29.divx | http://www.ninjavideo.net/video/69493 |
| 69.5.92.39 | Splice+%28201107%29+CAM+XviD+-+ZeT+Release.divx | http://www.ninjavideo.net/video/69532 |
| 209.222.128.162 | The+A+Team+%28201107%29+TS+V2+XViD+-+IMAGiNE+Release+%28Part+1%29.divx | http://www.ninjavideo.net/video/69403 |