IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) <br> ) <br> v. ) <br> ) <br> KIM DOTCOM, et al., ) <br> ) <br> Defendants ) <br> ) | The Honorable Liam O'Grady <br><br> Criminal No. 1:12-CR-3 |

**[PROPOSED] MOTION OF SPECIALLY APPEARING DEFENDANT
AND INTERESTED PARTY MEGAUPLOAD LIMITED TO UNSEAL SEARCH
<u>WARRANT MATERIALS</u>**

The recent unsealing of certain search warrant materials related to this case revealed a crucial omission the Government made in applying for the search warrants it used to seize Megaupload's domain names. Specifically, the Government's affidavits underpinning the seizure warrants omitted critical, exculpatory information regarding whether, why and how Megaupload knew it was hosting criminally infringing files identified in a June 24, 2010 search warrant. As set forth more fully in the concurrently filed [Proposed] Supplemental Brief of Specially Appearing Defendant and Interested Party Megaupload Limited Regarding Rule 41(g) Hearing, the Government's omission is directly relevant to the Rule 41(g) hearing to be scheduled and to interested third party Kyle Goodwin's ongoing efforts to have his property returned.

Specially appearing Defendant Megaupload Limited ("Megaupload") respectfully moves this Court to unseal the search and seizure warrant issued in Case No. 1:10-SW-320 on June 24, 2010, the application and affidavit in support of the warrant, the Government's motion to seal the search warrant pursuant to Local Rule 49(b), the order sealing the search warrant, and all other

related materials (the "June 24, 2010 Warrant Materials"), or in the alternative, to unseal the June 24, 2010 Warrant Materials with only minimal redactions.

On January 2, 2013, counsel for Megaupload contacted the Government and asked if it has any objections to the unsealing of the June 24, 2010 Warrant Materials.  Megaupload received no response from the Government prior to the instant filing.

## FACTUAL BACKGROUND

***The June 24, 2010 Warrant***:  On or about June 24, 2010, the Government applied for a warrant to search computer servers leased by Megaupload from Carpathia Hosting.  (*See* June 24, 2010 Warrant, Attachment A, Ex. 2)[1]  That application was approved by The Honorable Ivan D. Davis, U.S. Magistrate Judge, Eastern District of Virginia.  The warrant further authorized the Government to seize thirty-nine files identified in a schedule attached to the warrant.  (*See id.*)

The next day, on June 25, 2010, the Government sent the warrant and attachments to representatives of Carpathia Hosting who, at the Government's request, then forwarded the warrant and attachments to Megaupload by email.  (*See* June 25, 2010 email from Phil Hedlund to Mathias Ortmann and Kim Dotcom, Ex. 1.)  Mr. Hedlund's email explained that the warrant was a "sealed (meaning we cannot disclose to anybody) warrant with an exception to disclose to you."  (*Id.*)  His email further requested that, "[b]ecause of the Government's seal on the warrant," Megaupload coordinate any efforts to comply with the warrant with a specific Carpathia representative who was in the know, without publicly opening a ticket as it normally would.  (*Id.*)  This account was reinforced by the sealing order accompanying the email, which sealed the warrant and accompanying materials, and authorized release solely by the

---

[1] All exhibits cited to herein refer to the exhibits attached to the concurrently filed [Proposed] Supplemental Brief of Specially Appearing Defendant and Interested Party Megaupload Limited Regarding Rule 41(g) Hearing.

Government to Carpathia and, through Carpathia, to Megaupload. (June 24, 2010 Order to Seal Signed by Magistrate Judge Davis, Ex. 2.) And Mr. Hedlund's email further reported "relay[ing] to the Government Mega's willingness to work with the Government for these types of requests—just as we discussed during the last day of our visit," and requested that Megaupload "please confirm as soon as possible that Mega will assist in collecting and providing this information," so that Carpathia could "communicate that to the Government." (*Id.*)

Unbeknownst to Megaupload, however, it was already a target of a criminal investigation, presumably the very same investigation. (*See e.g.* Warrant 1:12-sw-34, Dkt. 145-1 at 6-7 ¶ 7 ("In March 2010 [redacted] initiated an investigation of a worldwide criminal organization known as the 'Mega Conspiracy' . . . DEFENDANTS and others are members of the Mega Conspiracy.").) Thus, it now appears that the Government was seeking cooperation and information from Megaupload in June 2010 without informing Megaupload that it was an investigatory target. Notably, the Government avoided communicating with Megaupload directly, instead deputizing Carpathia to do so on its behalf. (*See* June 25, 2010 email from Phil Hedlund to Mathias Ortmann and Kim Dotcom, Ex. 1 ("Please know that we attempted to convince the Government to work directly with Mega on this matter, but given the complex jurisdictional issues, they have been unwilling.").) Far from warning Megaupload that the Government considered it to be part of a worldwide criminal organization, which the Government even at the time was terming the "Mega Conspiracy," the Government, through its anointed agent Carpathia, represented to Megaupload that "[w]e have no reason to believe the [sic] MegaUpload is the target of the investigation." (*Id.*)

