IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | The Honorable Liam O'Grady |
| | ) | |
| KIM DOTCOM, et al., | ) | |
| | ) | Criminal No. 1:12-CR-3 |
| Defendants | ) | |
| | ) | |

**REBUTTAL OF SPECIALLY APPEARING DEFENDANT AND INTERESTED PARTY MEGAUPLOAD LIMITED IN SUPPORT OF ITS MOTION FOR LEAVE TO FILE A <u>SUPPLEMENTAL BRIEF REGARDING RULE 41(G) HEARING</u>**

On January 2, 2013, Megaupload Limited ("Megaupload") sought leave (Dkt. 153) to file two proposed briefs: (i) a supplemental brief regarding the Rule 41(g) hearing contemplated by the Court (Dkt. 153-2), and (ii) a motion to unseal certain search-warrant materials that Megaupload quoted in its proposed supplemental brief (Dkt. 153-3). At that time, Megaupload believed in good faith that the search-warrant materials from which it quoted were only partially unsealed. A diligent search of PACER revealed no indication that the warrants had been fully unsealed. When Megaupload's counsel inquired of the Government on January 2, 2013 whether the Government objected to the unsealing of those materials, the Government responded: "I have asked our folks working on the 41(g) stuff to look into it." The Government did not inform counsel that the materials were already unsealed; indeed, the email exchange suggested that the Government, like Megaupload, believed the materials remained under seal. Thus, out of an abundance of caution, Megaupload filed its proposed brief under seal while simultaneously moving to unseal the search-warrant materials. Now apprised that any such request is moot because the warrant has already been unsealed, Megaupload will of course move to withdraw its

proposed motion to unseal and request that the clerk simply substitute the unredacted version of the proposed supplemental brief on the public docket.

Turning to the merits of Megaupload's application to file a supplemental brief regarding the Rule 41(g) hearing, the Government challenges the application, including the merits of the proposed supplemental brief.  Yet nowhere does the Government come to grips with or explain the critical revelation that drives Megaupload's supplement—namely, that the Government, when it came before this Court to claim probable cause for its 2012 application at issue, mischaracterized Megaupload as having evinced criminal *mens rea* by failing to remove files the Government had identified as infringing in a 2010 warrant, without apprising this Court that Megupload had in fact been *cooperating* with what was, as Megaupload was told at the Government's instruction, a *secret*, ongoing criminal investigation to which the targets (supposedly *not* Megaupload) must not be alerted.  More specifically, the Government does not deny that:

- it knew but did not apprise the Court that Megaupload had learned of the allegedly infringing files while voluntarily cooperating with the Government in its separate investigation;

- it knew but did not tell Megaupload that Megaupload, itself, was an investigatory target at the time;

- the Government had tasked Carpathia Hosting ("Carpathia") with instructing Megaupload to maintain the secrecy of the investigation;

- the Order sealing the June 24, 2010 warrant similarly indicated the need, per the Government's insistence, to avoid tipping off investigatory targets; and

- Megaupload did precisely what it was asked to do, namely collect and provide evidence to the Government and do so without tipping off the identified targets of the investigation.

In sum, the Government misled the Court into believing that Megaupload's failure to block access to the files was a result of its willful indifference to the allegedly criminal material they

contained. The truth, as demonstrated by the documentary record undisputed by the Government, is that Megaupload acted under a reasonable understanding that it was expected by the Government and the Magistrate Court that issued the sealing orders (at the Government's request) to preserve the files identified in the June 2010 warrant without disturbing them or taking any other action that could compromise the secrecy of the investigation with which it was cooperating. No doubt, the Government may have charged Megaupload with obstructing a federal investigation, either as a principal under 18 U.S.C. 2 or as an accessory after the fact under 18 U.S.C. 3, had it done anything to disturb the *status quo* and thereby tip off the targets of the investigation.

Against the stunning backdrop of the above concessions, the Government's arguments amount to little more than distractions:

First, the Government once again challenges Megaupload's ability to file motions while maintaining jurisdictional defenses. This argument is now moot, as the Court has granted Megaupload's requested leave and deemed Megaupload's supplemental brief to be filed *nunc pro tunc* as of January 2, 2013. (*See* Dkt. 156.)

Second, the Government frames Megaupload's motion as an effort to "to join a third-party's civil action in equity against the United States," in order to "seek a remedy available only to criminal defendants"—namely, suppression of evidence. Neither characterization is accurate. Kyle Goodwin's motion for return of property was not filed as a separate civil action, but instead as part of the instant criminal proceeding against Megaupload. (*See* Dkt. 90.) Megaupload has a direct interest in that hearing—both because it is best situated to locate, access, and retrieve the data at issue in an expeditious, cost-efficient manner, and also because issues of data preservation and consumer access are inextricably bound up with Megaupload's criminal defense

and attendant entitlement to due process. Megaupload seeks only to be heard at that hearing. And, far from attempting to suppress any evidence, Megaupload is simply alerting the Court to critical evidence that has recently come to light. Considering that this Court has ordered briefing and hearing "concerning the applicability of Federal Rule of Criminal Procedure 41(g)" (Dkt. 126), and Rule 41(g) calls for inquiry into whether the search and seizure of the property at issue was or was not "unlawful," it is difficult to understand how arguments against the lawfulness of the underlying warrants could be out of place at this point.

