IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 1:12CR3 |
| | ) | |
| KIM DOTCOM, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT MEGAUPLOAD LIMITED'S
REQUEST FOR DISMISSAL OF THE INDICTMENT WITHOUT PREJUDICE**

Defendant Megaupload Limited ("Megaupload") is asking this Court yet again to take the
unprecedented step of dismissing the charges against it because the company, though it has actual
notice of these criminal proceedings, has not yet been formally served with a copy of the
Superseding Indictment.[1] This Court has already concluded — when it rejected Megaupload's
last request for dismissal — that "[i]t is doubtful that Congress would stamp with approval a
procedural rule permitting a foreign corporate defendant to intentionally violate the laws of this
country, yet evade the jurisdiction of the United States' courts by purposefully failing to establish
an address here." Order at 2 (Oct. 5, 2012) (Dkt. 127).  Two grand juries have found probable
cause that Defendant Megaupload Limited violated the laws of this country, and yet the company
continues to evade the jurisdiction of this Court by refusing to submit to its authority and instead
seeks to exploit alleged ambiguities in procedural rules.

---

[1] *See* Renewal of Specially Appearing Defendant Megaupload Limited's Request for
Dismissal of the Indictment Without Prejudice (Nov. 19, 2012) (Dkt. 146) & Memorandum of
Law in Support of Renewal of Specially Appearing Defendant Megaupload Limited's Request
for Dismissal of the Indictment Without Prejudice (Nov. 19, 2012) (Dkt. 147) (collectively,
"Motion to Dismiss Without Prejudice"). The motion is limited to Defendant Megaupload
Limited and does not apply to any of the other defendants charged in this case.

This Court should deny the request and find that procedural due process has been satisfied for at least three reasons. *First*, this Court has personal jurisdiction over Defendant Megaupload and has already found that the government will be in a position to validly serve the company with a summons through the individual codefendants, who are officers and agents of the company, after they arrive in the United States following extradition. Alternatively, in July of last year, the government asked the Court to issue a criminal summons in the event that it believed there was a procedural issue with the government's stated plan of service. *Second*, any balancing of prejudices weighs heavily in the government's favor because, among other reasons, even a "temporary dismissal" will cause at least Count Eight, for which the statute of limitations has already passed, to become time-barred, and the defendant cannot show that it has been prejudiced by the significant delays caused by its own officers and agents. *Third*, the government's vigorous diligence in seeking to extradite the individual defendants precludes any recourse to Federal Rule of Criminal Procedure 48(b).

This Court has already recognized that "Rule 4 does not require a result so extreme as dismissal, and to this Court's knowledge, no court has ever dismissed an indictment for failure to meet Rule 4's secondary mailing requirement." Order at 1. For these reasons, the United States respectfully requests that the Court deny Defendant Megaupload's motion, and because both parties agree that oral argument is unnecessary, the United States further requests that the Court decide the motion on the papers and without an oral hearing, pursuant to Local Criminal Rule 47(J).[2]

---

[2] Local Criminal Rule 47(J) provides: "Determination of Motions Without Oral Hearing: The Court may rule upon motions without an oral hearing."

## I.  ARGUMENT

**A.**      **This Court has personal jurisdiction over Defendant Megaupload, and the company can and will be served in accordance with Rule 4.**

This Court has personal jurisdiction over Defendant Megaupload, a company who, as alleged in the Superseding Indictment ("Indictment"), maintained a continuous business presence in the United States and the Eastern District of Virginia for more than six years, during which the company earned millions of dollars in criminal proceeds at the expense of copyright victims. With respect to the service requirement of Federal Rule of Criminal Procedure 4, the United States will be in a position to serve Defendant Megaupload with a summons through the individual codefendants, who are officers and agents of the organization, after they arrive in the United States following extradition.  At that time, the United States can satisfy Rule 4's separate mailing provision by sending a copy of the summons to the defendants, who acted as alter egos of the company.  This Court has already recognized that "the government may be able to prove that at least one of the individually named defendants is an alter ego of the corporate parent[,]" and that if successfully proven, then "the corporation's last known address within this district will be the address of the individual defendant, once extradited." Order at 4–5. The United States has been diligently pursuing this valid course of service since the original indictment was returned in January of 2012.

