IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) <br> ) <br> v. ) <br> ) <br> KIM DOTCOM, et al., ) <br> ) <br> Defendants ) <br> ) | The Honorable Liam O'Grady <br><br> Criminal No. 1:12-CR-3 |

**REBUTTAL MEMORANDUM IN SUPPORT OF RENEWAL OF SPECIALLY APPEARING DEFENDANT MEGAUPLOAD LIMITED'S REQUEST FOR DISMISSAL OF THE SUPERSEDING INDICTMENT WITHOUT PREJUDICE**

By its opposition brief (*see* Dkt. 159), the Government seeks to persuade the Court that Defendant Megaupload Limited ("Megaupload") has suffered no harm or deprivation of due process as a result of the Government's continued failure to serve the company in accordance with the Federal Rules of Criminal Procedure. The facts show otherwise. More than a year has now passed since Megaupload was branded a criminal, with no opportunity to date to clear its name or to challenge the charges against it. More than a year has passed since every penny of the company's assets was frozen, yet there has been no pre- or post-seizure hearing for Megaupload to contest the propriety of that action. Megaupload's servers—which house the universe of relevant evidence against which the Government's allegations against Megaupload might potentially be fully and fairly assessed one day—have been taken offline for lack of funding (while the Government sits on all the assets it has seized from Megaupload), gathering dust and in danger of deteriorating. And Megaupload's innocent consumers have been forced to go more than a year without any access to their property.

The ability of a criminal defendant to mount, not only in theory but also in practice, a fair defense should be beyond question. The Government's conduct of this case is to the contrary, raising grave questions about whether the Government is intent on being judge, jury, executioner, and asset collector without benefit of the adversarial process and protections, including those of Rule 4, to which this corporation is entitled. Certainly the prosecution to date—by freezing assets, by foreswearing proper service, and by steadfastly refusing to lift a finger or spend a cent to prevent ongoing spoliation of server evidence (not to mention deprivation of innocent users' rightful property)—has denied Megaupload any semblance of due process. Megaupload asks this Court to right that wrong by dismissing the Superseding Indictment without prejudice and until such as time as the Government serves (if it is able to do so) Megaupload consistent with the requirements of Federal Rule of Criminal Procedure 4—and thereby freeing the corporate defendant from the criminal limbo that is presently subjecting it to daily, irreparable harm.[1]

## ARGUMENT

The Government argues that this Court lacks authority to dismiss a criminal indictment to protect a corporate defendant's due process rights. It also argues that, in any event, Megaupload will suffer no harm from a prolonged delay—even an indefinite one—in the commencement of proceedings against it, or, alternatively, that any harm Megaupload may suffer is self-inflicted. Each of these arguments is without merit and simply confirms, yet again, the lengths the Government will go to deny Megaupload due process.

---

[1] The Government asks the Court to decide Megaupload's request for dismissal on the papers and without an oral hearing, pursuant to Local Criminal Rule 47(J). (Dkt. 159 at 2.) In light of the extensive briefing and oral arguments that have already been presented to the Court in connection with this and previous motions, Megaupload agrees that the Court may decide the present issue without further argument. Megaupload asks the Court to dismiss the case, without prejudice, forthwith.

**I.     CONTRARY TO THE GOVERNMENT'S ASSERTION, THE COURT LACKS PERSONAL JURISDICTION OVER DEFENDANT MEGAUPLOAD.**

The Government begins by arguing that dismissal should be denied because "this Court has personal jurisdiction over Defendant Megaupload and has already found that the government will be in a position to validly serve the company with a summons through the individual codefendants, who are officers and agents of the company, after they arrive in the United States following extradition." (Dkt. 159 at 2.) The Government is wrong on both points.

