# EXHIBIT 1



**U.S. Department of Justice**

Criminal Division

---

*Office of the Assistant Attorney General*                    *Washington, D.C. 20530*

October 25, 2012

The Honorable Reena Raggi
Chair, Advisory Committee on the Criminal Rules
704S United States Courthouse
225 Cadman Plaza East
Brooklyn, NY 11201-1818

Dear Judge Raggi,

  The Department of Justice recommends amendments to Rule 4 of the Federal Rules of Criminal Procedure to permit the effective service of a summons on a foreign organization that has no agent or principal place of business within the United States. We view the proposed amendments to be necessary in order to effectively prosecute foreign organizations that engage in violations of domestic criminal law.

  First, we recommend that Rule 4 be amended to remove the requirement that a copy of the summons be sent to the organization's last known mailing address within the district or principal place of business within the United States. Second, we recommend that Rule 4 be amended to provide the means to serve a summons upon an organization located outside the United States. The proposed amendments are necessary to ensure that organizations that commit domestic offenses are not able to avoid liability through the simple expedients of declining to maintain an agent, place of business and mailing address within the United States.

- - -

  When a person located abroad violates the laws of the United States, that person may be held criminally liable despite the fact the person has never set foot in the United States. *Ford v. United States*, 273 U.S. 593, 623 (1927) (exercising jurisdiction and affirming convictions of British citizens for conspiring to import liquor into United States, where some conspirators had not entered the United States); *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 922 (D.C. Cir. 1974) ("[W]hen a malefactor in State *A* shoots a victim across the border in State *B*, State *B* can proscribe the harmful conduct.").

  Organizations, such as foreign corporations, are not excepted from this principle. *See, e.g., United States v. Phillip Morris USA, Inc.*, 566 F.3d 1095, 1130-31 (D.C. Cir. 2009) (tobacco company conducted secret nicotine research abroad and participated in international organizations instrumental to perpetuation of wide-scale fraud within the United States);

The Honorable Reena Raggi
Page 2

*United States v. Inco Bank & Trust Corp.*, 845 F.2d 919, 920-21 (11th Cir. 1988) (citing *Ford*). *See also* Restatement (Second) of Conflict of Laws § 50 (1971) ("A state has power to exercise judicial jurisdiction over a foreign corporation which causes effects in the state by an act done elsewhere with respect to any cause of action arising from these effects unless the nature of these effects and of the corporation's relationship to the state makes the exercise of such jurisdiction unreasonable."). Nor is there any good reason to create such an exception; organizations, by their very nature, may facilitate collective criminal action among individuals, thereby posing a greater threat than a lone actor. Indeed, the Supreme Court has explained that there is a compelling need to punish the sort of collective criminal action an organization may foster:

> [C]ollective criminal agreement – partnership in crime – presents a greater potential threat to the public than individual delicts. Concerted action both increases the likelihood that the criminal object will be successfully attained and decreases the probability that the individuals involved will depart from their path of criminality. Group association for criminal purposes often, if not normally, makes possible the attainment of ends more complex than those which one criminal could accomplish. Nor is the danger of a conspiratorial group limited to the particular end toward which it has embarked. Combination in crime makes more likely the commission of crimes unrelated to the original purpose for which the group was formed.

*Callanan v. United States*, 364 U.S. 587, 593-94 (1961).

When the Federal Rules of Criminal Procedure entered into force in March 1946, organizations, including corporations, were rarely charged as defendants in and of themselves. Organizations, such as domestic corporations, were established, conducted activities, and expectedly maintained a presence in the United States. Organizational leadership generally included an officer, a managing or general agent, or another agent appointed or legally authorized to receive service of process. Use of mail was ordinary. Rule 4(c) – former Rule 9(c) – regarding serving a summons on an organization reflected these realities and imposed a duty on the government to serve the summons on an individual, such as an officer or agent – the delivery requirement – and to mail the summons to the organization's last known address within the district or its principal place of business in the United States – the mailing requirement. In practice, neither the accused nor the government received "an undue advantage over the other" with the inclusion of the delivery and mailing requirements. New York University School of Law Institute, *Federal Rules of Criminal Procedure, With Notes and Proceedings*, at iv (1946).

