# Exhibit 1

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PANGANG GROUP COMPANY, LTD.<br>PANGANG GROUP STEEL VANADIUM &<br>TITANIUM COMPANY, LTD.<br>PANGANG GROUP TITANIUM<br>INDUSTRY, LTD and<br>PANGANG GROUP INTERNATIONAL<br>ECONOMIC & TRADING COMPANY,<br><br>Defendants. | No. CR 11-00573-7 JSW<br>No. CR 11-00573-8 JSW<br>No. CR 11-00573-9 JSW<br>No. CR 11-00573-10 JSW<br><br>**ORDER GRANTING, IN PART,<br>AND DENYING AS MOOT, IN<br>PART, SPECIALLY APPEARING<br>DEFENDANTS' SECOND<br>MOTION TO QUASH SERVICE<br>OF SUMMONSES** |

**INTRODUCTION**

This matter comes before the Court upon consideration of the Second Motion to Quash Service of Summonses, filed by specially-appearing defendants, Pangang Group Company, Ltd. ("Pangang Group"), Pangang Group Steel Vanadium & Titanium Company, Ltd. ("PGSVTC"), Pangang Group Titanium Industry, Ltd. ("Titanium"), and Pangang Group International Economic & Trading Company ("PIETC") (collectively, the "Pangang Defendants").

The Court has considered the parties' papers, relevant legal authority, the record in this case, and it has had the benefit of oral argument. The Court HEREBY GRANTS, IN PART, AND DENIES AS MOOT, IN PART the motion to quash.

//

//

# BACKGROUND

**A.  Procedural History.**

On February 7, 2012, a grand jury issued a superseding indictment, in which it charged the Pangang Defendants with: (1) conspiracy to commit economic espionage, in violation of 18 U.S.C. Section 1831(a)(5); (2) conspiracy to commit theft of trade secrets, in violation of 18 U.S.C. Section 1832(a)(5); (3) attempted economic espionage, in violation of 18 U.S.C. Section 1831(a)(3)-(4). (Docket No. 64, Superseding Indictment, ¶¶ 12-54, 57-58, 90-95.)

The Pangang Defendants moved to quash service of the summonses, and, on July 23, 2012, the Court granted their motion. *See generally United States v. Pangang Group Co., Ltd.*, 879 F. Supp. 2d 1052 (N.D. Cal. 2012) ("*Pangang Group*"). On December 6, 2012, the United States filed a Notice Regarding Service of Summonses on Pangang Defendants, in which it outlined the subsequent steps it had taken to effectuate service on the Pangang Defendants. (Docket No. 210 ("Notice").) The Court held a status hearing on December 14, 2012, and the Pangang Defendants stated they intended to move to quash. (Docket No. 215.)[1] On February 7, 2013, the Pangang Defendants filed their motion.

**B.  Factual Background.**

The Court set forth the basic facts underlying the charges against the Pangang Defendants in its Order granting the motion to quash, and it shall not repeat those facts here. *See Pangang Group*, 879 F. Supp. 2d 1055-56. Rather, the Court shall address the United States' subsequent efforts to effectuate service of process and the facts proffered by the Pangang Defendants in response to those efforts.

**1.  PIETC.**

In March 2003, PIETC hired Hu Shaocong to run its sales office in Petaluma, California. (*See* Notice, Ex. 1 (Declaration of Hu Shaocong ("Hu Decl."), ¶ 2); Docket No. 242, Declaration of Song Chengbin ("Song Decl."), ¶¶ 3, 5.) According to the record, PIETC registered as a foreign corporation with the California Secretary of State in August 2003, and it

---

[1]  Although the Grand Jury issued a Second Superseding Indictment on March 13, 2013, it did not charge the Pangang Defendants with any new offenses. (*See* Docket No. 269.)

2

1 operated the Petaluma office from 2003 through December 2008. (Song Decl., ¶ 2.) When it
2 initially registered as a foreign corporation, PIETC's office was located at 1310 Redwood Way,
3 Suite 220, Petaluma, California, 94954 (the "Redwood Way address"). (Song Decl., ¶ 4; Hu
4 Decl., ¶ 4.) In 2007, PIETC changed its address to 775 Baywood Drive, Suite 214A, Petaluma,
5 California, 94954 (the "Baywood Drive address"). (Song Decl., ¶ 4.) Mr. Hu attests that he
6 also registered as PIETC's agent for service of process, using an address of 906 Hogwarts
7 Circle, Petaluma, California, 94954 (the "Hogwarts Circle address"). (Hu Decl., ¶ 4.) PIETC
8 denies that it ever registered the Hogwarts Circle address with the California Secretary of State.
9 (Song Decl., ¶ 4.)

