UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 1:12CR3 |
| | ) |
| KIM DOTCOM, *et al.*, | ) |
| | ) |
| Defendants | ) |

## GOVERNMENT'S RESPONSE TO LETTER OF DECEMBER 4, 2013

The government responds to the publicly filed letter of December 4, 2013 (Dkt. 186) from counsel purporting to represent Megaupload.[1] In their letter, defense counsel make both a procedural and a substantive argument. Procedurally, counsel argue that this Court erred by not consulting with them prior to issuing an <u>under seal</u> *ex parte* order;[2] substantively, counsel argue that the underlying motion was improperly granted. Both of counsel's arguments are without merit and neither warrants any further briefing. The government would ask that the Court reject the defendants' letter request.

---

[1] As the Court is aware, after receiving numerous letters to chambers by counsel purporting to represent the defendants in this matter, the Court instructed defense counsel that they only should raise "by formal motion" any matter in need of the Court's attention. *See* Letter from the Court, dated March 23, 2012.

[2] We note that the public filing of counsel's letter may violate court orders or practice in both the United States and New Zealand. The defendants are certainly aware that this Court's orders are filed <u>under seal</u> when they are marked as such and are not posted to PACER. The U.S. government sought and was authorized to provide an <u>under seal</u> copy of an order to the defendants as part of the extradition process in New Zealand. The courts in both the United States and New Zealand may want to review whether counsel's apparent choice to reveal <u>under seal</u> matters publicly was proper. The U.S. prosecution will restrict its response to provisions of the alleged order discussed in counsel's letter and expressly does not confirm that the details accurately reflect any <u>under seal</u> document.

With respect to counsel's argument that they should have been consulted regarding any victim notification motion, counsel fail to mention that they have repeatedly refused to appear in the criminal matter, nor have they even recognized this Court's jurisdiction over them. Simply, there is no counsel who represents the defendants in the criminal case before the Court. The government did, however, seek and receive permission from the Court to share an under seal order with the defendants, though it believes it was under no obligation to do so. In doing so, the government assumed that counsel would respect such an order and the practices of this Court, as well as the integrity of the process in New Zealand.

Counsel simply cannot demand that the government or the Court recognize their involvement in the criminal case and yet strategically and repeatedly refuse to be involved in the case.[3] The government has repeatedly pointed out that it is generally precluded from providing non-public information to counsel who does not represent the defendants in the criminal matter and has engaged with present counsel (and the succession of prior counsel who also claimed to represent the defendants) based only on limited exceptions ordered by the Court (notably, over the repeated and detailed objections of the government).[4]

---

[3] Much less continue to ask the Court to appear for any "limited purpose" that effectively amounts to continuous representation without being subject to the jurisdiction of the Court or subject to its practices, procedures, rules, orders, or rules of professional responsibility. The current letter is at least the sixth request to appear for "limited" purposes by counsel purporting to represent Megaupload.

[4] The government continues to believe that counsel cannot represent the defendants in this matter due to a number of conflicts of interest. Quinn Emanuel Urquhart & Sullivan, LLP's client Google, for example, is one of the victims who is expected to receive notification. Such information will contain, *inter alia*, specific and detailed evidence of the defendants' alleged plans to willfully reproduce and distribute the entirety of the copyrighted content available on Google's Youtube.com platform for their private financial gain. For Quinn Emanuel to oppose such notification, as purported counsel for Kim Dotcom and Megaupload Limited (assuming, as we must as fellow officers of the Court, it has not already shared the under seal evidence from

Nevertheless, even assuming that these counsel are capable of representing the defendants in the criminal case, the fugitive disentitlement doctrine obviates any possible need for the Court to solicit the defendants' input in pre-arraignment procedural matters. (*See, e.g.,* Dkt. 104 at 12–14.) This is especially true where the under seal order exposed by counsel appears to relate to the government's obligation to work with victims. Indeed, although the defendants cite four cases for the general proposition that *ex parte* proceedings are "greatly disfavored," none of these cases involved a defendant who chose to actively fight appearance and remain a fugitive, a defendant who purposefully chose not to be represented by counsel in a criminal matter, or a motion that may have asked the Court for guidance on the government's efforts to interact with and identify victims.

While the defendants may prefer that many of their potential victims' rights be deferred (or perhaps extinguished entirely) by a delay that is completely within the defendants' control, that is no reason to depart from the rule that fugitives who resist the jurisdiction of the Court have no right to opine on the Court's procedures from halfway around the world, particularly as to how the government fulfills its victim obligations in this District.

