IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 1:12CR3 |
| ) | |
| KIM DOTCOM, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**UNITED STATES OF AMERICA'S RESPONSE TO QTS REALTY TRUST, INC.'S
<u>RENEWED MOTION FOR PROTECTIVE ORDER</u>**

Little has changed since Carpathia Hosting, Inc. ("Carpathia") moved this Court for guidance on how to treat the computer servers formerly leased by the defendants to host massive amounts of copyright-infringing materials (the "Carpathia Servers"). The renewed motion for a protective order, filed by QTS Realty Trust, Inc. ("QTS"), (Dkt.#217), presents no new facts (except that QTS now owns the servers) and no new legal arguments. With respect to the criminal case, the United States completed its acquisition of evidence from the Carpathia Servers years ago, pursuant to a search warrant, and has already represented that the servers were — as of January 27, 2012, when the search was completed — no longer under the government's custody and control. The government stands ready to provide full discovery to the defendants in the criminal case consistent with the Federal Rules of Criminal Procedure, after they have made their initial appearance before this Court. The United States continues to deny that it has any financial or other obligation with respect to the Carpathia Servers and believes it has no authority to offer a position in what is a civil matter between private parties. Because no new, material information has been presented and an oral hearing has already been held, the government respectfully requests that the Court decide the motion on the papers and without further hearing.

## I. BACKGROUND

On January 19, 2012, four of the seven individual defendants in the above-captioned matter were arrested in New Zealand pursuant to a request from the United States arising from a sealed indictment. No arraignment date has been set, as all those defendants are contesting extradition.[1] Simultaneous with the January 19, 2012 arrests, the United States and law enforcement partners across the globe executed various search warrants related to the case, including a search warrant at warehouses in the Eastern District of Virginia leased by Carpathia and housing the Carpathia Servers.

Though not required to do so, a week later the United States notified all parties and this Court of events that occurred subsequent to January 19, 2012 by letter. *See* Letter from J. Prabhu to P. Davison, QC; I. Rothken, Esq.; and G. Foley, Barrister (Jan. 27, 2012) (Dkt.#32). First, the United States informed the parties that it had copied selected Carpathia Servers and copied selected data from other Carpathia Servers under the search warrant's authority. *Id*. Second, the government stated that it had completed execution of the search warrant and had "no continuing right to access" the Carpathia Servers. *Id*. The United States directed the defendants to contact Carpathia directly if they wished to arrange independent or third-party access to the Carpathia Servers. *See id*. And finally, the United States informed the parties that it had been informed that Carpathia may shortly begin to delete data and repurpose the Carpathia Servers. *See id*. Thereafter, the defendants' forensics team obtained third-party access to the Carpathia Servers. *See* Ex. D to Memorandum of Law in Support of Emergency Motion for Protective Order by Non-Party Carpathia Hosting, Inc. (Dkt.#39) (March 20, 2012) (hereinafter "Carpathia Motion").

---

[1] As the Court is aware, two other individual defendants remain at large and the seventh individual has pleaded guilty and has been sentenced by this Court.

On March 30, 2012, a purported customer of Megaupload, Kyle Goodwin, filed a brief supporting the Carpathia Motion. (Dkt.#51). The United States filed a response on April 2, (Dkt.#56), and the defendants did so on April 6, 2012, (Dkts.#66–67). On April 9, 2012, Carpathia filed a reply. (Dkt.#70). On April 12, 2012, non-parties Microhits, Inc. and Valcom, Inc. filed a statement of interest, (Dkt.#80), and on that same date the government filed a reply to the defendant's response, (Dkt.#82). To summarize, despite efforts of the parties to obtain assurances from the government, the United States is not a party to this dispute arising from a private civil matter and has no right to, control of, nor custody of the Carpathia Servers.

On April 13, 2012, the parties and non-parties appeared before this Court for a hearing on the motion for a protective order. (Dkt.#86). During the hearing, the Court heard separately from counsel for Carpathia, the defendants, Kyle Goodwin, Microhits/Valcom, the MPAA, and the government. *See generally* Transcript of Hearing on Motions (Dkt.#84) (April 13, 2012). At the conclusion of the hearing, the Court ordered the parties and non-parties to meet and confer under the supervision of a magistrate judge. *Id*. at 38–39; *see also* Order, (Dkt.#87) (April 18, 2012). The parties and non-parties met and conferred, but were unable to reach any agreement.

