IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *et al.*, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | The Honorable Liam O'Grady |
| | ) | |
| KIM DOTCOM, *et al.*, | ) | 12 CR 3 |
| | ) | |
| | ) | |
| Defendants. | ) | |

**REBUTTAL MEMORANDUM IN FURTHER SUPPORT OF RENEWED MOTION
FOR PROTECTIVE ORDER**

Four parties have filed responses to QTS's Renewed Motion for Protective Order:  the

United States Government, Megaupload, the Motion Picture Association of America ("MPAA"),

and Kyle Goodwin ("Goodwin").  Each party raises differing issues with respect to the motion.

**Goodwin** requests that the Court use its equitable powers to establish a mechanism for the return

of property to third parties like Goodwin.  ECF No. 220 at 6.  **Megaupload** requests that the

Court intervene and permit the transfer of the Megaupload servers in a manner and method that

preserves the integrity of the data such that it can be used in the defense of the criminal case.

ECF No. 221-1 at 6.[1]  **MPAA** relies on its previous response filed on April 2, 2012, and takes no

position on whether the more appropriate disposition now is to allow the servers to be

reprovisioned or to require them to be preserved in their current state.  ECF No. 222 at 2.  Lastly,

---

[1]     Megaupload has filed its memorandum as a "Proposed Response" contingent on this
Court's granting of its attorneys' motion to specially appear for the limited purpose of
responding to QTS's motion.  QTS assumes the Court will consider Megaupload's brief to
decide the matter at issue and takes no position on whether Megaupload's attorneys' motion
should be granted.

**the Government** asserts that it completed obtaining all evidence for this criminal case years ago

and did not (and frankly could not) impose continuing obligations on Carpathia, and now QTS,

to preserve the servers.  ECF No. 223 at 6.  After receiving all of the parties' responses, and

noting that the Government does not appear to have any actual objection to disposal of the

servers, QTS proposes the following simple solution: that the Court issue an Order, a form of

which is attached, providing Megaupload with thirty days to take possession of the computer

servers or copy the data, at Megaupload's expense, after which QTS is permitted to destroy the

servers.

## ARGUMENT

It is plain from all four responses that QTS, which has no involvement in the instant case,

has found itself in the middle of the parties' conflicting demands.  Unless the court intervenes to

resolve these issues, QTS will continue to face questions of how to rid itself of these servers

without facing prosecution for obstruction of justice or civil actions.  Only this Court can provide

that relief.

The Government takes no position on the motion, arguing that this is a civil dispute

between private parties and is not properly before this Court as part of the criminal case.  ECF

No. 223 at 1.  Further, the Government contends that no hearing is necessary and the Court

should decide the motion on the papers.  *Id.*  However, in its response, the Government does not

assert any actual objection to QTS disposing of the servers.  The Government claims it

completed acquisition of the data on the servers years ago and has not and could not impose

continuing obligations on QTS to preserve the servers.  Yet, the Government has blocked

attempts by Carpathia in the past to dispose of its servers.[2] The Government cannot have it both

ways. This is exactly why a hearing on QTS's motion is necessary.

> A. *This Court Has the Power to Enter an Order Governing the Handling of Evidence in a Criminal Case*

As Carpathia noted in its briefing on the initial motion for protective order, the

Government presents an exceptionally narrow view of the Court's jurisdiction in this matter,

asserting that the Court does not have the power to enter an order regarding evidence that a

criminal defendant has claimed is central to its case pending before the Court. What the

Government fails to recognize is that this Court has ancillary jurisdiction to resolve these

collateral issues because they touch on matters significantly related to the criminal case. QTS

should not be forced to weigh all of the parties' competing considerations, especially when the

Government takes no position on the matter and acknowledges it does not need further access to

the computer servers. Absent an actual objection from the Government, the Government should

not have standing to prevent QTS from disposing of the servers.[3]

The Government cannot take the view that disposal of the servers is not an issue in the

criminal case, while also arguing that it would have an objection to transferal of the servers to

Megaupload. The Government, per its own admission, "frankly could not impose continuing

---

[2]     When Carpathia and Megaupload came to a proposed agreement three years ago to transfer the servers to Megaupload, the Government claimed the disposition of the servers was a private civil matter, but blocked Carpathia's and Megaupload's proposed agreement to transfer the servers to Megaupload. *See* ECF No. 223 at 4 ("While any transfer of the Carpathia Servers to the defendants is at root a private contractual matter . . . both MPAA and the government objected to a transfer to the defendants.").

