**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| vs. | The Honorable Liam O'Grady |
| | Criminal No. 1:12CR3 |
| KIM DOTCOM *et al.*, | |
| *Defendants*. | |

**RESPONSE OF MPAA MEMBER STUDIOS TO THE COURT'S
ORDER OF OCTOBER 29, 2015 (DKT. NO. 229)**

On October 29, 2015, this Court issued an Order directing the parties to submit answers to several questions pertaining to the Renewed Motion for Protective Order filed by QTS Realty Trust, Inc. The members of the Motion Picture Association of America ("MPAA") respectfully submit the following in response to the Court's Order. The Court's Order raised nine numbered questions, only one of which – question 7 – was directed to the MPAA members. The MPAA members therefore limit this response to only that question, and take no position on the others.

Question 7 asks: "Do the members of the Motion Picture Association of America remain concerned about the potential release of copyrighted works and/or the potential financial harm from such a release? If so what value do they place on the copyrighted material (taking into account the passage of three years)?" Order (Dkt. No. 229) at 2.

The MPAA members remain gravely concerned about the potential release of the copyrighted works that are stored on the Megaupload/Carpathia/QTS servers at issue here (the "Mega Servers"). As we explained at the outset of these proceedings, the MPAA members are the largest producers and distributors of motion pictures and television programming in the

1

United States and, therefore, are certain to own a substantial percentage of the hundreds of thousands of copyrighted works that the United States has identified on the Mega Servers. *See* Response Of MPAA Member Studios To Emergency Motion For Protective Order Filed By Non-Party Carpathia Hosting, Inc., dated Apr. 2, 2012 (Dkt. No. 54).  The release of these digital files would not only risk the further infringing distribution of the MPAA members' highly valuable copyrighted works, but any transfer of these files by QTS to Megaupload or a third party would itself be an infringement of the MPAA members' copyrights in those works. *See id.* at 4-5.

The passage of time since this issue first arose does nothing to alleviate these concerns. The works that were infringed via Megaupload (and likely continue to reside on the Mega Servers) include some of the most enduring – and highly valuable – copyrighted material in all of film and television, including award-winning motion pictures such as "Forrest Gump" and "Back To The Future," as well as modern classics such as "Toy Story 3" "Avatar" and "Harry Potter and the Deathly Hallows, Part 1."  That these works may no longer be in theaters in no way diminishes their ongoing commercial value – indeed, they were pirated with abandon on Megaupload precisely because they are popular and highly-valued works.  To allow their further infringement through a release of these digital files either to Megaupload or a third party would undermine the MPAA members' right to control the time, place and circumstances in which their works are displayed, reproduced, made available and performed; irreparably damage the MPAA members' relationships with authorized distributors of their works; and cause incalculable losses in revenues from home entertainment physical media (*e.g.* DVD, Blu-ray), digital transmission (e.g. Netflix, Hulu, iTunes, Amazon Prime and other online content delivery systems) and traditional transmissions (free and paid cable television, etc.) through which these works continue to be monetized.

2

In short, the MPAA members remain as concerned as ever about the potential release of their copyrighted works and the potential financial harm the MPAA members would suffer from such a release. The passage of three years – while frustrating for the MPAA members and other victims of the defendants' criminal activity, who continue to wait for justice – has no impact on the incalculable financial harm the MPAA members would suffer from the release of their copyrighted material.[1]

DATED: November 12, 2015    Respectfully submitted,

By: /s/ Julie M. Carpenter
    Julie M. Carpenter

JENNER & BLOCK LLP
Julie M. Carpenter (Virginia Bar No. 30421)
Kenneth L. Doroshow (*admitted Pro Hac Vice*)
1099 New York Avenue, N.W.
Suite 900
Washington, D.C. 20001
Phone: 202-639-6000
Fax: 202-639-6066

*Attorneys for Motion Picture Association of America*

---

[1] Questions 8 and 9 of the Court's October 29 Order concern the possibility of innocent third parties' retrieval of legitimate files. *See* Order (Dkt. No. 229) at 2. As the MPAA members pointed out previously, if the Court were to establish a process allowing for such retrieval, it is essential that the process include a procedure that ensures that any materials to be retrieved are indeed legitimate and are not files that were illegally uploaded to the Mega Servers. *See* Response Of MPAA Member Studios To Emergency Motion For Protective Order Filed By Non-Party Carpathia Hosting, Inc., dated Apr. 2, 2012 (Dkt. No. 54) at 6.

3

**CERTIFICATE OF SERVICE**

I hereby certify that on November 12, 2015, the foregoing was filed and served electronically by the Court's CM/ECF system which will send a notification of such filing (NEF) to all counsel of record.

Dated: November 12, 2015                By: /s/ Julie M. Carpenter

JENNER & BLOCK LLP
Julie Carpenter (Virginia Bar No. 30421)
1099 New York Ave., N.W.
Suite 900
Washington, DC 20001
Phone: 202-639-6000
Fax: 202-639-6066

4