Megaupload cooperated with the Government and voluntarily arranged with Carpathia to supply the Government with the files identified in the sealed warrant. In accordance with the

- 3 -

Government's express admonitions—as conveyed to Megaupload through the sealing order and Carpathia's instructions—Megaupload avoided signaling that anything was afoot or otherwise compromising the investigation, preserving the files in their original condition without alerting users or the public that anything had changed.  At no time did the Government or Carpathia indicate that Megaupload could or should remove the files identified in the warrant from its cloud storage platform without compromising the stated secrecy of the investigation, much less did they suggest that Megaupload was legally obliged to do so lest it be complicit in an ongoing criminal conspiracy.

Indeed, the Government's message to Megaupload was precisely to the contrary—Megaupload was to take *no* action that could disclose the existence of the investigation.  And Megaupload dutifully complied, doing precisely what the Government requested of it, *i.e.*, collect and provide the evidence concerning the infringing files, without taking any additional steps that might compromise the investigation.  The Government would subsequently use Megaupload's cooperation with the Government's instruction as the sole direct evidence of Megaupload's purported criminal intent; the Government did so specifically in support of the search warrants it executed against Megaupload and the individual defendants in January 2012.  The Government's representation squared neither with the facts well known to it nor with its constitutional obligation to disclose exculpatory evidence in its possession.  *See, e.g.*, *Brady v. Maryland*, 373 U.S. 83 (1963).

**The January, 2012 Warrants**:  More than one year after it had successfully enlisted Megaupload's assistance in retrieving copies of allegedly infringing files from its cloud storage service, the Government seized upon Megaupload's cooperation as a core basis for criminal punishment.   The Government came before this Court on January 13, 2012, *ex parte*,

representing that its June 24, 2010 warrant had vested Megaupload with criminal *mens rea*. (*See*, *e.g.*, Affidavit in Support of Warrant 1:12-sw-34, Dkt. 145-1 at 11 ¶ 17.) In at least five different warrants, the Government represented that, "[o]n or about June 24, 2010, members of the Mega Conspiracy were informed, pursuant to a criminal search warrant from the U.S. District Court for the Eastern District of Virginia, that thirty-nine infringing copies of copyrighted motion pictures were present on their leased servers at Carpathia Hosting, a hosting company headquartered in the Eastern District of Virginia," and that "[a]s of November 18, 2011, thirty-six of the thirty-nine infringing copies of copyrighted motion pictures were still being stored on servers controlled by the Mega Conspiracy," after it was informed of the infringing content. (*See* Dkt. 145-1 at 11, 38, 61, 84, 105-106.) This single paragraph supplied the only direct, corroborated evidence of knowledge purportedly supporting each of the five warrants.

On February 16, 2012, a Grand Jury returned a superseding indictment against Megaupload and its co-defendants (Dkt. 34) in connection with the instant case, which was filed in open court that same day. Like the affidavits underpinning the domain seizure warrants, the Superseding Indictment directly references the June 24, 2010 warrant as evidence of Megaupload's criminal *mens rea*. (*Id*. at ¶ 73(hhhh)).

Nowhere did the Government tell this Court that its June 24, 2010 warrant had been calculated to enlist good-faith cooperation with a criminal investigation, while preserving the secrecy thereof. Nowhere did the Government tell this Court that the Government had sought Megaupload's voluntary assistance in executing the warrant. Nowhere did the Government tell this Court that Carpathia had assured Megaupload, in the interests of its requested cooperation, that there was no basis to believe that Megaupload was a target. Nowhere did the Government tell this Court that Megaupload had in fact cooperated precisely as requested. Most importantly

and most troublingly, nowhere did the Government tell this Court that Megaupload had been informed by Carpathia, acting on behalf of the Government and heeding the Government's insistence upon sealing, that the secrecy of the warrant and the Government's investigation must be preserved to avoid destruction of evidence and notification of the targeted users. Nor did the Government inform this Court that the sealing order it had obtained and furnished Carpathia to provide to Megaupload likewise required secrecy. In sum, nowhere did the Government tell this Court that Megaupload had done exactly what the Government had asked it to do—execute a search warrant without alerting the ostensible targets to the existence of an investigation. The Government's contention to this Court that Megaupload's preservation of the status quo was evidence of criminal intent is false, and deliberately so.