Third, the Government attempts to distance itself from what Megaupload was told about the 2010 warrant by emphasizing that it did not *directly* instruct Megaupload to preserve the allegedly infringing files. (Dkt. 155 at 3.) But it is well settled that a private party's actions are imputed to the Government when that party is enlisted by the Government and acts in accordance with the Government's instructions. Thus, courts confronting criminal searches and seizures have consistently found Fourth Amendment interests implicated where a private party acts as the Government's "instrument or agent." *See Skinner v. Railway Labor Executives' Ass'n,* 489 U.S. 602, 614 (1989); *United States v. Richardson*, 607 F.3d 357, 364 (4th Cir. 2010). As the Fourth Circuit has indicated, "the key factors bearing upon the question of whether a search by a private person constitutes a Government search are: '(1) whether the Government knew of and acquiesced in the private search; and (2) whether the private individual intended to assist law enforcement or had some other independent motivation.'" *Richardson*, 607 F.3d at 364 (quoting *United States v. Jarrett*, 338 F.3d 339, 344 (4th Cir. 2003)).

Here, Carpathia's communications with Megaupload satisfy both prongs. The Government not only knew of Carpathia's actions but orchestrated them. Indeed, the Government's affidavit in support of the June 24, 2010 search warrant expressly requested that

"Carpathia and its customer MegaUpload be permitted to view the warrant and Attachments A and B to the warrant to assist them in executing the warrant." (*See* Affidavit in Support of June 24, 2010 Search Warrant, ¶ 32, attached as Exhibit A.)  Correspondingly, the Order sealing that warrant, which "found that revealing the material sought to be sealed would jeopardize an ongoing criminal investigation," authorized the Government to provide the warrant only to Carpathia, and authorized Carpathia to "provide a copy of the warrant with attachments and this sealing order to MegaUpload." (Order to Seal, 1:10 SW 320 (June 24, 2010) attached as Exhibit 2 to Dkt. 153-2.)  In conveying the instructions to Megaupload, Carpathia noted that it had "attempted to convince the Government to work directly with Mega on this matter, but given the complex jurisdictional issues, they have been unwilling." (*See* June 25, 2010 email from Phil Hedlund to Mathias Ortmann and Kim Dotcom attached as Exhibit 1 to Dkt. 153-2.)  It is equally clear that Carpathia's sole purpose in communicating with Megaupload on that date was to assist the Government in executing the June 24, 2010 warrant.

Even if the Government could somehow avoid responsibility for Carpathia's instructions and the Magistrate Court's sealing order, there would remain the undeniable fact that the Government failed to inform this Court of critical, exculpatory information about the circumstances under which Megaupload learned of the allegedly infringing files and subsequently cooperated with the Government's investigation. *See United States v. Leon*, 468 U.S. 897, 926 (1984) (material omissions that render search warrants misleading can be grounds for invalidating warrants); *Franks. v. Delaware*, 438 U.S. 154 (1978); *United States v. Colkley*, 899 F.2d 297, 300 (1990).  Megaupload submits that omission of those facts bears directly on the lawfulness of the searches and seizures in issue. *See United States v. Comprehensive Drug Testing, Inc.*, 513 F.3d 1085, 1105 (9th Cir. 2008) ("C*omprehensive Drug Testing I*"), opinion

revised and superseded in part by 621 F.3d 1162 (9th Cir. 2010 ("*Comprehensive Drug Testing II*") (a court may order return of property pursuant to Rule 41(g) on the basis that the warrants authorizing seizure of the property were invalid); *see also* Fed. R. Crim P. 41(g) (a "person aggrieved by an unlawful search and seizure of property" may move for relief).

Fourth, the Government similarly attempts to distance the June 24, 2010 warrant from these proceedings[1] by arguing that no reference to that warrant appears in the 2012 warrant authorizing search of Carpathia's physical premises and the seizure of "records" contained on those servers. (*See* Redacted Search Warrant, No. 1:12-SW-41, Dkt. 145-1.) But the Government's attempt to shift attention to the warrant authorizing search of the physical premises should not distract—that particular warrant is largely if not completely beside the point to the 41(g) proceedings instituted by Mr. Goodwin. The Government's physical entry into Carpathia's warehouse and imaging of the servers leased by Megaupload—after which the Government disclaimed accessing or possessing those servers (*see* Letter from Jay V. Prabhu dated January 27, 2012, Dkt. 32)—did not deprive Mr. Goodwin of his property. Rather, Mr. Goodwin's property was rendered inaccessible specifically when the Government seized Megaupload's various domain names, thereby taking down the website. Those seizures of the domain names were the subject of five separate warrants, every one of which contained the problematic representations that: "On or about June 24, 2010, members of the Mega Conspiracy were informed, pursuant to a criminal search warrant from the U.S. District Court for the Eastern District of Virginia, that thirty-nine infringing copies of copyrighted motion pictures were