As it indicated on July 13, 2012, the United States can also satisfy Rule 4's mailing provision by sending a copy of the summons to Defendant Megaupload's constructive address in the United States at the Commonwealth of Virginia's State Corporation Commission, pursuant to Virginia Code §§ 13.1-601–792; or to the address of Defendant Megaupload's last known Chief Executive Officers, David Robb and Kasseem David Dean (also known as Swizz Beatz); or to

the Carpathia datacenter where Defendant Megaupload maintained its U.S.-based nerve center.[3]

In its filing, the United States offered to pursue any of these methods if the Court concluded that

that the procedural rules required that service be accomplished before the individual defendants

were extradited and asked the Court to issue a summons if it made that finding. *See* Opposition

of the United States to Motion of Specially Appearing Defendant Megaupload Limited to

Dismiss Indictment for Lack of Personal Jurisdiction at 20 (July 13, 2012) (Dkt. 117).  If

necessary, the government would pursue these other service methods, even though the plain

language of Federal Rule of Criminal Procedure 4 imposes no deadline on service in a criminal

case, and Rule 9 does not indicate when a summons must be requested by the government or

when a summons must issue after a request is made.  Under these circumstances, it would be

improper to dismiss the charges against the corporate defendant for a failure of procedural due

process (even temporarily), and defense counsel has failed to identify any authority justifying

such action.  Neither the facts, the law, nor common sense and the interests of justice, which the

Federal Rules of Criminal Procedure are designed to serve, support as extreme a remedy as that

sought by defense counsel.

**B.      Any balancing of prejudices weighs heavily in the government's favor.**

    **1.      At least Count Eight of the Superseding Indictment will be time-barred if
the Superseding Indictment is temporarily dismissed.**

Not only is the defendant's request for temporary dismissal without any merit here, it

would significantly prejudice the government in a meritorious case.  First, without a valid

---

[3] The United States has described these proposed methods of service in more detail in previous
pleadings. *See, e.g.*, Opposition of the United States to the Motion of Quinn Emanuel Urquhart
& Sullivan LLP and The Rothken Firm for Leave to Enter Limited and Special Appearances on
Behalf of Megaupload Limited (Oct. 24, 2012) (Dkt. 132); Opposition of the United States to
Motion of Specially Appearing Defendant Megaupload Limited to Dismiss Indictment for Lack
of Personal Jurisdiction (July 13, 2012) (Dkt. 117).

pending indictment tolling the applicable statutes of limitations in this matter, various allegations in the Indictment may be unfairly time-barred upon re-indictment. *See, e.g.*, *United States v. Snowden*, 770 F.2d 393, 398 (4th Cir. 1985) (concluding that changes in a superseding indictment relate back to the date of the original indictment unless the changes are not "trivial or innocuous"); *United States v. Ben Zvi*, 242 F.3d 89, 98 (2d Cir. 2001) (recognizing that a superseding indictment that relates back to and supplants a timely-filed indictment "continues its predecessor's tolling of the statute of limitations and inherits its predecessor's timeliness"); *United States v. Crawford*, 60 Fed. Appx. 520, 530 (6th Cir. 2003) (not precedential) (holding where an indictment has tolled the statute of limitations, a superseding indictment that "relates back" to the previous indictment will not be barred by the statute of limitations if it is brought at a time when the previous indictment is still "validly pending."). An indictment remains pending until dismissed. *United States v. Pacheco*, 912 F.2d 297, 305 (9th Cir. 1990).

Count Eight of the Indictment is in particular danger of being unfairly time-barred by an unprecedented dismissal. That count charges the defendants, including the corporate defendant, with criminal copyright infringement during the 180-day period up to and including October 31, 2007. The 5-year statute of limitations for that offense expired months ago. In the event this Court dismissed the Indictment against the corporate defendant, even dismissal without prejudice, the United States would be afforded only six months, pursuant to 18 U.S.C. § 3288, to complete the extradition process and re-indict the corporate defendant.