A.     <u>Neither Actual Notice Nor Contacts with the Forum Relieves the Government of its Obligation to Serve Megaupload in Accordance with Rule 4.</u>

The Government's assertion that the Court "has personal jurisdiction over Defendant Megaupload" is based on its continued misconception that minimum contacts with the forum and actual notice of the prosecution are alone sufficient to confer jurisdiction to the Court. (*See* Dkt. 159 at 3 ("This Court has personal jurisdiction over Defendant Megaupload, a company who, as alleged in the Superseding Indictment . . . maintained a continuous business presence in the United States and the Eastern District of Virginia for more than six years, during which time company earned millions of dollars in criminal proceeds at the expense of copyright victims."); *id.* at 11 ("There can be no real dispute that the defendant has actual notice of the criminal charges currently pending against it.").) But as Megaupload has repeatedly shown, neither alleged contacts nor actual notice is a substitute for valid service of process. Rather, valid service is a separate prerequisite to establishing personal jurisdiction. As the United States Supreme Court has cautioned:

> [B]efore a court may exercise personal jurisdiction over a defendant, *there must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum. There also must be a basis for the defendant's amenability to service of summons.* Absent consent, this means there must be authorization for service of summons on the defendant.

*Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987) (emphasis added); *see also Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209-10 (10th Cir. 2000) ("While service of process and personal jurisdiction both must be satisfied before a suit can proceed, they are distinct concepts that require separate inquiries"); *Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 484 (3d Cir. 1993) ("Our inquiry cannot end, however, with a determination that the demands of due process are met. Valid service is also necessary to the district court's exercise of personal jurisdiction over the Spanish defendants."); *see also Harding v. Williams Prop. Co.*, No. 96–2713, 1998 WL 637414, at *4 (4th Cir. Aug. 31, 1998) (Table) (rejecting plaintiff's argument that actual notice suffices absent proper service, because a summons entails "much more than a mere notice."); *Nat'l Dev. Co. v. Triad Holding Corp.*, 930 F.2d 253, 256 (2d Cir. 1991) ("We reject the notion that 'actual notice' suffices to cure a void service . . . .").

Thus, even assuming *arguendo* that Megaupload is aware of the charges against it and that Megaupload has purposely availed itself of this forum,[2] those facts alone cannot suffice to establish service and jurisdiction. Instead, the requirement of proper service stands as a jurisdictional hurdle all its own. Unless and until the Government clears this hurdle, consistent with the dictates of Rule 4's governing terms, dismissal is required.

    B.    <u>This Court Has Not Concluded that Service on the Individual Defendants Would be Valid Service as to Megaupload.</u>

The Government is similarly misguided in suggesting that the Court has ruled that the Government's planned method of service (*i.e.*, service upon officers and directors of the

---

[2] To be clear, Megaupload does not concede that it has had sufficient contacts with this forum to subject it to personal jurisdiction and reserves the right to bring a motion to dismiss on this basis at the appropriate time. The only issue presently before the Court, and the only issue addressed herein, is whether the Superseding Indictment should be dismissed until such time as the Government has served Megaupload pursuant to Rule 4.

company upon extradition to the United States) would be consistent with the requirements of the Federal Rules. (*See* Dkt. 159 at 2.) To the contrary, this Court has yet to decide whether service on the individual defendants as alleged alter egos of Megaupload would constitute valid service on the corporate defendant. Rather, the Court has said only that "the Government *may* be able to prove that at least one of the individually named defendants is an alter ego of the corporate parent," and only *if* the individual defendants are ultimately extradited to the United States. (*See* Dkt. 127 at 4 (emphasis added).) Neither has occurred, and as the Court has acknowledged, they may *never* occur. (*See id.* at 5 n.6.) The status of this case remains that "[t]he government has not served, nor has it attempted to serve, the corporate Defendant." (*Id.* at 2 n.3.) Especially considering that the Government has yet to offer *any evidence whatsoever* of alter ego status, the Government's proposal that the Court assume its burden of proof some day will be satisfied is untenable.[3]

## II. THIS COURT HAS THE INHERENT POWER TO DISMISS THE INDICTMENT TO PROTECT THE CORPORATE DEFENDANT'S DUE PROCESS RIGHTS

Megaupload's request for dismissal rests on two basic legal tenets: (1) a corporate defendant such as Megaupload is entitled to due process of law; and (2) courts have the inherent authority to protect those due process rights, including by dismissing a criminal indictment. (*See*

---

[3] The Government contends that in the event the individual defendants are never extradited to the United States, the Government can simply ignore Rule 4's requirement that the summons be mailed to Megaupload's "last known address within the district or to its principal place of business elsewhere in the United States" and instead mail it to an alternate destination. (*See* Dkt. 159 at 3-4 (suggesting that the Government could mail the summons to the Commonwealth of Virginia's State Corporation Commission; or to the warehouse of third party vendor Carpathia Hosting; or to other third parties).) The Government has made this erroneous argument before, (*see* Dkt. 117), and it remains without merit now. As Megaupload has previously shown, the Government's proposed alternatives violate Rule 4's express terms and would improperly expand the class of defendants subject to criminal process. Rather than rehash arguments that have been previously briefed, Megaupload respectfully incorporates by reference the arguments made in its prior pleading. (*See* Dkt. 118 at 10-17.)