The environment that influenced the original drafters of the Federal Rules of Criminal Procedure no longer exists. The economy is global. Electronic communications continue to displace ordinary mail. Organizations can maintain no office or agent in the United States, yet

The Honorable Reena Raggi
Page 3

conduct both real and virtual activities here. This new reality has affected federal criminal practice fundamentally. Indeed, court decisions show that a growing class of organizations, particularly foreign corporations, has gained "an undue advantage" over the government relating to the initiation of criminal proceedings.

While foreign corporations and other organizations may be punished for violations of United States law, even if they have not established a formal presence in the United States, Rule 4 repeatedly has been construed to substantially impair prosecution of foreign organizations – simply because they do not have an agent or maintain a mailing address within the United States. For example, in *United States v. Johnson Matthey Plc*, No. 2:06-CR-169 DB, 2007 WL 2254676, at *1 (D. Utah, Aug. 2, 2007), the defendant organization, Johnson Matthey Plc, was charged with, among other things, conspiring with others to discharge contaminated wastewater at a Salt Lake City facility and concealing this illegal activity.[1] The defendant organization was incorporated under the laws of England and Wales, with a principal place of business in London. *Id.*

In assessing the government's efforts to serve a summons on the defendant organization, the court explained that Rule 4(c)(3)(C) contains two requirements: first, that the summons be served on an officer or agent – a service requirement – and second, that a copy of the summons be mailed to the organization's last known address within the district or its principal place of business in the United States – a mailing requirement. *Johnson Matthey Plc*, 2007 WL 2254676 at *1. The government initially attempted to satisfy the latter requirement by sending the summons to two locations: a refinery as well as an office operated by a U.S.-based wholly-owned subsidiary of the defendant (Johnson Matthey, Inc.). *Id.*

The court decided that the mailing of the summons to both locations was insufficient to satisfy Rule 4 because under established law, service of a summons on a subsidiary does not constitute service on the parent corporation. *Johnson Matthey Plc*, 2007 WL 2254676 at *1.[2] Thereafter, the government renewed its efforts to comply with the summons requirement by, among other things, sending a copy of the summons via Federal Express to defendant Johnson Matthey Plc's legal department in London. *Id.* at *2. Although the government argued that the defendant had "ample notice" that proceedings had been initiated against it, the court explained that "ample notice" simply was not sufficient:

---

[1] *See Johnson Matthey Plc*, No. 2:06-CR-169 (D. Utah) [Docket #47].

[2] Several courts have ruled that service of process on a subsidiary is insufficient to constitute service on the parent, if corporate formalities are observed. *E.g., Davies v. Jobs & Adverts Online Gmbh*, 94 F. Supp. 2d 719, 722-23 (E.D. Va. 2000) ("[S]ervice of process on a foreign defendant's wholly owned subsidiary is not sufficient to effect service on the foreign parent so long as the parent and the subsidiary maintain separate corporate identities.").

The Honorable Reena Raggi
Page 4

> While the government has served Johnson Matthey's Salt Lake Refinery; Johnson Matthey, Inc. in Wayne, PA; and to Johnson Matthey PLC's legal department in London, none of those locations qualify under the rule as "the organization's last known address within the district or to its principal place of business elsewhere in the United States." JM Plc has not been shown to be present in the District of Utah and does not now have, nor has it ever had, an address in the District, or a place of business within the United States.

*Id.* Accordingly, the court granted the defendant's motion to quash the summons. In doing so, the court suggested that service might be accomplished by resorting to the Mutual Legal Assistance Treaty between the United States and the United Kingdom, *id.*, but did not explain how the treaty would enable the United States to comply with Rule 4's requirement that the organization be served at its principal place of business within the United States.[3]

Recently, another court, relying in part upon the reasoning of *Johnson Matthey*, granted a foreign organization's motion to quash a summons. In *United States v. Pangang Group Co. Ltd.*, No. CR 11-00573 JSW, 2012 WL 3010958, at *1 (N.D. Cal., July 23, 2012), four foreign organizations, one of them a state-owned enterprise of the People's Republic of China (collectively, the "Pangang Defendants"), were charged with participating in a conspiracy to commit economic espionage, conspiracy to commit theft of trade secrets, and attempted economic espionage. As in *Johnson Matthey*, the Pangang Defendants appeared specially to challenge the government's service of summons on them. The government attempted to establish, through the submission of various affidavits, that its service of the summons on a United States subsidiary of the Pangang Defendants was sufficient for purposes of Rule 4's first requirement that the summons be served on an authorized agent of the organization. *Id.* at *1-9.[4] However, for all but one defendant, the court found that the government had not proven that the United States subsidiary was, in fact, a general agent of the Pangang Defendants, and therefore the court quashed the summons as to three of the four foreign organizations. *Id.*