10 On December 18, 2008, PIETC filed a Certificate in which it surrendered its right to
11 transact intrastate business in California and revoked its designation of agent for service of
12 process in California. (Song Decl., Ex. A.) In that Certificate, PIETC consented "that process
13 against it in any action upon any liability or obligation incurred within the State of California
14 prior to the filing of this Certificate ... may be served upon the California Secretary of State."
15 (*Id.*, Ex. A at ¶ 3.) PIETC also stated that "[t]he post office address to which the California
16 Secretary of State may mail copies of any process against the corporation that is served upon
17 the Secretary of State is Dadukou, Panzhihua, Sichuan, China, 617067." (*Id.*, Ex. A at ¶ 4.)

18 On September 20, 2012, the United States mailed copies of the summons to PIETC at
19 the Hogwarts Circle address and to the Redwood Way address. (Notice ¶ 1, Exs. 2 & 3). Each
20 of these summons directed PIETC to appear on March 1, 2012 at 9:30 a.m., in Courtroom E of
21 this Court. (*Id.*) On February 27, 2013, at the Government's request, Magistrate Judge James
22 issued new summonses directing PIETC to appear on March 27, 2013 at 9:30 a.m., in
23 Courtroom E of this Court. (Docket No. 260-1, Declaration of John Hemann ("Hemann
24 Decl."), ¶ 2.)[2]

---

[2] On February 28, 2013 the United States mailed copies of the re-issued summonses to the Hogwarts Circle, Redwood Way and Baywood Drive addresses, and an agent of the Federal Bureau of Investigation ("FBI") delivered a copy of the re-issued summons to the California Secretary of State. (*Id.*, ¶¶ 2-3, Ex. A.) The United States argues that this delivery provides an additional basis on which to conclude it has satisfied the delivery requirement to PIETC. (*See* Docket No. 260, Gov. Opp. Br. at 9:17-15.) The Court

3

### 2. Pangang Group.

According to Mr. Hu, Pangang Group hired him in 2004 "to develop customers and perform other services for" it and for PIETC in the United States and the Americas. (Hu Decl., ¶ 2.) He further attests that "[d]uring the time I worked for the company, PIETC was the agent of Pangang Group for overseas business transactions, including transactions with companies in the United States." (*Id.* ¶ 3.) Mr. Hu also attests that, in 2007, he went to China to meet with Pangang Group and PIETC employees "and proposed that they set up a subsidiary that would perform the same duties I had been performing. After that meeting, Pangang Group set up a subsidiary in the United States called Pan America, Inc. (PAI)." (*Id.* ¶ 7.)

According to PIETC and Pangang Group, Mr. Hu was not a Pangang Group employee. (Song Decl., ¶ 8; Docket No. 241, Declaration of Liu Yanxiong ("Liu Decl."), ¶ 2.) Further, according to Mr. Liu, head of Pangang Group's Personnel and Human Resources departments, Pangang Group has never employed anyone within the United States, has not had any office or operations in the United States, and never received mail or conducted business from the Hogwarts Circle or Redwood Way addresses. (Liu Decl., ¶¶ 3-4.) The record does include a letter from Mr. Hu to PIETC, in which Mr. Hu extended an invitation to Mr. Zhang Chun to "attend a series of training and integration meetings to be held at Pangang Group's U.S. Commercial office located in Petaluma, California," which used the Baywood Drive address. (Docket No. 134, Declaration of Peter B. Axelrod, Ex. E at 000024.)

On September 20, 2012, the United States mailed the Pangang Group summonses to the Hogwarts Circle and Redwood Way addresses. Each of these summons directed Pangang Group to appear on March 1, 2012, at 9:30 a.m., in Courtroom E of this Court. (Notice, ¶ 2, Exs. 4 and 5.) On February 27, 2013, at the United States's request, Magistrate Judge James issued new summonses directing Pangang Group to appear on March 27, 2013 at 9:30 a.m., in Courtroom E of this Court. (Hemann Decl., ¶ 2.) On February 28, 2013, the United States

---

already concluded that the United States satisfied the delivery requirement. Therefore, it does not reach this argument.

4

1 mailed the re-issued summonses to Pangang Group at the Hogwarts Circle, Redwood Way, and
2 Baywood Drive addresses. (*Id.*, ¶ 3, Ex. A.)