Counsel further take a narrow view of victim's rights, citing two cases addressing the Crime Victim's Rights Act ("CVRA"). In both cases, however, the government opposed providing victims with certain sensitive law enforcement information, and the courts found, under the circumstances of those cases, that the CVRA did not mandate the production. Defendants cite no case (and the government is aware of none) where the government was

---

New Zealand with its long-standing client Google), is a clear example of a conflict of interest. Choosing not to make an appearance in the criminal matter allows this conflict to go unaddressed and raises, as we have repeatedly been required to indicate, ethical concerns.

willing to produce information to victims and the court found that producing the information — though potentially helpful to victims — was *inconsistent* with the CVRA. This is especially true where the U.S. government may be attempting to identify specific victims of alleged conduct and details associated with the harm to those specific victims through the notification.

In addition, counsel are dismissive of the extent of rights of alleged victims and focus particularly on a victim's right to bring civil lawsuits. In the case cited by counsel, victims of the September 11th attacks were trying to use the CVRA to force the government to provide non-public discovery materials against terrorist Zacarias Moussaoui for use in their civil lawsuit and were found not to have a right to do so. Here, however, it is appropriate to provide the summary of the information already provided to the defendants and the foreign extradition court to potential victims of the defendants' conduct so they can evaluate their rights. The government takes no position on when and whether any alleged victim of the defendants' conduct (or other plaintiff on her behalf) could bring a civil or criminal lawsuit somewhere in the world against some entity or person. It merely would note that almost two years have passed since the original charges against the defendants (including those who remain fugitives and are not currently awaiting extradition) were made public, and that this delay, despite the best efforts of the U.S. government, may harm a variety of the enumerated rights of potential victims. The potential for harm from a delay was possibly magnified when the New Zealand District Court recently delayed the initial extradition hearing from November 2013 until April 2014 (at the earliest).[5] This lengthy delay until more than two years after the arrest of the defendants may jeopardize known and unknown victims' rights, including their right to full and timely restitution under laws

---

[5] The extradition hearing in New Zealand was originally scheduled for August 2012.

around the world. Such restitution claims could now theoretically be available against not only those awaiting extradition, but corporate entities, other fugitives, and associates; such claims may not be available or may be severely curtailed by the time the extradition hearing does actually take place.

Despite its best efforts to date, the government has been unable to sufficiently identify all potential victims due to the practical inability to individually share information gathered during its investigation with each known and currently unknown victim. For example, if an independent movie producer was unaware that her copyrighted work was allegedly being reproduced and distributed by Megaupload.com for financial profit, her right to provide specific evidence that may be helpful to the New Zealand court's determination of eligibility for extradition may go unfulfilled and her claim for full and timely restitution could be barred.

The government has identified many alleged victims of the "Mega Conspiracy" over the past several years of its investigation (some of which is detailed in the materials already provided to the defendants), but the government needs to make its best efforts to notify and confer with as many potential victims in the criminal case as possible. Given the size and scope of Megaupload's operations, it is appropriate for the government to seek guidance from the Court about its responsibilities to appropriately address victim rights.

In trying to stop the release of the summary of evidence that would normally be made public at the time of the extradition hearing, counsel are thus left to argue that they will be "substantially prejudice[d]" if the government "widely disseminate[s]" the information at issue. Counsel fail to mention, however, that regardless of any possible order from this Court, the very information defendants now seek to keep from disclosure will be made public by the New Zealand District Court at the time of defendants' extradition hearing (now tentatively

scheduled for April 2014). This will necessarily occur well before the defendants are surrendered to and tried in the United States.

Therefore, to the extent that disseminating this information has any potential to "infect the jury pool" — a notion that the government disputes[6] — that will inevitably occur well before any trial in the United States. What is not inevitable, however, is that many potential victims will obtain this information in sufficient time to preserve their rights and remedies around the world.

Defense counsel's stated concern about "infect[ing] the jury pool" might be more credible if it were not for their putative client's close relationships with and repeated statements to media around the world. To summarize Kim Dotcom's many appearances, interviews, webpages, articles, statements, and tweets about his claims about the evidence, witnesses, personalities, and circumstances in the criminal case pending before this Court would take thousands of pages and many hundreds of hours of video and audio. The "Featured" video and audio clips published just on the website of Dotcom's U.S. counsel, Ira P. Rothken, include, but are not limited to, the following:

- "Kim Dotcom Lawyer: No Such Thing As Criminal Secondary Copyright Infringement . . .";
- "DOJ Planted Evidence to Obtain Illegal Search Warrants against Megaupload/Kim Dotcom";
- "The DOJ Favors Hollywood over Millions of Consumers in the Megaupload case";
- "The DOJ's Tactics against Megaupload and Millions of Consumers Violated Public Policy";
- "Why the Kim Dotcom case impacts you";

---

[6] In the government's view, defendants overestimate the extent to which the average member of any potential jury pool has, or ever will have, any awareness of their existence. Of course, this Court will be able to *voir dire* any potential member of the jury about exposure to any information associated with the case, including the numerous public statements by the defendants and their counsel during the extradition process.