More than three years later, on August 11, 2015, QTS, in a renewed motion for a protective order, represents that it has entered into a stock purchase agreement with Carpathia Holdings, LLC and Carpathia Acquisition, Inc. Motion at 1. Carpathia is now an indirect, wholly-owned subsidiary of QTS, and as a result, QTS now owns the Carpathia Servers. *Id*. QTS represents, without elaboration, that the costs of storage of the servers is "approximately $5,760 per month." Memorandum at 2. Relying on the same facts and law raised by Carpathia in its original pleadings, QTS asks this Court to "allow QTS to dispose of the servers and data." *Id*. at 3.

On August 21, 2015, Kyle Goodwin filed a response in support of the protective order. (Dkt.#220). A hearing has tentatively been set for October 2, 2015.

## II. ARGUMENT

**A.  The motion does not address a "discovery matter" in the criminal case.**

QTS renews Carpathia's argument that this Court has authority pursuant to Federal Rule of Criminal Procedure 16(d)(1) to either order the government or defendants to take possession of the Carpathia Servers, or to enter an order "allowing for disposition of the servers and data." Motion at 2. But the criminal case is not yet in the discovery phase, which commences following arraignment, *see* Fed. R. Cr. P. 12(b)(4), and which has been delayed for more than three years solely due to the defendants' unwillingness to submit to the jurisdiction of this Court. Moreover, the government has already completed its acquisition of data from the Carpathia Servers authorized by the warrant, which the defendants will be entitled to during discovery.[2] As such, there is no basis for the Court to order the government to assume possession of the Carpathia Servers or reimburse Carpathia for "allocated costs" related to their continued maintenance.[3]

---

[2] In early February 2012, counsel purporting to represent the defendants in the United States speculated that exculpatory evidence is contained on Carpathia Servers not copied by the United States pursuant to the search warrant, which necessitates preservation. The government is unaware of any exculpatory evidence that would be destroyed through reprovisioning of the Carpathia Servers, but takes such allegations seriously. When pressed at a February 9, 2012 meeting, purported counsel conceded that they had never spoken with any of the defendants and that the assertion of possible exculpatory evidence was not based on any actual knowledge of the Carpathia Servers.

[3] While any transfer of the Carpathia Servers to the defendants is at root a private contractual matter, as Carpathia noted in its original motion for a protective order, both MPAA and the government objected to a transfer to the defendants. The MPAA's objections are based on an assertion that MPAA members are the legal owners of much of the data contained on those servers, and a concern that the unrestricted transfer contemplated by the agreement that

A criminal defendant's entitlement to discovery, including discovery of evidence possessed by the government, arises following arraignment. *See* Fed. R. Cr. P. 12(b)(4) (noting government discretion to notify defendant of evidence, and defendant's right to request notice of government evidence, "[a]t the arraignment or as soon afterward as practicable"). This rule is consistent with Rule 16, which governs discovery in criminal matters and which contemplates reciprocal discovery. *Compare* Fed. R. Cr. P. 16(a) (Government's Disclosure) with Fed. R. Cr. P. 16(b) (Defendant's Disclosure). As noted above, the government stands ready to provide full discovery to the defendants in the criminal case consistent with the Federal Rules of Criminal Procedure.[4]

QTS also renews Carpathia's argument that compensation or forced transfer of the Carpathia Servers is appropriate because preservation or production of the Carpathia Servers pursuant to a subpoena would be "unreasonable or oppressive" under Federal Rule of Criminal Procedure 17(c), *see* Mot. at 7-8, but that argument is inapposite for two reasons. First, Carpathia was not served with a trial subpoena by any party (which requires it to collect and produce data), but instead received a search warrant (which required it to provide limited physical access to the government, with the government bearing the burden of identifying and collecting particular data) more than three years ago. Second, as the government's letter of

---

Carpathia and the defendants initially entered creates a real risk that the defendants will seek to transfer the Carpathia Servers out of this court's jurisdiction (for example, overseas) or use them for an improper commercial purpose (for example, to attempt to reestablish criminal activity). *See* Response of MPAA Member Studios to Emergency Motion for Protective Order Filed by Non-Party Carpathia Hosting, Inc. at 4–5 (Apr. 2, 2012) (Dkt.#54). In addition to copyrighted works, the government further determined that the Carpathia Servers contain thousands of images and videos of child pornography.