[3]     The Government's only argument with respect to the actual disposal of the servers is that the Government should not be ordered to pay for or assume possession of the servers. However, that is not what QTS is requesting here. QTS merely asks that it be permitted to destroy the servers if Megaupload does not take possession of the servers or copy relevant data within thirty days. Again, the Government maintains it completed its acquisition of all evidence years ago, and has not imposed any continuing obligations on Capathia (and now QTS) to preserve the servers.

obligations on Carpathia (or QTS now) to preserve the servers after it completed execution of the search warrant in 2012." ECF No. 223 at 6. Accordingly, the Government should not be permitted to prevent the Court from entering an order regarding the disposal of the servers.

The Government fails to point to anything in Rule 16's text, or in case law, to suggest that QTS cannot seek a protective order where the government and a criminal defendant disagree over how the evidence in the a third party's possession should be handled. *See United States v. Mitchell*, 683 F. Supp. 2d 427, 429 (E.D. Va. 2010) ("Ancillary jurisdiction arises when a district court 'acquires jurisdiction of a case or controversy in its entirety, and, as an incident to the full disposition of the matter, may hear collateral proceedings when necessary to allow it to vindicate its role as a tribunal."). The fact that the potential exists for at least some of the data to be relevant in this criminal case places this dispute directly within the core of this Court's jurisdiction. Accordingly, this Court has the power to enter an order regarding the disposal of these servers. *See* Fed. R. Crim. P. 16(d)(1) ("[A]t any time the court may, for good cause, deny, restrict, or defer discovery and inspection, or grant other appropriate relief.").

### B. As QTS has No Interest in the Data, the Court Should Relieve QTS of its Burden of Storing the Computer Servers

QTS should not be forced to act as the gatekeeper for Megaupload and all non-parties who may have an interest in the data. QTS recognizes that non-parties have claimed various interests in the data. However, QTS should not be forced to maintain physical possession of the computer servers for an indefinite period of time, and thus incur the associated costs, especially when it does not and never had control over or access to the data residing on the computer servers.

As QTS laid out in its initial memorandum, QTS does not have actual possession of the data at issue in this matter, and only the physical hardware itself. Megaupload requests that the

matter be referred to a magistrate for decision.  However, that is exactly what the Court did three years ago, and no result was ever reached.  The parties are back to square one, and QTS will continue to face conflicting demands from criminal defendants and other non-parties that have claimed an interest in the data.

QTS recognizes Megaupload's desire to preserve the data in case it is relevant and material to its defense.   However, Megaupload's desire must be balanced against all other conflicting demands in this case, including those of QTS.  QTS should not be forced to keep the computer servers any longer.  It has already been over three years since Carpathia initially filed its motion, and could easily turn into another three years.  The only equitable result here is to give Megaupload thirty days to take physical possession of the servers or copy relevant data, at Megaupload's expense, after which QTS may destroy the servers.

## CONCLUSION

QTS should not be in the untenable position of having to determine the fate of the data it does not control, merely because it resides on physical hardware it owns.  QTS is the only party here that has no interest whatsoever in the data.  Accordingly, QTS asks this Court to enter an order giving Megaupload thirty days to take physical possession of the servers or copy relevant data, at Megaupload's expense, after which QTS may destroy the servers.


Dated:  August 31, 2015                          Respectfully submitted,


                                                 /s/ Christina Harrison
                                                 Christina Harrison (VSB # 82193)
                                                 Hogan Lovells US LLP
                                                 Columbia Square
                                                 555 Thirteenth Street, NW
                                                 Washington, DC 20004
                                                 Tel: (202) 637-5822
                                                 Fax: (202) 637-5910

christina.murphy@hoganlovells.com
*Counsel for QTS Realty Trust, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2015 I electronically filed the foregoing with the Clerk

of Court using the CM/ECF system which will send a notification of such filing (NEF) to all

counsel of record.

*/s/ Christina Harrison*
Christina Harrison (VSB # 82193)
Hogan Lovells US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004
Tel: (202) 637-5822
Fax: (202) 637-5910
christina.murphy@hoganlovells.com