*__Rule 41(g) and Warrant-Related Filings__*: On May 25, 2012, interested party Kyle Goodwin filed his Motion for Return of Property pursuant to Federal Rule of Criminal Procedure 41(g), seeking the return of data stored using Megaupload's cloud storage service. (Dkt. 90.) The Government opposed that motion on June 8, 2012. (Dkt. 99.) Following briefing, oral argument, and efforts at negotiated resolution of the motion, the Court issued an Order on October 2, 2012, indicating that "it is unable to reach a conclusion as to this matter without an evidentiary hearing." (*See* Dkt. 126.) The Court instructed that the hearing "shall be limited to argument and evidence concerning the applicability of Federal Rule of Criminal Procedure 41(g)" and ordered Mr. Goodwin and the Government to file briefs addressing the suggested format and breadth of this hearing. (*See id.*)

On October 30, 2012, the undersigned filed a motion to enter a special and limited appearance on behalf of Defendant and interested party Megaupload Limited for the purpose of filing a brief weighing in as to the suggested format and breadth of a Rule 41(g) hearing,

attaching a proposed brief. (Dkt. 133.) At that time, the warrant materials related to this case had not been unsealed. On November 20, 2012, the Court granted the undersigned's motion to enter a special and limited appearance, whereupon Megaupload's brief regarding a Rule 41(g) hearing was deemed filed *nunc pro tunc* as of October 30, 2012. (Dkt. 148.)

Earlier, on October 22, 2012, Mr. Goodwin had filed a motion to unseal search warrant materials. (Dkt. 131.) As grounds for unsealing the search warrant materials, Mr. Goodwin alerted this Court to numerous deficiencies that have been identified in warrants that were executed in New Zealand at the behest of the U.S. government. (*Id*. at 3-5.) Mr. Goodwin argued that, "[a]s part of any hearing under Rule 41(g), Mr. Goodwin will need to investigate the government's actions surrounding the searches and seizures that occurred here." (*Id*. at 7.) The Court granted that motion in part on November 15, 2012, and redacted copies of Warrants 1:12-sw-34, 1:12-sw-35, 1:12-sw-36, 1:12-sw-37 and 1:12-sw-40 were then made public. (Dkt. 145, 145-1.)

## DISCUSSION

### A. The Common Law Right of Access Establishes A Presumption In Favor Of Access To Judicial Records And Documents.

The public has a common law right of access to judicial documents. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589 (1978). The Fourth Circuit has held that warrant affidavits fall squarely within this definition. *Balt. Sun Co. v. Goetz*, 886. F.2d 60, 64-65 (4th Cir. 1989). The public's interest in access is magnified in criminal proceedings because of "legitimate concerns about methods and techniques of police investigation." *Wash. Post Co. v. Hughes (In re Application & Affidavit for a Search Warrant)*, 923 F.2d 324, 330-31 (4th Cir. 1991). Such openness increases the likelihood that the warrants issued for seizures of digital third-party data

are not overbroad, *Nixon*, 435 U.S. at 598, which is particularly important in cases about cloud computing, where the norms for the scope of seizures are still developing.

The common law right of access establishes a presumption in favor of access to judicial records and documents.  *See Nixon*, 435 U.S. at 602.  Once the presumption attaches, as it does here, a court must "weigh[] the interests advanced by the parties in light of the public interest and the duty of the courts" to determine whether the documents should be sealed.  *Id*.  The government bears the burden of "showing some significant interest that outweighs the presumption" of access, and, to rebut the presumption, must demonstrate that "countervailing interests heavily outweigh the public interests in access." *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004) (internal quotations omitted).  The government cannot keep warrant materials sealed only on a claim of a general need for secrecy concerning ongoing criminal investigations and law enforcement methods.  *See id.* at 579 (it is not enough to assert a government interest in investigative integrity "without providing specific underlying reasons" why it reasonably could be affected by the release of information); *see also Balt. Sun*, 886 F.2d at 65-66 (sealing of search warrant affidavits must be justified by more than the mere conclusion that the government's investigation interest outweighs the media's interest in access).

      **B.**    **The June 24, 2010 Warrant Materials Are Directly Relevant to the Rule 41(g) Hearing to be Scheduled and to Mr. Goodwin's Efforts to Retrieve His Property.**

In asking this Court to unseal certain search warrant materials related to this case, Mr. Goodwin noted that such materials "will not only be relevant to any Rule 41(g) inquiry, but will likely include evidence Mr. Goodwin will present as part of his ongoing efforts to have his property returned." (*See* Dkt. 131.)  The June 24, 2010 Warrant Materials are likewise directly relevant to the Rule 41(g) hearing and to Mr. Goodwin's effort to retrieve his property because,

as explained in the concurrently filed [Proposed] Supplemental Brief of Specially Appearing Defendant and Interested Party Megaupload Regarding Rule 41(g) Hearing, they potentially illuminate issues regarding the legality of the domain name seizure that resulted in the forfeiture of Kyle Goodwin's property. The warrants that the Court ordered unsealed on November 7, 2012 make clear that the Government withheld critical information from its supporting affidavits, but the nature and extent of that withholding cannot be fully understood without reference to specific excerpts in the June 24, 2010 Warrant Materials. Mr. Goodwin is entitled to explore the Government's omission to challenge the legality of the seizure, and the June 24, 2010 Warrant Materials are directly relevant to that inquiry.