---

[1] The Government at one point casts Megaupload's proposed supplemental brief as challenging the 2010 warrant, which "was issued as part of a separate investigation, targeting separate defendants." (Dkt. 155 at 2-3.) In fact, Megaupload discusses the 2010 warrant simply because the Government itself relied upon that warrant for the 2012 warrants, search and seizure that are the subject of the 41(g) proceedings.

present on their leased servers at Carpathia Hosting, a hosting company headquartered in the Eastern District of Virginia"; and "As of November 18, 2011, thirty-six of the thirty-nine infringing copies of copyrighted motion pictures were still being stored on servers controlled by the Mega Conspiracy," after it was informed of the infringing content. (*See* Dkt. 145-1 at 11, 38, 61, 84, 105-106.) What is more, the snippet about the June 24, 2010 warrant also appears in the Superseding Indictment, which is the instrument ultimately responsible for the prosecution, asset freezes and domain seizures that continue to preclude Mr. Goodwin from accessing his data. (Dkt. 34 ¶ 26.)

Fifth (and finally), the Government maintains that it recited other, independent support for the proposition that Megaupload had criminal knowledge of infringing content; in this regard, the Government cites paragraphs appearing in the warrant for search of the physical premises. (Dkt. 155 at 3 (citing Redacted Affidavit in Support of Search Warrant, No. 1:12 SW 41 ¶¶ 13, 15-17 (Jan. 18, 2012).) Those paragraphs describe how third-parties uploaded content onto Megaupload.com (*id*. ¶ 13), certain organizational features of the megavideo.com website (*id*. ¶ 15), the delivery of takedown notices at megaupload.com email addresses (*id*. ¶ 16), and delivery of takedown notices through URL links (*id*. ¶ 17). Yet none of those paragraphs points to the type of direct knowledge by Megaupload that the snippet about the June 24, 2010 warrant does. Even when read in combination, they are weak, uncorroborated and conclusory.[2]

Again, the knowledge supplied by the June 24, 2010 warrant is the *only* direct, corroborated evidence of knowledge that the Government recited in *any* of the warrants it executed in connection with this case. Because Megaupload's alleged *mens rea* underlay the

---

[2] Although the Government does not even address the warrants that actually deprived Mr. Goodwin of his property by authorizing seizure of the domain names, the corresponding paragraphs in those warrants are similarly lacking. (*See*, *e.g.*, Dkt. 145-1 at 9-10, 36-38, 59-61, 82-84, 104-106.)

Government's claim of probable cause for the sweeping searches and seizures that ensnared the property of innocent users such as Mr. Goodwin, the Government's recited bases for that *mens rea* fall squarely within the purview of any Rule 41(g) hearing.

Respectfully submitted,

\_\_\_/s/ Heather H. Martin_____
William A. Burck
Derek L. Shaffer
Heather H. Martin (VSB # 65694)
QUINN EMANUEL URQUHART &
SULLIVAN LLP
1299 Pennsylvania Avenue N.W., Suite 825
Washington, D.C. 20004
(202) 538-8000
(202) 538-8100 (fax)
williamburck@quinnemanuel.com
derekshaffer@quinnemanuel.com
heathermartin@quinnemanuel.com

Ira P. Rothken
ROTHKEN LAW FIRM
3 Hamilton Landing
Suite 280
Novato, CA 94949
(415) 924-4250
(415) 924-2905 (fax)
ira@techfirm.net

Carey R. Ramos
Robert L. Raskopf
Andrew H. Schapiro
QUINN EMANUEL URQUHART &
SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, N.Y. 10010
(212) 849-7000
(212) 849-7100
careyramos@quinnemanuel.com
robertraskopf@quinnemanuel.com
andrewschapiro@quinnemanuel.com

*Counsel for Defendant Megaupload Limited*

## CERTIFICATE OF SERVICE

I hereby certify that on January 15, 2013, the foregoing **REBUTTAL OF SPECIALLY APPEARING DEFENDANT AND INTERESTED PARTY MEGAUPLOAD LIMITED IN SUPPORT OF ITS MOTION FOR LEAVE TO FILE A SUPPLEMENTAL BRIEF REGARDING RULE 41(G) HEARING** was filed and served electronically by the Court's CM/ECF system upon all registered users.

    /s/ Heather H. Martin_____
Heather H. Martin (VSB # 65694)
QUINN EMANUEL URQUHART &
SULLIVAN LLP
1299 Pennsylvania Avenue N.W., Suite 825
Washington, D.C. 20004
(202) 538-8000
(202) 538-8100 (fax)
heathermartin@quinnemanuel.com