The extradition process is unlikely to be resolved within six months, however, because it is within the ability of the individual defendants to delay their appearance before this Court until much, if not all, of the criminal conduct against the corporate defendant would be time-barred (especially given the unprecedented surrender by the New Zealand courts of millions in illicit

proceeds to the defendants and their counsel in New Zealand). As early as November of 2012, defense counsel for the individual defendants in New Zealand advised the extradition court in a written memorandum that it was looking increasingly unlikely that the then-scheduled extradition hearing date of March of 2013 would be met. This is after the individual defendants, who are all officers and principal shareholders of the corporate defendant, had already asked for a delay from an initially scheduled extradition hearing date in August of 2012. Last month, again at the defendants' request, the extradition hearing was tentatively rescheduled for August of 2013,[4] but there is reason to believe that the final extradition orders will be appealed by the defendants for years (and would likely bar any criminal charges against a dismissed corporate defendant). Any delay in bringing the individual defendants before this Court and serving the corporate defendant can therefore be directly attributed to the individual defendants who operated and controlled the corporate defendant.[5] Though the government recognizes the defendants' ability to raise these issues and to resist the orders and jurisdiction of this Court, it would be improper to hold any related delay against the United States.

---

[4] In the civil proceedings involving Defendant Kim Dotcom and Megaupload Limited, which are currently pending before this Court, the defendants admitted that "[i]n light of the New Zealand prosecutors' interlocutory appeal, the extradition hearing was continued at the Defendants' request from August 2012 to May 2013 (at the earliest)." Status Report of Defendants Kim Dotcom and Megaupload Ltd. in Support of the Continuation of the Stay Pending the Parallel Criminal Prosecution at 3, *Microhits, Inc. et al. v. Megaupload, Ltd., et al.*, Case No. 1:12-cv-327 (E.D. Va. Nov. 16, 2012) (Dkt. 37).

[5] The ability of the Court to attribute delays to all defendants in a matter (even putting aside that the corporate defendant here is directly controlled by other individual defendants who are choosing to cause the delay) is clear. For example, courts have found that, in Speedy Trial Act cases involving multiple defendants, a "single speedy trial clock and that delay attributable to any one defendant is charged against the single clock, thus making the delay applicable to all defendants." *United States v. Byrd*, 466 F. Supp. 2d 550, 551–52 (S.D.N.Y. 2006) (citing *United States v. Pena*, 793 F.2d 486, 489 (2d Cir. 1986)); *see also United States v. Walker*, 116 F.3d 1474 (4th Cir. 1997) (citing *Henderson v. United States*, 476 U.S. 321, 323 n.2 (1986)).

In addition, because Count Eight involves the defendant's infringement of works from the YouTube.com platform, in the event the Court even wants to consider granting the corporate defendant's request for even a temporary dismissal, Federal Rule of Criminal Procedure 44(c)(2) requires the Court to first hold a hearing to address the inherent conflicts of interest involved in defense counsel's ongoing representation of the corporate and individual defendants as well as YouTube.com.[6]  A written or oral waiver of these rights is not sufficient, in that a hearing must be made in the personal presence of all parties.  Specifically, Rule 44(c)(2) requires: "The court must promptly inquire about the propriety of joint representation and must personally advise each defendant of the right to the effective assistance of counsel, including separate representation."

Furthermore, granting the defendant's request would undermine the decisions of two separate grand juries which investigated the case and voted to indict the corporate defendant. Grand juries are an independent body whose decisions are to be given great respect. *See, e.g.*, *United States v. Promise*, 255 F.3d 150, 187 (4th Cir. 2001); *see also United States v. United States District Court for the Southern District of West Virginia*, 238 F.2d 713 (4th Cir. 1957) (grand juries are not subject to court's directions and orders with respect to the exercise of its essential functions); *cf. United States v. Bolden*, 325 F.3d 471, 493 (4th Cir. 2003) (constructive

---

[6] The Fourth Circuit has instructed that "when a conflict situation becomes apparent to the government, the government has a duty to bring the issue to the court's attention and, if necessary, move for disqualification of counsel." *United States v. Tatum*, 943 F.2d 370, 379-80 (4th Cir. 1991).  The United States has described the conflicts of interest at issue here in previous pleadings. *See, e.g.*, Opposition of the United States to Motion of Quinn Emanuel Urquhart & Sullivan LLP and The Rothken Firm for Leave to Enter Limited Appearance on Behalf of Defendants Megaupload Limited and Kim Dotcom at 9–15 (Apr. 11, 2012) (Dkt. 76); Opposition of the United States to Motion of Quinn Emanuel Urquhart & Sullivan LLP, The Rothken Law Firm, and Craig C. Reilly, Esq., for Leave to Enter Limited and Special Appearances on Behalf of Megaupload Limited, Kim Dotcom, Mathias Ortmann, Bram Van der Kolk & Finn Batato at 6–10 (June 13, 2012) (Dkt. 104).

amendments to indictments are reversible error). To dismiss the indictment would undermine and disrespect the authority and role of the grand jury and the U.S. judicial system.