Dkt. 147 at 3.) In its Opposition, the Government takes on both of these tenets. (Dkt. 159 at 8-10.) Beyond describing Megaupload's cited precedents as "out-of-context sound bites," however, the Government offers no positive authority of its own to suggest that Megaupload is wrong on the law. Thus, for example, the Government does not cite a single case holding that corporate defendants lack the constitutional protections of due process—nor could it. More than a century of precedent firmly establishes that corporations are legal persons, entitled to due process. *See, e.g., Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418-19 (1984) (holding that nonresident corporate defendant's due process rights were violated by court's exercise of *in personam* jurisdiction, where corporation did not have sufficient contacts with the forum state); *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (assertion of jurisdiction over out-of-state corporation must comply with "traditional notions of fair play and substantial justice"); *Chicago, Milwaukee, & St. Paul. R.R. Co. v. Wisconsin*, 238 U.S. 491, 501-02 (1915) (holding that a state statute regulating the railroad's sleeping cars is invalid and cannot be sustained as a valid exercise of the state's reserved power to alter a corporate charter when the statute deprives the corporation of its property without due process of law); *Noble v. Union River Logging R. R. Co.*, 147 U.S. 165, 176 (1893) (holding that an order revoking approval of the railroad company's maps for right of way over public lands was "an attempt to deprive the [railroad] of its property without due process of law").

The Government likewise offers nothing to support its contention that this Court stands powerless to remedy the Government's delay in serving the company. Again, the legal authorities directly contradict the Government's position. Federal Rule of Criminal Procedure 48(b)(3) expressly provides that a "court may dismiss an indictment, information, or complaint if unnecessary delay occurs in . . . bringing a defendant to trial." The Advisory Committee Notes

to Rule 48 make clear that, "[t]his rule is a restatement of the inherent power of the court to dismiss a case for want of prosecution." Courts have applied this rule to dismiss indictments where—as here—the prosecution's delay threatens to prejudice the criminal defendant. *See United States v. Rowbotham*, 430 F. Supp. 1254, 1257 (D. Mass. 1977) (dismissing a criminal indictment where eight months had passed since defendant's indictment without the Government attempting to seek the defendant's extradition or to bring him before a judicial officer); *United States v. Zabady*, 546 F. Supp. 35, 39-40 (M.D. Penn. 1982) (delay of four months since date of defendants' indictment, together with prospective delay of at least another year, required dismissal of indictment without prejudice; court would not sanction open-ended indictment process whereby Government would have unlimited time to arrange its case and defendants would suffer severe personal prejudice from protracted delay).[4]

The Government argues that *Rowbotham* and *Zabady* are distinguishable, and that dismissal pursuant to Rule 48(b) is precluded, because the Government has sought to extradite the individual defendants with "vigor." (*See* Dkt. 159 at 14-15.) However, nothing in the language of Rule 48, nor in the cases applying it, suggests that the Court's power to dismiss is limited to instances in which the Government has been dilatory in seeking a criminal defendant's extradition. Rather, "[i]n determining whether to exercise its discretionary power to dismiss under Rule 48(b), the court may consider the same factors relevant to a constitutional decision regarding denial of a speedy trial," which include "1) the length of delay, 2) the reason for the delay, 3) the defendant's assertion of his right, and 4) prejudice to the defendant." *Rowbotham*, 430 F. Supp. at 1257; *Zabady*, 546 F. Supp. at 38. Each of these factors weighs heavily in favor

---

[4] To the extent precedent on these points is relatively scarce, it is because such overreaching by the United States Government in its criminal prosecutions appears to be relatively rare.

of dismissal in the present case, where more than a year has already elapsed since Megaupload's indictment and the extradition process for the individual defendants is expected to last several more months, if not years; where much of the ongoing delay in extradition proceedings is directly attributable to New Zealand courts' determination that the Government has participated in a variety of misconduct (*see infra* at 10-12); where Megaupload has offered to waive service and appear for trial provided only that the Government agree to release sufficient funds to permit Megaupload to defend itself (*see infra* at 12-14), and has otherwise diligently asserted its right to due process and a speedy trial, including by moving to dismiss with and without prejudice based on the Government's failure to serve; and where Megaupload is being subjected to daily prejudice as a result of the Government's delay (*see infra* at 9-10).