Furthermore, the court concluded that the summons as to all Pangang Defendants could be quashed on grounds that the government had failed to comply with Rule 4's mailing

---

[3] In a different context, the Third Circuit has rejected an attempt to effectuate service of process via an international treaty when the applicable rule required service to occur within the "forum state." *See DeJames v. Magnifience Carriers, Inc.*, 654 F.2d 280, 287-90 (3d Cir. 1981).

[4] Among other things, the government pointed to evidence demonstrating that the Pangang Defendants (i) used the United States subsidiary to conduct their operations in the United States; (ii) sent employees from China to staff the operations of the United States subsidiary; and (iii) paid the legal fees of employees who became subjects of the government's investigation in the United States. *See United States v. Pangang Group Co., Ltd.*, No. CR 11-0573 JSW (N.D. Cal. Apr. 19, 2012) [Docket #122 at 3-13].

The Honorable Reena Raggi
Page 5

requirement. *Id.* at *9-14. Although the government argued that mailing the summons to a foreign organization's general agent located in the United States was sufficient to comply with Rule 4, in that the foreign organization had ample notice of the legal proceedings, the court rejected this argument because it was "not persuasively supported" by criminal cases considering the application of Rule 4. *Id.* at *10 (citing *Johnson Matthey*). While the court allowed for the possibility that the mailing requirement of Rule 4 might be satisfied by sending the summons to a foreign organization's general agent in the United States, if the general agent was nothing more than the "alter ego" of the foreign organization, the court concluded that the government had not made that showing. *Id.* at *11-13.[5] Similarly unavailing was the government's argument that it could not effectuate service through its Mutual Legal Assistance Agreement with China, based on the government's considered view that China would not effectuate service on any Pangang Defendant pursuant to the terms of the international agreement. *Id.* at *14.[6]

We are concerned that other courts will adopt the reasoning of *Johnson Matthey*, *Pangang Group* and similar cases – reasoning we believe is contrary to sound public policy and the purpose of the rules. Rule 4 can be and has been read to preclude jurisdiction in criminal cases against criminal organizations, even when they are provided with ample notice of the proceedings, merely because the criminal organizations do not have an agent or a postbox in the United States. Indeed, Rule 4 may act as an impediment to prosecution despite the fact that a defendant organization maintains extensive contacts with the United States. In *Johnson Matthey*, the defendant organization conspired to discharge contaminated wastewater in the United States; in *Pangang Group*, the foreign organizations conducted business in the United States through their subsidiary, which they staffed with their own employees. Accordingly, the United States may be faced with the anomalous result that a private civil litigant will be able to pursue an action against an organization while the government remains helpless to vindicate the laws of the United States through a corresponding criminal proceeding.[7]

---

[5] The government attempted to rely on the same "alter ego" theory to overcome the hurdles posed by Rule 4 in another case, *United States v. Alfred L. Wolff GmbH*, No. 08 CR 417, 2011 WL 4471383, at *4-8 (N.D. Ill. Sept. 26, 2011), but similarly failed to persuade the court that a United States co-defendant was merely an alter ego of several foreign organizations. Piercing the corporate veil is challenging, because courts have required the government to carry the "heavy burden" of proving that the corporate form is a sham and merely exists as a vehicle for perpetrating a fraud. *Id.* at *4-5 (citations omitted).

[6] The court did not consider whether service of the summons pursuant to this agreement would satisfy Rule 4 in any event. *See* note 3, *supra*.