### 3. Titanium.

4 On or about August 8, 2012, Bella Zhou, who identified herself as an employee of
5 "Pangang Titanium Industry Co., Ltd.," sent an email to Sandra Davis, a DuPont employee and
6 the General Chair of the Society of Plastics Engineers Color and Appearance Division RETEC,
7 requesting information about registering for an upcoming conference (the "Society of Plastics
8 conference"). (Notice, ¶ 3, Exs. 6-7.) Ms. Zhou followed up with Ms. Davis and indicated that
9 she and "Hao Xie, General Manager of Tinox Chemical LLC ["Tinox"] (Chicago Branch Office
10 of Pangang Titanium Industry Co., Ltd.)" would be attending. She also stated that "Pangang
11 Titanium is a state-owned company" and, because of strict rules relating to foreign currency
12 remittance, "[t]o fasten [*sic*] up the process, we will arrange the payment through our logistic
13 partner 'Westunion Chemical Corporation.'" (*Id.*, Ex. 7 at DUP 0001682.) Ms. Zhou now
14 attests that she is employed by Chengdu West Union Chemical Corporation ("West Union") and
15 has never worked for "Pangang Titanium Industry Company, Ltd." (Docket No. 244,
16 Declaration of Zhou Xia ("Zhou Decl."), ¶¶ 2, 5.)

17 On October 1, 2012, the FBI delivered a copy of the summons for Titanium to Mr. Xie
18 at the Society of Plastics conference in Louisville, Kentucky. (Notice, Ex. 9.) That summons
19 directed Titanium to appear on March 1, 2012 at 9:30 a.m. in Courtroom E of this Court. (*Id.*)
20 On November 20, 2012, the United States mailed a copy of the summons for Titanium to
21 Tinox's address in Chicago, Illinois. (*Id.*, Ex. 10.)

22 According to the Pangang Defendants, Tinox and Mr. Xie are not affiliated with
23 Titanium. Rather, Pangang Titanium Industry Co. Ltd. is an entirely different company.
24 (Docket No. 240, Declaration of Lai Yizhong ("Li Decl."), ¶¶ 1-15; Docket No. 243,
25 Declaration of Wang Gang ("Wang Decl."), ¶¶ 2-8; Zhou Decl., ¶¶ 1-2, 5-9.) According the
26 signature block on Ms. Zhou's email, "Pangang Titanium Industry Co., Ltd." is located at
27 Pangang Jingmao Mansion, No. 266 Shawan Road, Chengdu City, China, 61031, an address
28 which is associated with both PIETC and Pangang Group. (*See, e.g.,* Notice, Ex. 7 at DUP

5

1 0001684; Docket No. 135-1, Declaration of Phil Poce, Ex. A; Docket No. 134, Declaration of
2 Peter B. Axelrod, Ex. E at 000013, Ex. F at 000016.) Ms. Zhou attests that she signed her
3 emails with that address, but she claims it is not her address nor that of West Union. (Zhou
4 Decl., ¶ 8.) When asked how they accounted for this fact, the Pangang Defendants argued that
5 "Pangang Titanium Industry Co., Ltd." was an imposter posing as Titanium.

6 The Court shall address specific additional facts as necessary in the remainder of this
7 Order.

## ANALYSIS

9 The Pangang Defendants again move to quash service of the summons on the basis that
10 the United States failed to comply with the requirements of Federal Rule of Criminal Procedure
11 4(c) ("Criminal Rule 4"). The United States agrees that it bears the burden of demonstrating
12 that service was proper. *See, e.g., Pangang Group*, 879 F. Supp. 2d at 1056-67 (citing *United*
13 *States v. Alfred L. Wolff GMBH*, 2011 WL 4471383, at \*4, \*8 (N.D. Ill. Sept. 26, 2011) ("*Alfred*
14 *L. Wolff*")).

15 Federal Rule of Criminal Procedure 4 provides, in pertinent part, that "[a] summons is
16 served on an organization by delivering a copy to an officer, to a managing or general agent, or
17 to another agent appointed or legally authorized to receive service of process. A copy must also
18 be mailed to the organization's last known address within the district or to its principal place of
19 business elsewhere in the United States." Fed. R. Crim. P. 4(c). The Court refers to the former
20 requirement as the "delivery requirement" and refers to the latter requirement as the "mailing
21 requirement."

22 **1. PGSVTC.**

23 The United States has not offered any further evidence or argument to support a finding
24 that it has served PGSVTC. Indeed, there are no new summonses in the record that pertain to
25 PGSVTC. Because the Court previously quashed service of the only outstanding summons on
26 PGSVTC, the Court DENIES AS MOOT PGSVTC motion to quash.