- "US Government Violating Megaupload's Due Process Rights";
- "US abuse of power in taking down Megaupload";
- "The Prosecution is politically motivated";
- "Case should be dismissed in the interests of justice";
- "Trail of Gov illegality"; and
- "Hollywood's involvement."[7]

The government has not reviewed all of these materials but assumes that their substance is generally reflected by their titles and that they were not made under oath.

Perhaps most significantly, there is also a 48-page "White Paper" produced by counsel supposedly addressing the merits and circumstances of the government's case, called "Megaupload, the Copyright Lobby, and the Future of Digital Rights: The United States v. You (and Kim Dotcom),"[8] and a recent book entitled "The Secret Life of Kim Dotcom," which purports to provide Dotcom's version of the prosecution's case.

As there are no significant limitations in New Zealand on the ability of the defendants or their counsel to interact with the media, it appears unlikely that any of their statements about the merits and circumstances of the case will prejudice the extradition process. It is strange then to suggest that the release of records that will become public at the extradition hearing would be

---

[7] Mr. Rothken has advanced many of the same erroneous arguments before this Court as he has in other matters where he represented defendants accused of civil copyright infringement. *See, e.g.*, *Columbia Pictures v. Bunnell*, Case No. 2:06-cv-1093 (C.D. Cal.), Order Denying Defendants' Motion to Dismiss for Failure to State a Claim (Dkt. 22) (May 10, 2006) and Judgment and Permanent Injunction (Dkt. 450) (Aug. 14, 2008) (Mr. Rothken's clients ordered to pay $110 million judgment); *Columbia Pictures Indus., Inc. v. Fung*, Case No. 2:06-cv-5578 (C.D. Cal.), Order Granting Plaintiffs' Motion for Summary Judgment on Liability (Dkt. 391) (Dec. 21, 2009) and Stipulation and Judgment (Dkt. 702) (Oct. 23, 2013) (Mr. Rothken's clients settled with MPAA for $110 million).

[8] One publicly available analysis of the claims in the White Paper is available at http://www.copyhype.com/2013/05/do-kim-dotcoms-lawyers-think-hes-guilty-the-answer-may-shock-you/.

any different or that the close relationship between the media, the defendants, and their counsel that has already allowed them the opportunity to present "their side of the story" would be impaired by a summary of some of the actual evidence against them.

For the forgoing reasons, the government respectfully requests that the Court deny the leave and relief in counsel's letter of December 4, 2013.

                                                Respectfully submitted,

                                                Dana J. Boente
                                                Acting United States Attorney

Date: December 6, 2013        By:       /s/
                                                Jay V. Prabhu
                                                Ryan K. Dickey
                                                Assistant U.S. Attorneys

                                                Brian L. Levine
                                                Trial Attorney
                                                U.S. Department of Justice, Criminal Division

## **CERTIFICATE OF SERVICE**

I hereby certify that on the December 6, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF, which will then send a notification of such filing (NEF) to:

William A. Burck, Esq.
Paul F. Brinkman, Esq.
Heather H. Martin, Esq.
Quinn Emanuel Urquhart & Sullivan LLP
1299 Pennsylvania Avenue, NW, Suite 825
Washington, DC 20004
(202) 538-8000 phone
williamburck@quinnemanuel.com
paulbrinkman@quinnemanuel.com
heathermartin@quinnemanuel.com

Ira P. Rothken, Esq.
The Rothken Law Firm
3 Hamilton Landing, Suite 280
Novato, CA 94949
(415) 924-4250 phone
ira@techfirm.net

Julie Moore Carpenter, Esq.
Jenner & Block LLP
1099 New York Ave, NW, Suite 900
Washington, DC 20001
(202) 639-6000 phone
jcarpenter@jenner.com

Craig C. Reilly, Esq.
111 Oronoco Street
Alexandria, VA 22314
(703) 549-5354 phone
craig.reilly@ccreillylaw.com

John S. Davis, V, Esq.
Williams Mullen
200 South 10th Street, 16th Floor
Richmond, VA 23219
(804) 420-6296 phone
jsdavis@williamsmullen.com

By:     /s/ Jay V. Prabhu
        Jay V. Prabhu
        Assistant U.S. Attorney
        United States Attorney's Office
        2100 Jamieson Avenue
        Alexandria, Virginia 22314
        (703) 299-3700 office, (703) 299-3981 fax
        Jay.Prabhu@usdoj.gov