[4] During discovery, the defendants will be entitled to the data from the Carpathia Servers obtained by the government during execution of the search warrant. *See* Fed. R. Cr. P. 16(a)(E).

January 27, 2012 made clear, the government relinquished possession of the Carpathia Servers and did not (and frankly could not) impose continuing obligations on Carpathia (or QTS now) to preserve the servers after it completed its execution of the search warrant in 2012. QTS points to no case law awarding relief to a third party that has decided to preserve data previously subject to a search warrant for reasons unrelated to the criminal case.[5] As such, there is no basis in the criminal law for ordering the government to pay for or assume possession of property that is not subject to any legal process related to the criminal proceeding.

**B.      Concerns over potential civil liability are not properly before this Court as part of the criminal case.**

The United States, since it is not a party to the civil suits involving the defendants and the copyright victims, can take no position in the ongoing private civil cases (other than rejecting any ongoing obligation on its part).

QTS also seeks the Court's intervention as a shield against potential liability in as-yet-unfiled civil lawsuits on behalf of "innocent users" of the Megaupload.com website. Though again the government does not take a position on the theoretical civil cases alleging some right to the data on the Carpathia Servers, any relief is certainly not available through the criminal matter.

---

[5] *United States v. Salad*, 779 F. Supp. 2d 503 (E.D. Va. 2011), relied on by Carpathia in its original motion, is distinguishable because there, the defendant was the party seeking relief, for the purpose of allowing counsel and any necessary experts to inspect the yacht upon which the alleged crimes occurred, and over which the United States still had possession. *See id*. at 504, 507. Here, in contrast, a third party is requesting relief, related to property that the United States relinquished possession of years ago, and which the defendants' forensics experts have already had the opportunity to inspect. Furthermore, whereas in *Salad*, the best the government could offer in discovery was photographs and videos of the yacht, *see id*. at 505, here, the government has made exact forensic copies of data from the Carpathia Servers, which the defendants will have the opportunity to inspect.

## III. CONCLUSION

For these reasons, the United States continues to request that the Court deny any effort to impose unprecedented financial or supervisory obligations on the United States related to the Carpathia Servers. Otherwise, it takes no position in what is a civil dispute between private parties.

Respectfully submitted,

Dana J. Boente
United States Attorney


By: _____/s_____
Jay V. Prabhu
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
(703) 299-3700 office
(703) 299-3981 fax

# CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2015 I electronically filed the foregoing with the Clerk of Court using the CM/ECF, which will then send a notification of such filing (NEF) to:

William A. Burck, Esq.
Paul F. Brinkman, Esq.
Heather H. Martin, Esq.
Quinn Emanuel Urquhart & Sullivan LLP
1299 Pennsylvania Avenue, NW, Suite 825
Washington, DC 20004
(202) 538-8000 phone
williamburck@quinnemanuel.com
paulbrinkman@quinnemanuel.com
heathermartin@quinnemanuel.com

Julie Moore Carpenter, Esq.
Jenner & Block LLP
1099 New York Ave, NW, Suite 900
Washington, DC 20001
(202) 639-6000 phone
jcarpenter@jenner.com

John S. Davis, V, Esq.
Williams Mullen
200 South 10th Street, 16th Floor
Richmond, VA 23219
(804) 420-6296 phone
jsdavis@williamsmullen.com

Christina L. Harrison
Hogan Lovells US LLP
555 Thirteenth Street NW
Washington, DC 20004
(202) 637-5822 phone
christina.murphy@hoganlovells.com

Ira P. Rothken, Esq.
The Rothken Law Firm
3 Hamilton Landing, Suite 280
Novato, CA 94949
(415) 924-4250 phone
ira@techfirm.net

Craig C. Reilly, Esq.
111 Oronoco Street
Alexandria, VA 22314
(703) 549-5354 phone
craig.reilly@ccreillylaw.com

By: _____/s/_____
    Jay V. Prabhu
    Assistant United States Attorney
    United States Attorney's Office
    2100 Jamieson Avenue
    Alexandria, Virginia 22314
    (703) 299-3700 office (703) 299-3981 fax