### C. The June 24, 2010 Warrant Materials Are a Matter of Public Concern.

As articulated by Mr. Goodwin in his motion to unseal, the public has a strong interest in understanding and evaluating the government process in executing search warrants on cloud computing servers that contain innocent third-party property, which are used frequently in criminal copyright enforcement actions. (*See* Dkt. 131.) The public also has a significant interest in ensuring that individuals' constitutional rights are not unnecessarily infringed. *See, e.g.*, *Legend Night Club v. Miller*, 637 F.3d 291, 303 (4th Cir. 2011) ("upholding constitutional rights is in the public interest"). Thus, the public interest in protecting the constitutional rights of both Mr. Goodwin and the likely millions of other innocent users of Megaupload whose property was seized along with his militates in favor of unsealing.

### D. The Government No Longer Has an Interested in Keeping the Warrant or Sealing Materials Under Seal.

The government cannot meet the burden for continued justification for sealing. Indeed, the June 24, 2010 warrant was directly referenced in the Superseding Indictment (Dkt. 34 at ¶ 73(hhhh)) and in the affidavits underlying the now-unsealed domain seizure warrants (*See* Dkt.

145-1 at Dkt. 145-1 at 11, 38, 61, 84, 105-106).  Further, the June 24, 2010 Warrant Materials were also published online.  *See* www.wired.com/images_blogs/threatlevel/2013/12/Carpathia-search-warrant.pdf.  Thus, the government cannot claim that the materials must be sealed to remain secret.  Any legitimate government interests that may exist can be accommodated through redactions.  *See Stone v. Univ. of Md. Med. Syst. Corp.*, 855 F.2d 178, 181 (4th Cir. 1988); *see also United States v. Moussaoui*, 65 F. App'x 881, 889 (4th Cir. 2003) ("[S]ealing an entire document is inappropriate when selective redaction will adequately protect the interests involved."); *Balt. Sun*, 886 F.2d at 66 (the court must consider alternatives to sealing, such as partial disclosure or redactions).

## IV.  CONCLUSION

Because the government does not have a compelling interest in keeping the June 24, 2010 Warrant Materials under seal and cannot demonstrate that any interest heavily outweighs the public's and Mr. Goodwin's right of access, the materials should be unsealed, made part of the public record, and made available for Mr. Goodwin's use at the Rule 41(g) hearing.  For the reasons set forth above, Megaupload respectfully requests that this Court unseal the search and seizure warrant issued in Case No. 1:10-SW-320 on June 24, 2010, the application and affidavit in support of the warrant, the Government's motion to seal the search warrant pursuant to Local Rule 49(b), the order sealing the search warrant, and all other related materials, or, in the alternative, unseal such materials with only minimal redactions.

Respectfully submitted,

Ira P. Rothken
ROTHKEN LAW FIRM
3 Hamilton Landing
Suite 280
Novato, CA 94949
(415) 924-4250
(415) 924-2905 (fax)
ira@techfirm.net

___/s/ Heather H.  Martin_____
William A. Burck
Derek L. Shaffer
Heather H. Martin (VSB # 65694)
QUINN EMANUEL URQUHART &
SULLIVAN LLP
1299 Pennsylvania Avenue N.W., Suite 825
Washington, D.C. 20004
(202) 538-8000
(202) 538-8100 (fax)
williamburck@quinnemanuel.com
derekshaffer@quinnemanuel.com
heathermartin@quinnemanuel.com


Carey R. Ramos
Robert L. Raskopf
Andrew H. Schapiro
QUINN EMANUEL URQUHART &
SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, N.Y.  10010
(212) 849-7000
(212) 849-7100
careyramos@quinnemanuel.com
robertraskopf@quinnemanuel.com
andrewschapiro@quinnemanuel.com

*Counsel for Defendant Megaupload Limited*

## CERTIFICATE OF SERVICE

I hereby certify that on January 2, 2013, the foregoing **[PROPOSED] MOTION OF SPECIALLY APPEARING DEFENDANT AND INTERESTED PARTY MEGAUPLOAD LIMITED TO UNSEAL SEARCH WARRANT MATERIALS** was filed and served electronically by the Court's CM/ECF system upon all registered users.

  /s/ Heather H. Martin
Heather H. Martin (VSB # 65694)
QUINN EMANUEL URQUHART & SULLIVAN LLP
1299 Pennsylvania Avenue N.W., Suite 825
Washington, D.C. 20004
(202) 538-8000
(202) 538-8100 (fax)
heathermartin@quinnemanuel.com