Lastly, a dismissal of just one of nine co-defendants in an indictment — even a dismissal without prejudice — would require duplicative expenditures of court, prosecution, and defense resources. Another grand jury, for example, would need to convene to indict the case against the single corporate defendant on the same facts and lengthy charges. Such evidence would necessarily involve witnesses and documentation related to all nine codefendants because the corporate defendant is charged in all counts and the illegal conduct of its shareholders, management, and employees is directly relevant to the company's criminal liability. This is particularly true in a case that involves the charge that the corporate defendant was part of a criminal enterprise under the Racketeer Influenced and Corrupt Organizations Act. Such an effort to educate another grand jury of the broad array of illegal acts carried out by the Mega Conspiracy throughout the world and their willful misrepresentations to the public about how they operated would be significant.

**2.     The defense has not cited any legal precedent justifying temporary dismissal.**

Despite having submitted numerous pleadings to the Court requesting dismissal of the Indictment, the defendant has not cited a single case addressing the actual basis for the requested relief. Allegations of procedural due process violations are reviewed under well-established standards, which the defendant falls well short of satisfying. Instead of addressing these precedents, the defendant cites out-of-context sound bites that greatly overstate what the cases actually hold. For example, the defendant refers to a minority opinion in *Browning-Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc.*, in which two justices broadly recognize that "a corporation is entitled to due process." 492 U.S. 257, 285 (1989) (O'Connor, J., concurring in

part and dissenting in part). The majority opinion, however, expressly declined to address due process because the petitioners failed to raise the issue before either the district or appellate courts. *Id*. at 277. The Supreme Court instead addressed the issue of "whether the Excessive Fines Clause of the Eighth Amendment applies to a civil-jury award of punitive or exemplary damages, and, if so, whether an award of $6 million was excessive in this particular case[,]" *id*. at 259, and concluded that the "Excessive Fines Clause does not apply to awards of punitive damages in cases between private parties[,]" *id*. at 260.

Similarly, the defendant cites *United States v. Al Mudarris*, in which the Ninth Circuit recognized that district courts "may dismiss an indictment as an exercise of their inherent supervisory power . . . or to protect a defendant's due process rights . . . ." 695 F.2d 1182, 1185 (9th Cir. 1983) (internal citations omitted). That case, however, also did not address a due process claim and instead focused on an allegation of prosecutorial misconduct before a grand jury. *Id*. The appellate court ultimately upheld the indictment, in light of the "overwhelming evidence of guilt," *id*. at 1189, as the government believes any court would do in this matter upon review.

Finally, in *United States v. Ambrosio*, the third and final case cited in the instant motion, the district court addressed, in the context of a RICO prosecution, whether courts "may encumber the property of an 'innocent' third party in order to preserve the 'interests' of the government in the defendant's potentially forfeitable property." 575 F. Supp. 546 (E.D.N.Y. 1983). In *Ambrosio*, however, the government did not contend that the corporate co-defendant, which was not charged with RICO, would need to forfeit its assets if the individual defendant alone were convicted of the RICO charges. *Id*. at 550. Here, in contrast, two separate grand juries have found probable cause that corporate defendant Megaupload Limited was itself part of a

criminal enterprise, whose assets are forfeitable pursuant to federal law regardless of whether the corporation is under indictment. As such, the cited cases are largely irrelevant to the defendant's legal position and certainly do not support its request for relief.

To the extent the defendant relies on a claim of procedural due process — a claim defendant has described only in the broadest possible terms — such challenges are reviewed in two steps: "the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989). With respect to the first step, the only property interests that have been interfered with by the government, according to Defendant Megaupload, are the seizure of its website and restraint of its assets. *See* Motion to Dismiss Without Prejudice at 3. These actions, however, were conducted in accordance with federal forfeiture law, as described in 18 U.S.C. §§ 981, 982, 1963, and 2323; 21 U.S.C. § 853; and 28 U.S.C. § 2461. Federal law vests this Court with authority to restrain such assets, based on a finding of probable cause, to preserve the assets for forfeiture, pending completion of the criminal proceedings. Here, two grand juries and this Court found probable cause that the assets in question are subject to forfeiture, and the United States has obtained the proper restraining orders and seizure warrants to preserve the assets for future forfeiture. The defendant cannot argue that these procedures were somehow insufficient, as they have been upheld by both the Supreme Court and the Fourth Circuit.[7] *See, e.g.*, *United States v. Monsanto*, 491 U.S. 600, 612–16 (1989); *In re Billman*, 915 F.2d 916, 921