The key point that bears emphasizing is that Rule 48(b) codifies the Court's inherent discretion to weigh the above factors and dismiss the Superseding Indictment due to unreasonable delay. The Government cites no precedent to support its contrary position. There should be no doubt, therefore, that this Court may dismiss the case against the corporate defendant, whether with or without prejudice, as and if appropriate to protect Megaupload's right to due process and prevent undue prejudice.

### III. ONLY BY DISMISSING THE INDICTMENT CAN THIS COURT PROPERLY PROTECT MEGAUPLOAD'S DUE PROCESS RIGHTS.

The central question is whether this Court should now exercise that inherent power. The Government contends that, even if the Court has the ability to dismiss the Superseding Indictment against Megaupload, it should decline to do so because (1) a temporary dismissal "would significantly prejudice the government in a meritorious case" (Dkt. 159 at 4); (2) "[a]ny delay in bringing the individual defendants before this Court and serving the corporate defendant can . . . be directly attributed to the individual defendants who operated and controlled the

corporate defendant" (*id.* at 6); and (3) "Defendant Megaupload has not and will not suffer a cognizable prejudice" (*id.* at 11). The Government's assertions are once again without basis in fact or law.

### A. Megaupload Will Suffer Substantial Prejudice Absent Dismissal

The Government's narrow conception of service ignores the indisputable harm that Megaupload, who is presumed innocent of the charges, has already suffered and will continue to suffer as a result of the Government's failure to serve the company and thereby properly commence criminal proceedings. It has been more than a year since the company was indicted, had its website seized, had its business destroyed, had all of its assets frozen, and been relegated to an indefinite, ongoing state of criminal limbo. Throughout that time, Megaupload has been deprived of any opportunity to rehabilitate its business.[5] It has been denied access to its funds for purposes of mounting its defense in this case. Megaupload's servers—which house potentially exculpatory evidence, critical to Megaupload's defense—have been taken offline due to non-payment of fees and now face grave danger of data loss. Further, Megaupload's innocent customers have been prevented from retrieving their property. (*See* Dkt. 90.) It should be beyond dispute, therefore, that the Government's failure to comply with Rule 4 is subjecting

---

[5] The Government contends that testimony given by Defendant Kim Dotcom in connection with his bail hearings in New Zealand forecloses Megaupload's ability to rehabilitate its business. (Dkt. 159 at 12-14.) While the Government may wish to treat Mr. Dotcom as an alter ego of the corporate defendant, to date it has made no such showing and this Court has made no such finding. As such, Megaupload is presumed to be a separate, independently charged defendant who, more importantly, is presumed to be innocent. Mr. Dotcom's testimony in New Zealand is therefore irrelevant to the present motion. Moreover, neither Mr. Dotcom's bail conditions nor U.S. law precludes Megaupload from engaging in a lawful business— including one that involves the internet and technology. As such, the Government invocation of Mr. Dotcom's newly launched cloud storage business in New Zealand, Mega, is of no moment. (*See* Dkt. 159 at 14 n.8.) Again, the lawful business activities of the separately charged individual defendants have no bearing on the rights of Defendant Megaupload.

Megaupload to ongoing, irreparable harm indistinguishable from the sort that would attend ultimate criminal conviction following full criminal process.