[7] Another example is provided by a pending case, *United States v. Dotcom*, No. 1:12-CR-3 (E.D. Va. 2012). A grand jury returned an indictment against foreign organization Megaupload Limited and other defendants on racketeering, copyright infringement and money laundering charges. In response, Megaupload Limited – a foreign organization that has an extensive presence in the United States (it allegedly leased more than 1,000 servers in the United States, facilitated the distribution of illegally reproduced works throughout the United States, and has caused damages in excess of $500 million to victims) – has specially appeared and argued that it is immune from prosecution in the United States simply because it does not have an agent or mailing address in the United States: "Megaupload does not have an office in the United States, nor has it had one previously. Service of a criminal

The Honorable Reena Raggi
Page 6

From the Department's perspective, Rule 4(c) should be amended to ensure that the means of service reflects the realities of today's global economy, electronic communication, and federal criminal practice. A defendant organization should no longer find refuge in the mailing requirement, when the Rule's core objective – notice of pending criminal proceedings – is established.

The Department examined the service provisions of the Federal Rules of Civil Procedure to determine to what extent one or more of the provisions might enhance, if at all, federal criminal practice. The Department reviewed the proceedings of the Institute that reviewed the initial set of the Federal Rules of Criminal Procedure, along with myriad civil and criminal cases concerning service. In fashioning the proposed amendments, we decided that elements of the Federal Rules of Civil Procedure could provide a basis for the proposed amendments, but disfavored direct incorporation of those rules. The greater public aims of criminal process – condemnation of specific acts and deterrence – are distinct from those in civil process – private damages. This distinction justifies a higher burden on the government for serving a criminal defendant.

For that reason, the Department continues to favor personal delivery on "an officer, to a managing or general agent, or to another agent appointed or legally authorized to receive service of process" to put an organization – domestic or foreign – on notice that criminal charges have been filed. We propose, however, removing the mailing requirement from the rule. If delivery is not possible on "an officer, to a managing or general agent, or to another agent appointed or legally authorized to receive service of process" of a foreign organization, then our proposal provides five additional options reasonably calculated to give notice to that foreign organization.

Accordingly, we recommend the following changes to Rule 4:

**Rule 4. Arrest Warrant or Summons on a Complaint**

\* \* \*

(c) EXECUTION OR SERVICE, AND RETURN.

> (1) *By Whom.* Only a marshal or other authorized officer may execute a warrant. Any person authorized to serve a summons in a federal civil action may serve a summons.

---

summons on Megaupload is therefore impossible, which forecloses the government from prosecuting Megaupload." *United States v. Dotcom*, No. 1:12-CR-3 (E.D. Va. 2012) [Docket #115 at 1, 6] (citing *Johnson Matthey*, 2007 WL 2254676, at \*2). A similar defense is not available under Rule 4 of the Federal Rules of Civil Procedure.

The Honorable Reena Raggi
Page 7

(2) *Location.* A warrant may be executed, or a summons served, within the jurisdiction of the United States or anywhere else a federal statute authorizes an arrest. <u>A summons may also be served at a place not within a judicial district of the United States.</u>

(3) *Manner.*

(A) A warrant is executed by arresting the defendant. Upon arrest, an officer possessing the original or a duplicate original warrant must show it to the defendant. If the officer does not possess the warrant, the officer must inform the defendant of the warrant's existence and of the offense charged and, at the defendant's request, must show the original or a duplicate original warrant to the defendant as soon as possible.

(B) A summons is served on an individual defendant:

(i) by delivering a copy to the defendant personally; or

(ii) by leaving a copy at the defendant's residence or usual place of abode with a person of suitable age and discretion residing at that location and by mailing a copy to the defendant's last known address.

(C) A summons is served on an organization <u>at a place within a judicial district of the United States</u> by delivering a copy to an officer, to a managing or general agent, or to another agent appointed or legally authorized to receive service of process. ~~A copy must also be mailed to the organization's last known address within the district or to its principal place of business elsewhere in the United States.~~

(D) <u>A summons is served on an organization at a place not within a judicial district of the United States:</u>

<u>(i) by delivering a copy to an officer, to a managing or general agent, or to another agent appointed or legally authorized to receive service of process, in a manner authorized under the laws of the foreign jurisdiction where the officer or agent to be served is located, or</u>

<u>(ii) by other means reasonably calculated to give notice, including</u>

<u>a) a stipulated means of service;</u>

<u>b) a means that a foreign authority undertakes in response to a letter rogatory or letter of request;</u>

<u>(c) a means that a foreign authority undertakes in response to a request submitted under an applicable international agreement;</u>

<u>(d) a means otherwise permitted under an applicable international agreement; or</u>

<u>(e) other means upon request of an attorney for the government, as the court orders.</u>

Rule 4(c)(2) would be amended to allow service of a summons outside the United States. In particular, with the amendment, organizations could now be served in the United States or "at

The Honorable Reena Raggi
Page 8

a place not within a judicial district of the United States." This language follows the language for jurisdiction set forth in the Federal Rules of Civil Procedure.