27 //
28 //

6

### 2. Titanium.

In its Notice, the United States asserted that it had satisfied both the delivery and mailing requirements as to Titanium.[3] In its opposition to the motion to quash, the United States asserted that it is not in a position to refute Titanium's evidence that "Pangang Titanium Industry Co., Ltd." is a separate company and that Tinox is not affiliated in any way with Titanium. Rather, it has maintained its position that it properly served Titanium by delivering the summons to PAI, which the United States contended is Titanium's general agent.

Titanium and "Pangang Titanium Industry Co., Ltd." do share extremely similar names. The Court also is mindful of the fact that Ms. Zhou chose to use an address on her emails that is associated with PIETC and Pangang Group. Although neither Mr. Wang nor Ms. Zhou admit that their company is an "imposter," the Court shall not disregard those declarations in their entirety.

Therefore, on this record, the Court concludes that the United States has not presented evidence from which the Court could find that it served Titanium in compliance with Rule 4(c)(3)(C). Accordingly, the Court GRANTS Titanium's motion to quash.

### 3. Pangang Group.

The United States argues that it has satisfied the mailing requirement as to Pangang Group by mailing copies of the summonses to the Hogwarts Circle, Redwood Way, and Baywood Drive addresses. At the hearing, the United States, in response to the Court's inquiry, asserted that the facts set forth in Mr. Hu's declaration also would support a finding that PAI was Pangang Group's agent. The Court finds no basis on which to revisit its conclusion that the United States has not met its burden to show that PAI was acting as Pangang Group's agent or that PAI is Pangang Group's alter-ego. Therefore, the United States still has not met its burden to show it has satisfied the delivery requirement.

---

[3] The United States did not re-issue the summonses to Titanium. Thus, the date by which Titantium was to appear had passed by the time the United States purportedly served Titanium.

7

1    For that reason, the Court GRANTS the motion to quash as to Pangang Group, and it
2 does not reach the question of whether the United States complied with the mailing
3 requirement.

4    **4.    PIETC.**

5    PIETC also moves to quash on the basis that the United States has not satisfied the
6 mailing requirement. The United States raises two arguments in opposition to PIETC's motion,
7 which the Court addresses in turn. First, the United States argues that the mailing requirement
8 is not jurisdictional and is not required to properly effect service. In support of this argument,
9 the United States relies on *United States v. Kolon Industries, Inc.*, – F. Supp. 2d –, 2013 WL
10 682896 (E.D. Va. Feb. 22, 2013).

11   In the *Kolon* case the defendant was a Korean corporation, which was charged with
12 obstruction of justice and theft of trade secrets. *Id.*, 2013 WL 682896, at *1, *4. It was
13 undisputed that the defendant did not have a "last known address" within the Eastern District of
14 Virginia or a principal place of business within the United States. *Id.* at *3. The court began by
15 looking to the text of Rule 4(c)(3)(C). Because the delivery requirement contained the term
16 "served," whereas the mailing requirement did not, the court reasoned that "a textual reading of
17 Rule 4(c)(3)(C) in its entirety teaches that service under the rules is to be accomplished as
18 prescribed in the first sentence of the Rule. And, the second sentence merely provides an
19 additional means of providing notice to the organization that is to be served pursuant to the first
20 sentence." *Id.*, at *5-*6.

21   The court also reasoned that a "straight-forward textual reading of Rule 4(c)(3)(C) is
22 consistent with, indeed fully supported by, the settled canon of construction that courts have
23 'some scope for adopting a restricted rather than a literal or usual meaning of [a statute's] words
24 where acceptance of that meaning would lead to absurd results or thwart the obvious purpose of
25 the statute.'" *Id.*, at *5 (quoting *Helvering v. Hammel*, 311 U.S. 504, 511 (1941)) (brackets as
26 added in *Kolon*). In the *Kolon* court's view, "to read the second sentence to impose an
27 obligation that could not possibly be satisfied would produce an absurd result." *Id.*

28   > It is doubtful that Congress would stamp with approval a procedural rule
     > permitting a foreign corporate defendant to intentionally violate the laws of

this country [thereby causing harm to its citizens], yet evade the jurisdiction of United States' courts by purposefully failing to establish an address here.