---

[7] In the civil proceedings before this Court, Defendants Kim Dotcom and Megaupload Limited have already agreed that "their assets have been seized and are subject to forfeiture to the United States as potential compensation for victims of the alleged crimes." Reply Brief of Defendants Kim Dotcom and Megaupload Limited in Support of the Continuation of the Stay Pending the Parallel Criminal Prosecution at 3, *Microhits*, (Dec. 3, 2012) (Dkt. 40).

(4th Cir. 1990).  Any claim that rests on procedural due process, therefore, must be rejected.

### 3.     Defendant Megaupload has not and will not suffer a cognizable prejudice.

There can be no real dispute that the defendant has actual notice of the criminal charges currently pending against it.  Since January of 2012, the corporate defendant and the individual defendants have hired at least four law firms in the United States who have incurred millions of dollars in legal fees in the United States trying to resist this Court's jurisdiction and millions more fighting the extradition of the individual defendants in New Zealand. Equally important, these facts show that the government has vigorously, persistently, and expeditiously prosecuted this matter, and that delays are not due to government inaction.  Certainly, there has been no prejudice to the ability to the company from defending itself, since it has already raised an unsuccessful jurisdictional challenge to the Indictment and continues to tax prosecutorial and judicial resources safely *in absentia*.

Defendant Megaupload's insistence that it be dismissed at this time is also at odds with the company's position in contemporaneous civil litigation, where it has sought to stay the civil action pending the arrival of the individual defendants following extradition. *See generally* Mem. of Law in Supp. of Mot. by Defendants Kim Dotcom and Megaupload Ltd. for a Stay Pending a Parallel Criminal Prosecution, *Microhits*, (May 10, 2012) (Dkt. 17).  In support of that request, the company argued that any extradition-related delays would not prejudice the civil plaintiff: "While there may be some delay due to extradition proceedings, that is simply part-and-parcel of an international case of this sort." *Id*. at 12. On May 30, 2012, the motion was granted, and the civil matter was stayed for 180 days, absent a substantive change in circumstances. *See* Order at 1, *Microhits*, (Dkt. 31).  The defendant recently asked this Court to extend the stay, arguing that "[d]espite the passage of time and the extended timetable for the extradition proceedings in

New Zealand, the essential equities have not changed since May 30, 2012." *See* Status Report of Defendants Kim Dotcom and Megaupload Ltd. in Support of the Continuation of the Stay Pending the Parallel Criminal Prosecution at 5, *Microhits*, (Nov. 16, 2012) (Dkt. 37). Despite arguing to this Court that the civil plaintiffs, who allege that they have been harmed by the defendant's infringement, would suffer no prejudice from any extradition-related delay, the company now suggests that such delays (which are significantly within their management's control) amounts to a procedural due process violation.

While the defendant has made unsubstantiated statements about its potential to resume operations and has complained of the "massive harm" caused by its refusal to accept formal service of a criminal summons, all of Megaupload Limited's management have been indicted and are either fighting extradition or have escaped to safe havens; and all of the assets of the corporate entity and associated businesses and individuals have been or will be restrained. Importantly, the controlling shareholder of the corporate defendant, codefendant Kim Dotcom, dismissed the possibility of re-constituting the operations of the business when he was trying to avoid pre-extradition confinement in New Zealand. In a January 23, 2012 affidavit given under oath in New Zealand, he said:

> Due to the actions in the United States taken by the US government on Friday 20 January 2012, the entire operation of Megaupload and the operation of a number of its related and subsidiary corporations was effectively and emphatically terminated. There is no realistic prospect or possibility of restoring the business or recommencing the business having regard to both the seizure of the requisite servers and data storage equipment and to the seizure of all funds, monies and assets held both by Megaupload and by me personally. Further, it is likely that users would consider any new iteration of Megaupload as inherently unreliable as it could be subject to a further incident in which the US government takes action to close the site down and thereby prevents users from having legitimate access to their data. Until the merits of the US government's charges against me and my co-defendants, as well as the company, have been determined there is no ability, let alone financial incentive available to me, to try to continue to operate the business

> as is alleged. Indeed I have no financial ability to conduct any business at all as all
> of my bank accounts have been identified by the US government and have been
> frozen due to the effect of the restraining order issued by the Courts both here in
> New Zealand and in the US.