The Government scores no points by contending that Megaupload's motion for stay in the separately filed civil case somehow diminishes the harm that Megaupload is suffering from the Government's failure to commence criminal proceedings. (*See* Dkt. 159 at 11-12.) The potential prejudice that the civil plaintiffs may suffer due to the delay in litigating their claims for monetary damages does not compare, in quality or in degree, to the ongoing harm that Megaupload suffers from being branded a criminal, seeing its business destroyed, and being left destitute, with all of its assets criminally seized. Indeed, the Government's restraint of assets that might otherwise be used to fund a legal defense—the very harm that Megaupload presently seeks to remedy—was a key factor offered by Megaupload in support of the civil stay. *See Microhits, Inc. et al. v. Megaupload, Ltd., et al.*, Case No. 1:12-cv-327 (E.D.Va. May 10, 2012) (Docket #17) at 2 ("Moreover, although Defendants are presumed innocent in the Criminal Action, their assets have been frozen, and they cannot afford to pay counsel and e-discovery vendors to defend this complex matter."). Far from being inconsistent, Megaupload's position in the civil case and its instant request for relief grow out of the same regrettable phenomena spawned by the Government's conduct of this case.

      B.    <u>Any Delay in the Extradition Proceedings is Directly Attributable to the Government's Unlawful Conduct in New Zealand</u>

The Government further argues that the harm Megaupload is suffering due to the delay in proceedings should be disregarded because "[a]ny delay in bringing the individual defendants before this Court and serving the corporate defendant can . . . be directly attributed to the individual defendants who operated and controlled the corporate defendant." (Dkt. 159 at 6.) The Government's continued suggestion—that the exercise of the defendants' legal rights in this

jurisdiction and abroad constitutes obstruction—is peculiar and off base. Furthermore, it is misleading given established facts that pass unmentioned by the Government. The Opposition omits the fact that it was the *Government* that has delayed extradition proceedings by filing appeals of the New Zealand courts' rulings. Still more important, and more telling, the Government fails to mention *why* it has filed those appeals—namely, because it has been found to have participated in unlawful activity, as determined by two separate branches of the New Zealand government.

The High Court in New Zealand issued an order on June 28, 2012, finding that search warrants executed in New Zealand were invalid, and that the resulting searches and seizures illegal. (*See* Judgment of Winkelmann J. (June 28, 2012), Dkt. 137-1.) Specifically, the Court concluded:

> The warrants did not adequately describe the offenses to which they related. Indeed they fell well short of that. They were general warrants, and as such, are invalid.
>
> The warrants were expressed to authorise the search for and seizure of very broad categories of items. These categories of times were defined in such a way that they would inevitably capture within them both relevant and irrelevant material. The Police acted on this authorisation. The warrants could not authorise seizure of irrelevant material, and are therefore invalid.
>
> . . .
>
> The Police relied on invalid warrants when they searched the properties and seized the various items. The search and seizure was therefore illegal.

(Dkt. 137-1 at ¶¶ 144(a), (b), (d).) The High Court then concluded that the FBI specifically acted unlawfully when it took copies of data from Dotcom's computer offshore:

> The release of the cloned hard drives to the FBI for shipping to the United States was contrary to the 16 February direction given under s 49(2) of the [Mutual Assistance in Criminal Matters Act ("MACMA")] that the items seized were to remain in the custody and control of the Commissioner of Police. It was therefore in contravention of s 49(3) of the MACMA.

(Dkt. 137-1 at ¶ 144(f).)

Most recently, in a September 27, 2012 letter to New Zealand Prime Minister John Key, New Zealand's inspector general of intelligence and security revealed that the Government Communications Security Bureau—a foreign intelligence agency—unlawfully spied on Kim Dotcom, who has resident status in New Zealand and therefore is a "protected person." (*See* Letter from D.P. Neazor to Prime Minister John Key (Sept. 27, 2012), Dkt. 137-2.) As a result of this revelation, Prime Minister Key issued a direct apology to Kim Dotcom. *See Megaupload Spying Case Brings New Zealand Apology*, B.B.C. NEWS, Sept. 27, 2012, *available at* http://www.bbc.co.uk/news/technology-19741343.

For the Government, in these circumstances, to fault Megaupload and its co-defendants for supposed "delay" associated with invoking their legal rights is to turn due process on its head. Any blame rests properly with the Government for participating in unlawful conduct which deprived the defendants of their rights under New Zealand law (as has been repeatedly determined by New Zealand courts), causing the very "delay" in the extradition proceedings about which the Government now complains.