Rule 4(c)(3)(C) would be amended to focus exclusively on an organization at a place within a judicial district of the United States. As noted above, the Department suggests mirroring this jurisdictional language of the Federal Rules of Civil Procedure. Under the amended language, notice involving domestic organization would still require personal service. The amendment would remove the mailing requirement for service of a summons on a domestic organization.

Delivery of the summons on an organization outside the United States – at a place not within a judicial district of the United States – would now be addressed in a new Rule 4(c)(3)(D). The new subsection (D)(i) would provide that a copy of the summons must be delivered to an officer, a managing or general agent, or another agent appointed or legally authorized to receive service of process. Our aim is to preserve personal service to meet notice obligations, if possible. As a result, subsection (D)(i) mirrors the language concerning personal service as expressed in (C), but places an additional obligation to provide service in a "manner authorized under the laws of the foreign jurisdiction" where the individual to be served is located.

The new subsection (D)(ii) would provide five distinct alternatives that are reasonably calculated to provide notice. Subsection (D)(ii)(a) acknowledges that the government and the defendant corporation can stipulate to the means of service. An assumption of the Federal Rules of Civil Procedure is that parties are expected to stipulate to the terms of service, given the presumption of waiver. The Department thinks organizational defendants should have the option to stipulate to service, and therefore we include this option in the proposed amendment. Subsection (D)(ii)(b) focuses on those instances when the United States government may not have an applicable treaty with the country where the defendant corporation is located or conducts business. In those instances, the government may ask the court to issue a letter rogatory or the government may send a letter of request to the foreign government. Subsection (D)(ii)(c) focuses on those instances when the government may have a treaty relationship with the foreign government where the defendant corporation is located or conducts business and the treaty provides for service of process. In either case – (D)(ii)(b) or (c) – it is important to note that the foreign government might in fact provide personal service, the Department's preferred method of service.

Subsection (D)(ii)(d) encompasses those instances when an applicable international agreement may not articulate a basis for service, though a means the government proposes is otherwise permissible under the agreement. As an example, a mutual legal assistance treaty often includes a provision concerning service, though specific modes of service are not identified. These treaties permit the requesting state to propose a mode of service in conformity with its domestic law and, by the terms of the treaty, often obligate the requested state to execute a request as presented unless following the requesting state's law would violate the requested

The Honorable Reena Raggi
Page 9

state's law. This provision is also prospective, acknowledging that future agreements may also permit service.

The final subsection (D)(ii)(e) is intended to permit the government to fashion a mode of service that is reasonably calculated to provide notice and seek the court's endorsement of the mode proposed.

- - -

These amendments to Rule 4 are designed to ensure that foreign organizations do not avoid criminal prosecution in the United States merely because the organization chooses not to keep an agent and mailing address in the United States. Moreover, in those instances where foreign organizations cannot be served within a judicial district, the amendment provides a mechanism for alternate service. These alternate means of service are already available to civil litigants under Rule 4 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 4(f), (h)(2).[8] Accordingly, we believe these procedures are sufficient to give defendant organizations reasonable notice of criminal actions pending against them.

We appreciate your assistance with this proposal and look forward to working with the Committee on this issue.

Sincerely,

Lanny A. Breuer
Assistant Attorney General

cc: Professor Sara Sun Beale, Reporter
Professor Nancy J. King, Reporter

---

[8] The proposed amendment to Rule 4 would thus update the Federal Rules of Criminal Procedure so that the summons provision once again resembles the summons provision found in the Federal Rules of Civil Procedure. *See* Fed. R. Crim. P. 4 (advisory committee note, 1944 adoption) ("Service of summons under the rule is substantially the same as in civil actions under Federal Rules of Civil Procedure, Rule 4(d)(1) . . . .").