*Id.*, at *6 (quoting *United States v. Dotcom*, 2012 WL 4788433, at *1 (E.D. Va. Oct. 5, 2012)) (brackets as added in *Kolon*). Therefore, the court held that the mailing requirement "is not a component of effective service of a summons. Nor is mailing a necessary prerequisite to the exercise of jurisdiction over a foreign corporation which does not have a 'last known address within the district or ... [a] principal place of business elsewhere in the United States.'" *Id.*

It is true that the mailing requirement does not use the term "serve," whereas the delivery requirement does. Further, as the *Kolon* court noted, "'courts must presume that a legislature says in a statute what it means and means in a statute what it says there.'" *Kolon*, 2013 WL682896, at *5 (quoting *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992)). The *Kolon* court, however, did not fully address the fact that the mailing requirement uses the term "must," which connotes a mandatory requirement, rather than a hortatory or precatory requirement. The Court, therefore, assumes that the drafters intended the mailing requirement to be a mandatory component of effective service. This interpretation is reinforced by the fact that the admonition that a copy of the summons must be mailed is repeated in the Advisory Committee notes. *See* Fed. R. Crim. P. 4, 2002 Amendments, advisory committee note ("Under the amended rule, in all cases in which a summons is being served on an organization, a copy of the summons must be mailed to the organization."). Further, when one examines the text of Rule 4, in its entirety, it is apparent that the drafters knew how to account for contingencies. *See, e.g.,* Fed. R. Crim. P. 4(b)(1)(A), 4(c)(3)(A).

The Court also notes that Rule 4 provides that an individual defendant is served either by "delivering a copy to the defendant personally," or "by leaving a copy at the defendant's residence or usual place of abode with a person of suitable age and discretion residing at that location and by mailing a copy to the defendant's last known address." Fed. R. Crim. P. 4(c)(3)(B)(i)-(ii). These provisions mirror the requirements of Rule 4(c)(3)(C). Specifically, delivering a copy of a summons to an officer of the organization is akin to personal delivery on an individual defendant. Similarly, delivering a copy of the summons to any of the agents

9

1 referenced in the rule is akin to delivering a copy of the summons to a person of "suitable age
2 and discretion." In the latter case, it is logical to require that a summons be mailed to a
3 defendant, whether an individual or an organization, as a means of providing a defendant
4 adequate notice of the summons.

5 For these reasons, the Court declines to follow *Kolon*. Accordingly, it finds that the
6 United States must be able to show that it has complied with the mailing requirement to effect
7 service on PIETC.[4] The United States argues that it has satisfied the mailing requirement by
8 mailing the re-issued summonses to PIETC at the Redwood Way, Baywood Drive, and
9 Hogwarts Circle addresses, each of which it contends would qualify as PIETC's "last known
10 address within" this District. The Court also finds this argument unpersuasive.

11 In 2008, when PIETC filed the Certificate surrendering its right to transact business in
12 California, it provided mailing an address in China. The Certificate of surrender is a matter of
13 public record, and there is no evidence in the record to suggest that the United States was not
14 aware that PIETC had surrendered its right to transact business in California. *Cf. Cohen v.*
15 *United States*, 297 F.2d 760, 772 (9th Cir. 1962) (discussing meaning of last known address in
16 context of Internal Revenue Code and stating that when Commissioner learns a taxpayer has
17 changed his or her address, Commissioner must use that address); *see also United States v.*
18 *Rainey*, 605 F.3d 581, 583 (10th Cir. 2010) (noting that, under Criminal Rule 49, United States
19 had mailed notice of defendant's prior convictions to defendant's last known address, a county

---

[4] Further, although the *Kolon* court relied on the *Dotcom* case to conclude that the mailing requirement was not jurisdictional, the *Dotcom* court was faced with a motion to dismiss, rather than a motion to quash service. *Dotcom*, 2012 WL 4788433, at *1. The *Dotcom* court, like the *Kolon* court, noted that the drafters did not use the term serve in connection with the mailing requirement, which "might imply that [the] mailing requirement is an additional requirement ... rather than a requirement of service." *Id.*, at *1 n.4. However, the court held only that failure to comply with the mailing requirement "does not require a result so extreme as dismissal." *Id.* The *Dotcom* court also noted that it was possible that the government could prove one of the individual defendants was an alter-ego of a corporate parent, which could permit the government to satisfy the mailing requirement. *Id.* at *2. Thus, because the court could not "find to a legal and factual certainty that the United states will be unable to serve the corporate Defendant properly," it denied the motion to dismiss without prejudice. *Id.*, at *2.

10

jail, which was the address of record with the court, where there was no indication that the United States knew defendant's address had changed).

Accordingly, the Court concludes that, as to PIETC, the United States still has not complied with the mailing requirement. Accordingly, the Court GRANTS PIETC's motion to quash.

## CONCLUSION

For the foregoing reasons, the Court GRANTS, IN PART, AND DENIES AS MOOT, IN PART, the Pangang Defendants' motion to quash. The Pangang Defendants and the United States shall appear on April 18, 2013 at 2:00 p.m., as previously scheduled, and they shall be prepared to address how they intend to proceed.

**IT IS SO ORDERED.**
Dated: April 8, 2013



JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

11