Affidavit of Kim Dotcom in Support of Application for Bail, at ¶ 25(a). He continued:

> As noted above, there is no ability for me to reinstate Megaupload either as it was
> prior to the police operation or as some new iteration of the site. The seizing of
> the company's servers and the freezing of any resources would prevent me from
> attempting to do so.

*Id. ¶ 35.* Similarly during a February 3, 2012 New Zealand bail hearing, defendant Dotcom

further said under oath, again trying to avoid his incarceration:

> Q . What about the suggestion that you - at liberty, you would be in a position to
> restart Megaupload or something like it and continue to effectively, in the view of
> the US Government, offend or re-offend?
>
> A. I have a piece of paper here. When you go to Megaupload.com now, what you
> are seeing is a page that this site has been seized, so the domain is not even under
> our control anymore. It is impossible to restart the business . . . .

Notes of Evidence Taken Before the Hon. Justice Asher, at 11:1-7. Finally, in a February 15,

2012 affidavit, defendant Dotcom said:

> I note that given the proceedings that are in train both here and in the United
> States, I need to be able to be in close and regular contact with both my New
> Zealand based and American lawyers. A prohibition on my accessing the internet,
> and particularly having access to email correspondence, would be onerous and
> punitive and would prevent me from effectively preparing and conducting my
> defence. I can assure the Court that I have no intention and there is no risk of my
> reactivating the Megaupload.com website or establishing a similar internet-based
> business during the period until the resolution of the extradition proceedings.

Further Affidavit of Kim Dotcom in Support of Further (Second) Application for Bail, at ¶ 10.

Since defendant Dotcom, who controls the corporate defendant and is an alter ego of the

company, has sworn that the company and its associated businesses will not and, in fact, cannot

operate during the delay caused by the individuals' fight against extradition, the company's

allegations of "massive harm" seem untethered from reality.  Similarly, the assertion that the

company has the potential to operate in order "to rehabilitate itself" during the delay caused by

the defendants' extended challenge of this Court's jurisdiction must be disregarded as spurious.[8]

### C.   The government has complied with Rule 48(b) by diligently pursuing extradition of the company's officers.

In a belated attempt to justify its request for temporary dismissal, the defendant claims

that Federal Rule of Criminal Procedure 48(b) authorizes this Court to grant the pending motion.

*See* Rebuttal Memorandum in Support of Motion of Quinn Emanuel Urquhart & Sullivan LLP

and The Rothken Law Firm for Leave to Enter Limited and Special Appearance on Behalf of

Megaupload Limited at 6–7 (Nov. 1, 2012) (Dkt. 137).  The circumstances presented in the two

cases cited by the defendant, *Rowbotham* and *Zabady*, however, are readily distinguishable from

those presently before the Court. In *United States v. Rowbotham*, a District of Massachusetts

case, the defendant faced several drug charges in Canada, where he was physically located. 430

F. Supp. 1254, 1256 (D. Mass. 1977).  While those charges were pending, the defendant was

indicted by U.S. authorities. *Id*. At that time, a U.S. State Department policy prohibited the

Justice Department from entertaining "extradition proceedings against a person while criminal

charges are pending against him in another country." *Id*.  There had been, therefore, "no effort"

by the government to seek extradition, nor had the United States "expressed any intent to do so."

---

[8] Despite Dotcom's previous insistence that he would not — and could not — restart the Mega business, he has now taken the very public position that a similar internet-based business will be relaunched later this month.  Defendant Dotcom's statements have been covered thoroughly by the media. *See, e.g.*, Hayley Tsukayama, *'Mega' file-sharing site, successor to Megaupload, to come from Kim Dotcom*, The Washington Post, Nov. 1, 2012, *available at* washingtonpost.com (search "Megaupload," then follow "'Mega' file-sharing site" hyperlink) (last visited Jan. 12, 2013); Naomi Tajitsu, *Flamboyant Megaupload founder unveils file-sharing sequel*, Reuters, Nov. 1, 2012, *available at* reuters.com (search "Megaupload," then follow "Flamboyant Megaupload founder" hyperlink) (last visited Jan. 12, 2013).