### C. The Government's Claims of Prejudice Ring Hollow, as Defendants Have Offered to Consider Waiving Extradition and Service, and Voluntarily Appearing in this Court, Subject to Reasonable Terms and Conditions

The Government also asks the Court to deny Megaupload's requested relief because it contends that dismissal—even a temporary one—would prejudice the United States, including by requiring the expenditure of additional prosecutorial resources to re-indict the company and by potentially rendering some of the charges against Megaupload untimely. (*See* Dkt. 159 at 4-8.) Of course, it is the Government that chose to bring criminal charges when it did, as it did; it is the Government that was obliged to serve a criminal summons on Megaupload in order to


commence criminal proceedings; and it is the Government that stands to be held to account and to pay the fair price associated with any delay or ultimate inability to comply with its obligations. Again, Megaupload has already been made to pay a much dearer price, including loss of its business, reputation, assets, ability to fund its defense, *etc*. Any prejudice now claimed by the United States holds not a candle to the due process rights of the accused, unless and until Megaupload may be proven guilty, beyond a reasonable doubt, in a court of law.

Nonetheless, in order to ensure against the Government's claimed prejudice, Megaupload would be willing to enter into a reasonable agreement with the Government to toll any statute of limitations applicable to the existing counts against Megaupload, in connection with a dismissal without prejudice. Such agreements to toll have been successfully employed in other cases. *See e.g., United States v. McCormick*, 809 F.2d 786 (Table), at *2 (4th Cir. Jan. 9, 1987) ("The defendant agreed to toll the statute of limitations from December 18, 1985. Prior to expiration of the period of tolling, the indictment was filed."); *United States v. Cote*, 544 F.3d 88, 103 (2d Cir. 2008) ("[W]e disagree that the government's request to toll the statute of limitations shortly before it expired was necessarily coercive."); *Untied States v. Gardellini*, 545 F.3d 1089, 1091 (D.C. Cir. 2008) ("Gardellini asked the District Court for a below-Guidelines sentence, arguing that he had offered extraordinary cooperation by providing information to investigators, waiving his attorney-client privilege, and agreeing to toll the statute of limitations.").

Further, the Government's claim of prejudice should be assessed in light of Megaupload's preceding offer to waive service of the summons and voluntarily plead not guilty in this Court. As previously disclosed to the Court, (*see* Dkt. 137-3), Megaupload sent a letter to the Government in May 2012, offering to waive service and appear for trial provided only that the Government agree to release sufficient funds to permit Megaupload to defend itself—as is,

we respectfully continue to submit, Megaupload's constitutional right according to *United States v. Farmer*, 274 F.3d 800 (4th Cir. 2001). (*See* Dkt. 96-2.)

Only by the Government's perverse conception might Megaupload proceed on *different* terms—surrendering its obvious, unanswerable procedural objection under Rule 4 while exposing itself to numerous, complicated substantive charges as to which it has not a penny to fund substantive defense. If there is anything especially noteworthy about Megaupload's proposal for moving this case forward, it is this: Megaupload asked for nothing more than the practical ability to mount a full and fair substantive defense, in which event it would forgive the Government's demonstrated procedural failings—and the Government not only rejected that offer out of hand, but indeed has treated it as cause for condemnation (*see* Dkt. 132 at 5 ("Defense Counsel, in a letter to the prosecution, offered to accept service of a criminal summons on behalf of its corporate client in exchange for legal and financial considerations that would likely undermine the Court's discovery and trial procedures and improperly dissipate restrained illicit proceeds.").) Thus, the only proposal discernible by Megaupload for moving this case forward on the basis of the Superseding Indictment in a way that affords Megaupload some semblance of due process and meaningful confidence that it can have its day in Court has been rejected out of hand by the Government. The Government cannot now be heard to complain that it is being held to Rule 4 or else made to face the consequences for noncompliance, with no more room for practical compromise than it would afford the criminally accused.