*Id.* at 1257. Only then did the district court exercise its discretion under Rule 48(b) to dismiss the charges against the defendant. *Id.* at 1258.  Here, in stark contrast, the government has actively sought to extradite the individual defendants and fully intends to prosecute them — together with the corporate defendant — upon their arrival in the United States.[9]

In *United States v. Zabady*, a case from the Middle District of Pennsylvania, with only 6 days until trial, the government requested a 6-month continuance. 546 F. Supp. 35, 36 (M.D. Penn. 1982). The district court found that "no credible explanation has been offered by the Government as to why the indictment was sought and returned at the time it was when the evidence necessary for a conviction at trial was not reasonably ascertainable." *Id.* at 39. The court therefore exercised its discretion under Rule 48(b) to dismiss the pending indictment, and even then the dismissal was done without prejudice.  *Id.* at 40.  Here, in contrast to *Rowbotham* and *Zabady*, the United States has sought the extradition of the individual defendants with "vigor" and is prepared to bring the defendants to trial. Rule 48(b) therefore has no bearing on the present motion.

## II.  CONCLUSION

In sum, dismissal of the corporate defendant — even without prejudice — would harm the respect for the criminal process, the government's ability to fully prosecute serious criminal conduct, the ability of victims to obtain justice, and the public interest in resolving this case efficiently.  The United States therefore respectfully suggests that an oral hearing on this matter is unnecessary and requests that this Court deny on the papers Defendant Megaupload's request

---

[9] Defendants Kim Dotcom and Megaupload Limited have themselves characterized the government's extradition efforts as being done with "vigor." Reply Brief of Defendants Kim Dotcom and Megaupload Limited in Support of the Continuation of the Stay Pending the Parallel Criminal Prosecution at 1, *Microhits*, (Dec. 3, 2012) (Dkt. 40).

for "temporary" dismissal.  In the event the Court wants to seriously entertain the Defendant's

request, the government would request a hearing under Federal Rule of Procedure 44(c)(2) since

an ethical conflict will be at issue.


Respectfully submitted,                    Date: January 15, 2013

Neil H. MacBride
United States Attorney

By: _____/s/_____
        Ryan K. Dickey                         Lanny A. Breuer
        Jay V. Prabhu                          Assistant Attorney General
        Alexander T.H. Nguyen                  U.S. Department of Justice, Criminal Division
        Andrew Peterson
        Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that on the January 15, 2013, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF, which will then send a notification of such filing (NEF) to:

William A. Burck, Esq.
Paul F. Brinkman, Esq.
Heather H. Martin, Esq.
Quinn Emanuel Urquhart & Sullivan LLP
1299 Pennsylvania Avenue, NW, Suite 825
Washington, DC 20004
(202) 538-8000 phone
williamburck@quinnemanuel.com
paulbrinkman@quinnemanuel.com
heathermartin@quinnemanuel.com

Christopher L. Harlow, Esq.
Thomas R. Millar, Esq.
SNR Denton US LLP
1301 K Street, NW, Suite 600, East Tower
Washington, DC 20005
(202) 408-6816 phone
christopher.harlow@snrdenton.com
thomas.millar@snrdenton.com

Julie Moore Carpenter, Esq.
Jenner & Block LLP
1099 New York Ave, NW, Suite 900
Washington, DC 20001
(202) 639-6000 phone
jcarpenter@jenner.com

Ira P. Rothken, Esq.
The Rothken Law Firm
3 Hamilton Landing, Suite 280
Novato, CA 94949
(415) 924-4250 phone
ira@techfirm.net

John S. Davis, V, Esq.
Williams Mullen
200 South 10th Street, 16th Floor
Richmond, VA 23219
(804) 420-6296 phone
jsdavis@williamsmullen.com

Craig C. Reilly, Esq.
111 Oronoco Street
Alexandria, VA 22314
(703) 549-5354 phone
craig.reilly@ccreillylaw.com

By:      /s/ Ryan K. Dickey
Ryan K. Dickey
Assistant United States Attorney
Virginia Bar No. 74828; D.C. Bar No. 982536
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
(703) 299-3700 office    (703) 299-3981 fax
Ryan.Dickey@usdoj.gov