**IV.   THE GOVERNMENT'S INSISTENCE ON A HEARING UNDER RULE 44(C)(2) IS IMPROPER**

Finally, "[i]n the event the Court wants to seriously entertain the Defendant's request," the Government asks for "a hearing under Federal Rule of Procedure 44(c)(2)." (Dkt. 159 at 15-

16.) According to the Government, such a hearing is required because Count 8 of the Superseding Indictment involves the defendants' alleged "infringement of works from the YouTube.com platform" and because counsel for Defendant Megaupload has represented Youtube in other, unrelated matters. (*See id.* at 7.) This argument is nothing more than the Government's latest effort to disqualify Megaupload's counsel-of-choice, and to thereby deprive the company of the zealous defense to which it is entitled. Megaupload has repeatedly refuted the Government's attempts to conjure a conflict of interest where none exists and Megaupload incorporates by reference its previous arguments on this point. (*See* Dkt. 79 at 10-14; Dkt. 107 at 7-12.)[6]

The Government's reliance on Federal Rule of Criminal Procedure 44(c)(2) is particularly misplaced. Rule 44(c)(2) requires a hearing only "in Cases of Joint Representation." FED. R. CRIM. P. 44(c)(2). As Rule 44(c)(1) explains, "Joint representation occurs when: (A) two or more *defendants* have been charged jointly under Rule 8(b) or have been joined for trial under Rule 13; and (B) the defendants are represented by the same counsel, or counsel who are associated in law practice." FED. R. CRIM. P. 44(c)(1) (emphasis added). Here, Youtube is not charged as a defendant. Thus, Rule 44(c), on its face, has no bearing on an alleged (and non-existent) conflict between representation of Defendant Megaupload in this matter and representation of *non-party* Youtube in separate, unrelated matters.

---

[6] Indeed, Megaupload has directly addressed and rebutted the Government's spurious claim that counsel's unrelated representation of Youtube—whose theoretical testimony in this case, according to the Superseding Indictment, would do little more than provide historical context and would, therefore, have little probative value as to the alleged crimes (*see* Dkt. 34 ¶ 63 (alleging that Defendants reproduced copyrighted works from third-party websites, including YouTube, to create the false impression that Megavideo.com hosted primarily user generated content instead of copyright-infringing content))—would endanger the present representation of defendants. (*See* Dkt. 107 at 9-10.)

## **CONCLUSION**

For the foregoing reasons, Specially Appearing Defendant Megaupload respectfully requests that the Court dismiss the Superseding Indictment against it until such time as Megaupload may receive service and mailing in compliance with Rule 4.

Respectfully submitted,

|  |  |
|---|---|
| Ira P. Rothken<br>ROTHKEN LAW FIRM<br>3 Hamilton Landing<br>Suite 280<br>Novato, CA 94949<br>(415) 924-4250<br>(415) 924-2905 (fax)<br>ira@techfirm.net | ___/s/ Heather H. Martin_____<br>William A. Burck<br>Derek L. Shaffer<br>Heather H. Martin (VSB # 65694)<br>QUINN EMANUEL URQUHART & SULLIVAN LLP<br>1299 Pennsylvania Avenue N.W., Suite 825<br>Washington, D.C. 20004<br>(202) 538-8000<br>(202) 538-8100 (fax)<br>williamburck@quinnemanuel.com<br>derekshaffer@quinnemanuel.com<br>heathermartin@quinnemanuel.com<br><br>Carey R. Ramos<br>Robert L. Raskopf<br>Andrew H. Schapiro<br>QUINN EMANUEL URQUHART & SULLIVAN LLP<br>51 Madison Avenue, 22nd Floor<br>New York, N.Y. 10010<br>(212) 849-7000<br>(212) 849-7100<br>careyramos@quinnemanuel.com<br>robertraskopf@quinnemanuel.com<br>andrewschapiro@quinnemanuel.com<br><br>*Counsel for Defendant Megaupload Limited* |

## CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2013, the foregoing REBUTTAL MEMORANDUM IN SUPPORT OF RENEWAL OF SPECIALLY APPEARING DEFENDANT MEGAUPLOAD LIMITED'S REQUEST FOR DISMISSAL OF THE SUPERSEDING INDICTMENT WITHOUT PREJUDICE was filed and served electronically by the Court's CM/ECF system upon all registered users.

      /s/ Heather H. Martin      
Heather H. Martin (VSB # 65694)
QUINN EMANUEL URQUHART &
SULLIVAN LLP
1299 Pennsylvania Avenue N.W., Suite 825
Washington, D.C. 20004
(202) 538-8000
(202) 538-8100 (fax)
heathermartin@quinnemanuel.com